IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

_____

BROGDON ET AL, PLAINTIFFS       : 4:23-CV-00088-CDL

        VS.                     : AUGUST 24, 2023

FORD MOTOR COMPANY, DEFENDANT : COLUMBUS, Georgia

_____

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE CLAY D. LAND,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

MS. ALLISON BRENNAN BAILEY, 105TH 13TH ST, COLUMBUS, GA 31901,

ALLISON@BUTLERPRATHER.COM

MR. DANIEL EVAN PHILYAW, 12 LENOX POINTE NE, ATLANTA, GA
30324, DAN@BUTLERPRATHER.COM
MS. LARAE D. MOORE, PO BOX 1199, COLUMBUS, GA 31902,

LMOORE@PAGESCRANTOM.COM

MR. RAMSEY B. PRATHER, 105 13TH ST. COLUMBUS, GA 31901,

RAMSEY@BUTLERPRATHER.COM

JAMES E. BUTLER, JR. 105 13TH ST, COLUMBUS, GA 31902

JIM@BUTLERPRATHER.COM

FOR THE DEFENDANT:
MR. CHARLES EDWARD PEELER, 600 PEACHTREE ST NE, STE 3000,

ATLANTA, GA 30308 CHARLES.PEELER@TROUTMAN.COM

MS. ELIZABETH B. WRIGHT, 3900 KEY CENTER, 127 PUBLIC SQR

CLEVELAND, OH 44114, ELIZABETH.WRIGHT@THOMPSONHINE.COM

MR. MICHAEL R. BOORMAN, 999 PEACHTREE ST NE, STE 1130,

ATLANTA, GA 30309, MBOORMAN@WATSONPENCE.COM

_____

JOAN DRAMMEH, CVR, CCR

JOAN_DRAMMEH@GAMD.USCOURTS.GOV

--- *PROCEEDINGS* ---

Thursday, August 24, 2023 09:24:10

THE COURT:  Good morning, be seated.  Mr. Clerk, announce out case for this morning.

THE CLERK:  Yes, sir, Your Honor.  This is a scheduling conference in the case of 4:23-CV-00088 Brogdon et al v Ford Motor Company.

THE COURT:  Okay, why don't we just so the record will be clear identify who is present for the parties.  We will start with the Plaintiffs.

MR. BUTLER:  Good morning, Your Honor, Jim Butler, Ramsey Prather, Larae D. Moore, Dan Philyaw, and Allison Bailey counsel for Plaintiff.  We also have Mr. James Dusty Brogdon, the executor or both estates with us today, Missus McCallister, Ms. Glenn, Ms. Andrews, Caroline Schley, and Nick Giles are here with us today.

THE COURT:  Okay, and the Defendant.

MR. PEELER:  Good morning, Your Honor, Charlie Peeler on behalf of Ford.  I've got a couple of folks on our team, Ms. Elizabeth Wright is here.  Mike Boorman is here as well.

THE COURT:  Okay, when my law clerk informed me that the joint proposed scheduling order had been submitted and there were substantial disagreements among the lawyer as to that proposed order; I thought that certainly cannot be true.

9:34:32AM  1    These are well experienced lawyers well-trained in the Federal

2    Rules of Civil Procedure and this Court's local rules and

3    certainly understand the importance of trying to walk in the

4    other party's shoes a little bit see their perspective and

5    hopefully reach some compromise to keep the case moving along,

6    but apparently that can't be done.  So you're going to have

7    the person who knows less about the case than any of you all

8    make those decisions for you, which is part of my job and I'll

9    be glad to do it, but it just seems to me that there could

10   have been a little more conciliation here where we could have

11   avoided this hearing.

12         Nevertheless, I've read all the papers.  I don't

13   know that I've ever had this much paperwork with regard to

14   what jointly proposed scheduling order.  Ninety-nine percent

15   of them they are all agreed to or there are some minor

16   differences and I'll decide those, but this is like briefing a

17   summary judgment motion, but I've read it.  I'm not going to

18   give the lawyers a chance to argue about every point.  We will

19   be here until Labor Day if I did that given the

20   contentiousness of these issues.  But this is going to be the

21   schedule.

22         We are going to try this case.  I'm going to

23   specially set it down.  I had obviously we've got other

24   matters to handle, other terms of court where we handle other

25   criminal cases, and other civil cases during our standard

9:36:13AM 1    terms of court.  And cases like this that I do specially set

2    down have to find a place somewhere else other than during

3    that regular trial turn.  The best I can do given what I think

4    is going to be some fairly contentious discovery.  I'm going

5    to set this case down for a special setting to begin the trial

6    on February the 3rd of 2025, February the 3rd of 2025.  Does

7    anybody at this point in time know whether they have an

8    irreconcilable conflict for that date, February 3rd of 2025?

9    Okay.

10         The discovery in this case will close on July

11   the 18th of 2024, July the 18th of 2024.  There will be no

12   extensions.  So understand that here on the front end.  You've

13   got plenty of time for discovery.  There will be no extensions

14   of that discovery deadline.  The reason is the Court has to

15   get the dispositive motion deadline in and the briefing in so

16   the Court can decide any dispositive motions to keep that

17   trial date.  It takes a little time to decide those motion so

18   all discovery close on July the 18th of 2024.

19         Dispositive motions will be due on August the 15th

20   of 2024, August the 15th of 2024.  Somebody needs to be

21   taking notes.  I'm going to put it on the Defendants to

22   prepare the first draft of this new scheduling order.  Submit

23   it to the Plaintiffs.  They can tell you what they object to.

24   If you can't reach agreement submit it to me where it

25   succinctly states in the proposed order Plaintiff's position,

9:38:12AM 1   Defendant's position.  So all I'll do is say, I adopt

2   Plaintiff's position or I adopt Defendant's position when it

3   is submitted again.

4        The dispositive motions will be due August

5   the 15th of 2024.  There will be no extensions.  Make sure

6   the Clerk notes in the record Mr. Clerk that there'll be no

7   extensions of that deadline.

8        The response to any dispositive motions be due

9   September the 12th 2024.  And the reply will be due

10  September the 26th of 2024.  There will be no extensions.

11  The Clerk will be notified at that 14-day grace extensions

12  that they can give without asking the judge; that that will

13  not apply in this case.  There will be no extension of any

14  dispositive motions or any responses or replies.  And if you

15  ask the Clerk for that extension he will tell you that it's

16  noted in the file there shall be no such extensions.

17        The final pretrial conference in this case will be

18  December the 12th of 2024 at 9:30 a.m. in this courtroom.

19  That will be the final pretrial conference December the 12th

20  of 2024, which will give us time to iron out any final matters

21  before the actual trial in February.

22        So that's scheduling order.  I had one other thing

23  noted on the scheduling order.  Any motions to amend pleadings

24  or join parties as a matter of right where you do not have to

25  get the other side's permission and do not have to get leave

9:40:10AM 1  of court, that should be done by January the 18th of 2024.

2  If something comes up after that date that was unforeseeable

3  and you establish good just cause to amend the pleadings then

4  you'll need to file a motion after that date.  Before January

5  the 18th of 2024, you can amend as a matter of right.

6          I'm going to get to the protective order in a

7  moment.  Any discovery that was taken -- is it Mill or Mills

8  --

9          MR. BUTLER:  Hill case, Your Honor.

10          THE COURT:  Oh it's Hill.

11          MR. BUTLER:  We call this one Mill because of the

12  decedents.

13          THE COURT:  Okay, Hill case.  Any discovery from the

14  Hill case, the Hill v Ford case may be used in this case just

15  as if it were taken in this case.  I'm not making any

16  preliminary rulings on whether evidence from that discovery is

17  admissible at trial; whether it's sufficiently comparable to

18  be admissible, but it does not need to be redone and any of

19  that discovery that was taken will be treated just as if it

20  was taken in this case.

21          There was some reference in the pretrial order

22  briefing about video depositions for use at trial.  On all of

23  these determinations I'm going to be guided by the -- this is

24  obvious -- by the Federal Rules of Civil Procedure, the

25  Court's local rules in any local orders the court as issued

9:42:26AM 1  such as the Rule 1626 order.  When I'm resolving these issues

2  that's what I'm going to be looking and hopefully be guided by

3  a little common sense.

4          Any video depositions that the parties want to take

5  to preserve testimony at trial just need to be taken pursuant

6  to the rules.  And I think those types of preservation

7  depositions can be taken even after discovery has been

8  concluded if its established that those people are not

9  available and you can work out a mutually convenient time with

10  the other side.  You shouldn't wait until two days before

11  trial, but my general rule is that if those parties or

12  witnesses are available, which I guess the Plaintiff

13  contemplates proposing.  If they are associated with the

14  Defendant they are probably beyond the subpoena power so they

15  may not be available, but if they are available, then under

16  the rules they need to testify live; unless there's some other

17  exception under the rules, perhaps for a witness associated

18  with a party opponent.  But I'll be governed by the Federal

19  Rules with regard to that.  So I'm not sure really what the

20  dispute is about that or if somebody's just anticipating

21  somebody's going to object to the use of a video deposition,

22  but I generally don't decide that in a scheduling order.

23          With regard to with regard to motions to compel

24  discovery or the inverse of that, motions for protective

25  orders to be protected from responding to discovery, our Rule

9:44:48AM 1   1626 order makes it clear I think that before filing any such

2   motion the parties need to have a face-to-face good faith

3   conference to resolve the dispute.  None of this shooting

4   e-mails back and forth to each other.  You can do that too.

5   No Zoom.  But before you burden the Court with a motion to

6   compel or a protective order, I require the parties to have

7   certified that they have met -- the lawyers that they have met

8   face-to-face and made a good faith effort to resolve the

9   dispute.  I'm not one that says, okay, anytime you've got a

10   discovery dispute call up Mr. Gunn and he'll get me on the

11   phone and we'll hold hands with you all and help you work it

12   out; that's just not -- My predecessor would just faint if he

13   thought lawyers even did that these days but apparently that's

14   the thing that a lot of lawyers like to do.  Just call him up

15   and see if we can't work this out informally; that makes it

16   easier apparently.

17        MR. BUTLER:  Your Honor, one question.  Just to make

18   sure I've got my notes right.  You did say no Zoom,

19   face-to-face in person.

20        THE COURT:  Yes, sir.

21        MR. BUTLER:  Thank you, Your Honor.

22        THE COURT:  Are all the lawyers here from Georgia?

23        MR. PEELER:  No Ms. Wright is from Cleveland, Ohio.

24        THE COURT:  Since the case is filed in this district

25   if you're going to be the one to show up at those meetings

9:46:28AM  1    you'll need to come not necessarily to Columbus, but somewhere

2    in the district.  If you want to come to Atlanta or go over

3    and check out Savannah where Mr. Butler is that's fine with

4    me.

5         MS. WRIGHT:  Happy to travel, Your Honor, happy to

6    come here.

7         THE COURT:  I'm not going to make them have a

8    conference in Ohio or wherever you are.

9         MS. WRIGHT:  No, happy to come here.

10         THE COURT:  As far as electronically stored

11    information, I've read over the position or the process that

12    Ford has proposed; it's consistent with what I've done in

13    other cases.  I don't see a problem with that process.  So we

14    will follow that process.  I'm going to allow each party, the

15    Plaintiffs' collectively and the Defendant separately to

16    propound 50 additional interrogatories, 50 interrogatories, 25

17    requests for production and 25 requests for admissions.

18         MR. BUTLER:  Your Honor, just for clarification you

19    said 50 additional; do you mean 50 total?

20         THE COURT:  I mean 50.  What I was thinking about,

21    50 in this case, but you can use what you had in the Hill case

22    so it would be in addition to that.  Unless you all

23    contemplated those being factored into this number when you

24    all made this request.

25         MR. BUTLER:  We've already done what 15 runs?

9:48:13AM 1            THE COURT:  I believe the Plaintiffs requested.  Was

2      your request for 50 in addition to that or to include that?

3                MR. BUTLER:  Fifty is fine, Your Honor.

4                THE COURT:  Including whatever you've already done.

5                MR. BUTLER:  Yes, sir, that was my question.

6                THE COURT:  Is that okay with the Defendants?

7                MR. PEELER:  The Hill interrogatories count against

8      that  0; is that what we're saying?  I just want to make sure

9      I understand.

10                MR. BUTLER:  That gives us less than zero.

11                THE COURT:  The Plaintiff does not want the 50 Hill

12      to count against the 50.  You want 50 in addition to whatever

13      you've got in Hill, correct?

14                MR. BUTLER:  Yes, sir.

15                THE COURT:  Okay, I do think that was misstated

16      previously.  Yes, it will be in addition.

17                MR. PEELER:  Okay.

18                THE COURT:  I'm going to get to the protective order

19      in just a minute, but I'm having a hard time understanding one

20      fundamental issue.  If information has previously been

21      publicly disclosed in a prior trial for example, then it

22      doesn't seem to me that that information has any type of

23      continuing privilege associated with it.  So it may not be

24      discoverable for some other reason or it may not be

25      admissible, but I don't see how it is privileged if it has

9:50:07AM 1    been previously disclosed publicly.  Is the Defendant taking

2    that position or am I misunderstanding?

3              MR. PEELER:  In response to the Plaintiff's argument

4    is that if it was used in evidence at the Hill trial, and

5    since that trial was available on a pay per view internet

6    system, therefore all confidentiality is waived.  Our position

7    is that that doesn't really characterize the true extent of

8    the disclosure.  So all of those documents that were admitted

9    into evidence --

10              THE COURT:  That's my point.  If there has been a

11   public trial, and documents were admitted in that public

12   trial, and those documents were therefore available not only

13   to the people who observed the public trial but were on a

14   public docket because they were admitted into evidence.  We

15   don't have Star Chamber courts where things get hidden, then

16   how can those documents that have already been publicly

17   disclosed maintain a privilege of nondisclosure?  The basis

18   for nondisclosures is to protect items that are proprietary or

19   otherwise privileged from public disclosure.  But once they've

20   been disclosed why is the continued protection necessary?

21              MR. PEELER:  I think the distinction is that those

22   documents as I understand it -- and Mr. Boorman will correct

23   me if I say it wrong -- but those documents were admitted into

24   evidence.  They are sealed.  They are not available on the

25   public docket.  The only thing that was made publicly

9:52:06AM 1  available was the two or three lines on a particular document

2  that a witness was questioned about.

3          THE COURT:  Okay, so all of the document has not

4  been publicly disclosed.

5          MR. PEELER:  Correct.  So to say that --

6          THE COURT:  That judge ordered that they not be

7  publicly disclosed.

8          MR. PEELER:  Right.  There is a protective order in

9  that case that governs the treatment of documents marked

10  confidential, including some of the trail exhibits that have

11  been tendered and admitted.  Currently, that protective order

12  is in place so Plaintiffs are challenging that and the

13  Defendants are opposing that challenge, but that has not been

14  ruled on.  So as it stands today those documents are currently

15  protected under that --

16          THE COURT:  Okay.  Is that correct Mr. Butler?

17          MR. BUTLER:  No, sir.  I think context may be

18  helpful to the Court, which is why in too many pages of typed

19  papers we submitted to the Court we said that several times.

20  Ford should have filed a motion for protective order.  It is

21  the common thing theme in this cases is the Defendant tries to

22  avoid falling a motion for protective order for various

23  reasons I won't get into because that's argument.  I woke up

24  at 5:00 this morning thinking about it.  I've been doing this

25  for 35 years.  Context.  Thirty-five documents Ford documents

9:53:31AM 1  were admitted in the second Hill trial into evidence, admitted

2  into evidence not just tendered.  There may have been a few

3  that were tendered but not admitted.  I don't remember.  Ms.

4  McCallister did a count.  Of those 35 admitted Ford documents

5  in the second Hill trial, 18 had a confidential stamp on it,

6  18.  Of those 18, when Ford opposed our motion to modify the

7  protective order in Hill, Ford only claimed that eight were

8  still subject to any claim of confidentiality, according to

9  Ford.  Now, we haven't gone back and checked the first Hill

10  trial.  It's probable that the same Ford documents were

11  admitted in the first Hill trail because at the time of

12  mistrial in that case we had rested.  I assumed that all 35 or

13  close to that were admitted in the first Hill trial too.

14        So these documents have been admitted and displayed,

15  not just quoted from but displayed in open court in the second

16  Hill trial for sure.  Most of them if not all of them in the

17  first Hill trial as well.  Both times filmed by Court TV CVN,

18  Courtroom View Network, and distributed.  So it's not correct

19  to say that only pieces of them were read from.  The documents

20  were admitted into evidence.

21        THE COURT:  If that's the case why are they now

22  under seal?  If it's just a matter of, okay, it's all out

23  there in the public; why would the judge in that case --

24        MR. BUTLER:  I don't believe he had. I'm trying to

25  remember what all happened with that.  But my point is --

9:55:19AM 1          THE COURT:  If a member of the public went down to

2     the county to look at this document, would they find those

3     documents under seal so that they could not look at them or

4     would they be a matter of public record?

5          MR. BUTLER:  That I cannot remember, Your Honor.

6          THE COURT:  Ford says they remember and they say

7     that they were filed under seal.  Mr. Boorman represented that

8     he would be the one who would know from Ford's perspective.

9     Are those documents under seal or are they publicly on the

10    docket?

11         MR. BOORMAN:  We actually had a lawyer from our

12    office go and physically check.  They are not on a public

13    docket.

14         THE COURT:  Where are they?

15         MR. BOORMAN:  We believe the judge has them and they

16    are under seal.  They are not on the public docket.

17         THE COURT:  Was there an order in that case that

18    placed them under seal even after they were admitted into

19    evidence?

20         MS. WRIGHT:  Your Honor, as part of our protective

21    order, which Plaintiff agreed to in the Hill case, a part of

22    that order says that they keep their protection.  So it was

23    our understanding that we all agreed that they were going to

24    stay as protected.  So now after that agreement was made with

25    the Plaintiffs in the judged signed an order.  We've made it

9:56:34AM 1   through two trials.  Now, the Plaintiffs have filed a motion

2   to amend that protective order, which is currently being

3   considered so Judge --[inaudible]--.  This issue is directly

4   in front of Judge -- We are waiting for his decision.

5           MR. BUTLER:  Your Honor, that's not correct.  The

6   Court's question was:  Was there an order entered sealing

7   those documents even after they were admitted into evidence

8   with the second Hill trial.  The answer to that question is,

9   no.

10          THE COURT:  Well, is the judge down there

11   considering whether those documents should be under seal or

12   not?

13          MR. BUTLER:  We've got a motion to modify and as to

14   the 35 Ford documents admitted in the second Hill trial, Ford

15   has in response to that motion to modify claimed that it wants

16   eight of them to continue to get the treatment.  There are

17   several things to have done in this case -- unless this

18   protective order thing was all about delay -- was submit those

19   eight to the Court in camera.

20          THE COURT:  Well, quite frankly, I don't see the

21   urgency of me deciding this particular issue since you've got

22   the documents in your discovery.  It's not going to slow down

23   your discovery in any way.  And the fact that they cannot be

24   publicly disclosed at this point in time, how does that hinder

25   your prosecution of this claim in this case?

9:58:10AM 1      MR. BUTLER:  Your Honor, you make an excellent

2   point.  I don't think it does.  We simply responded to this

3   protective order.

4      THE COURT:  This is what I'm going to do with regard

5   to the protective order.  Obviously, we get these all the time

6   and 99 percent of them the parties are able to reach kind of

7   agreement with regard to the process; what should be protected

8   in the process for effectuating that and the process for

9   challenging that.  And I am aware that in a fairly recently

10   filed case in this Court, Felicia Christian versus Ford; which

11   is our case number 4:22-CV-00062 in which I think Mr.  Boorman

12   you were involved in that case for Ford, correct?

13      MR. BOORMAN:  That's correct, Your Honor.

14      THE COURT:  The plaintiff in that case is

15   represented by the Beasley Allen Law Firm, which I've had some

16   experience with in this court and have found them to be

17   zealous, reasonable lawyers who I have never found to do

18   anything that would be harmful to their client.  And a couple

19   of months ago -- I think that's a rollover case also.  It

20   doesn't involve pickup trucks.  It may involve a Bronco or

21   some other vehicle, but it doesn't involve a pickup truck.  I

22   got from those lawyers and the lawyers in this case from Ford

23   a sharing non-sharing protective order that they consented to

24   without any involvement of the Court.  And having reviewed

25   that then and having reviewed it now I don't find that order

10:00:27AM 1  unreasonable at all.  I am just inclined to enter the same or

2  very similar order in this case.  My question to you

3  Mr. Boorman, is the stipulated sharing and non-sharing

4  protective order that Ford submitted in this case the same as

5  the one that I signed in the Christian versus Ford case?  If

6  there are any changes I want to know what they are.  Any

7  differences?

8           MR. BOORMAN:  Yes, Your Honor, they are very

9  similar.

10           THE COURT:  That's what I don't understand.

11           MR. BOORMAN:  Yes, Your Honor.

12           THE COURT:  How are they different?  How is this one

13  different?

14           MR. BOORMAN:  Your Honor, I would have to do a line

15  by line which I can do today and send it to everybody, but I

16  just don't want to represent to the Court --

17           THE COURT:  Would there be any reason given the

18  subject of this litigation and that litigation for a

19  protective order to be different in this case than in that

20  case?

21           MR. BOORMAN:  No, Your Honor.  If it makes it easier

22  for the Court, we'd be happy to submit that verbatim.  Just

23  take Christian off it and put that on.  We would absolutely be

24  fine with that if it makes it easier.

25           THE COURT:  Mr. Butler, I don't want to know all the

10:01:52AM 1    different agreements with their submitted order, but what is

2    the major heartburn that you've gone with regard to their

3    order?  What is the major thing you don't like about it?

4    Apparently Beasley Allen -- I'm not saying you've had more

5    success likely than Beasley Allen.  I'm just saying in my

6    experience with them they've been good and zealous lawyers in

7    prosecuting their claims.  What is it here that you don't like

8    or think unfairly prejudices your client?

9          MR. BUTLER:  Well, if the Court would indulge me

10   first let me point out that we throwing no shade on Beasley

11   Allen.

12         THE COURT:  Correct.

13         MR. BUTLER:  My firm has agreed to similar

14   protective orders in the past.  We did so in the Hill case.

15   We've done that because when you're dealing with automakers,

16   to get discovery going at all you have to bow down and knuckle

17   under and agree to those orders.  I've never liked them.  But

18   to answer the Court's question directly in the context of this

19   case, it's just so unnecessary.

20         In the filings we've made, we said that we thought

21   it was unnecessary.  Now that the Court has ruled that

22   discovery in Hill is the same as deemed discovery in this case

23   it becomes abundantly unnecessary because we're not going to

24   have to sort through a trainload literally, of Ford documents

25   like we did in the Hill case.  We will just use what we've

10:03:16AM 1  got.  And this is going to be precious little written

2  discovery in this case for production of documents.

3         THE COURT:  You're not going to be prejudice in

4  anyway by the entry of that order.

5         MR. BUTLER:  The problem is that once again,

6  whenever another lawyer calls, I probably ought to let Ms.

7  McCallister answer the question.

8         THE COURT:  That's not really my concern.  I

9  understand lawyers like to share stuff from one case to the

10  other.  I'm focused on giving you and the Defendants a fair

11  trial in this case.

12         MR. BUTLER:  It's crucial though, Your Honor,

13  because without sharing there's no way to prevent a Defendant

14  from concealing evidence; and that was proved in this case and

15  the Hill case.  The only way we found about the ERSP, Enhanced

16  Roof Strength Program for super duty trucks, is because our

17  lawyer in Alabama with a sharing protective order told us

18  about it.  Ford concealed it so the sharing non-sharing stuff

19  is really important.

20         If Ford is given the power to stamp on a particular

21  document, Ford decrees this was non-sharing; which they do

22  without any explanation or reason, then every time we

23  contemplate sharing documents with another lawyer Ms.

24  McCallister has to go through it and make sure which document

25  it is.  It becomes an onerous burden.  There's no articulation

10:04:46AM 1    by Ford why Ford is entitled to be able to decree that a

2    particular document is non-sharing with all the stuff that has

3    been filed with you they never articulate a reason for that.

4    Now, if they've got a document then there is no reason to

5    label some documents non-sharing.  The other problem with it

6    is this whole concept that some of these documents are

7    entitled to "confidentiality treatment" is we respectfully

8    submit baseless.

9         THE COURT:  Well, the problem is this, some may be

10   entitled to protection and some may not be.  So the question

11   is what is the most efficient, fair process to have in place

12   in the protective order to make the determination if you find

13   or you believe that they have asked for a document to not be

14   shared when it should be?  The Court can't just say, okay, you

15   can share everything because there could be documents that are

16   proprietary and confidential that should not be shared.  So

17   the question is what's the best process to get to that issue

18   if it arises?  There's go to be some process.  It can't just

19   be no protective order at all because in the past your

20   experience has been that they try to over protect.  There has

21   got to be some process in place.

22        MR. BUTLER:  I agree Your Honor.  I was trying to

23   get back the context here.

24        THE COURT:  I understand your context.  Your context

25   based on your experience is that they are going to seek to

10:06:39AM 1  overprotective.

2        MR. BUTLER:  I was going to go to the next context

3  argument, Your Honor.  That is that there are two categories

4  of documents that are pertinent for Plaintiff in this case.

5  One is documents about the initial roof design, which was done

6  in '94 and '95.  Those documents are almost 30 years old.

7  They were in a 1999 model year super duty truck first sold in

8  the fall of 1998.  So the thing has been sold for 25 years.

9  If a competitor wanted to know something about those documents

10 it could reverse engineer the roof; it's had 25 years to do

11 so.  I don't know why any competitor would want to reverse

12 engineer this particular roof, but if they wanted to they

13 could have done so.

14       The second category of documents are documents about

15 the enhanced roof, a project for super duty trucks.  That

16 project occurred in 2005-2006.  Going back to the first

17 category, Ford discontinued the use of the 1994 roof design

18 seven years ago.  The second category of documents is the ERSP

19 documents.  Those documents are now 17 years old.

20       THE COURT:  What you're asking me to do is to

21 preemptively decide whether something should be protected or

22 not even before there's a protective order filed by the Court.

23       MR. BUTLER:  No, sir, not at all.

24       THE COURT:  You're asking me to take this category

25 of documents and find that they should not be able to assert

10:08:14AM 1    privileges to those documents in advance.

2              MR. BUTLER:  No, sir.  No, sir, not at all.

3              THE COURT:  Okay.

4              MR. BUTLER:  It's fine with us.  Ford can stamp

5    whatever it wants to as confidential and we will challenge it.

6    And Ford wants us to explain to the Ford why we challenged it

7    and that's not appropriate.  They're not the judge.  If they

8    want to stamp a document confidential, this document they

9    claim is confidential, and we want to challenge it.  Then we

10   challenge it and they got to file a motion with the Court.

11             THE COURT:  What's the process Mr. Boorman in the

12   order that I've already entered in a similar case?  What's the

13   process there?

14             MR. BUTLER:  His process calls for a hearing.  His

15   process says the Ford process --

16             THE COURT:  There isn't going to be a hearing until

17   after you all have met in good faith to resolve it

18   face-to-face.

19             MR. BUTLER:  His process calls for him to do that.

20   We have to have a conference and I am missing a step.  Oh, the

21   parties have to discuss coming up with an alternative

22   procedure, which is another issue we have to address, and then

23   there has to be hearing.  That's another problem we have with

24   Ford's pattern for a protective order.  It's just so

25   cumbersome; there's no reason for it generally speaking.

10:09:43AM 1        THE COURT:  I'm assuming that the Defendant's

2   lawyers are going to have a substantial good-faith basis for

3   contesting disclosure of some document as far as it being

4   confidential; it's not going to simply routinely stamp --

5        MR. BUTLER:  Your Honor, most of the documents that

6   were produced in Hill were stamped confidential or subject to

7   protective order.  What percentage Ms. McCallister?  It was a

8   lot of them.

9        THE COURT:  Were there rulings by that Court that

10   they weren't?

11        MR. BUTLER:  In the Hill case there were five

12   motions to compel, four motions for sanction, 86 motions in

13   limine.  No, sir, Your Honor.  We gave up on this fight with

14   Ford in the Hill case because we didn't have time to fight it.

15   And there's not going to be a fight in this case because

16   you've already ruled the Hill discovered is deemed taken in

17   this case; it's not going to be very more documents.

18        THE COURT:  I've got to make sure that if there is a

19   fight on it that it's in the proper posture for me to decided

20   on it and today is not that posture in the protective order.

21   There just needs to be a process in place so that it can be

22   presented if it needs to be and then I can rule on it.  But

23   I'm not going to be very patient if somebody is marking

24   documents as confidential when there's no real substantial

25   basis to support it.  Mr. Boorman.

10:11:13AM 1          MR. BOORMAN:  Yes, Your Honor.

2          THE COURT:  And if I end up signing the protective

3     order that I've signed in the other case, and that becomes too

4     burdensome and ineffective, then we will amend the protective

5     order.

6          MR. BOORMAN:  Yes, sir.

7          THE COURT:  Because we're not going to get bogged

8     down in a lot of these little side bites that are going to

9     slow us towards our goal.  I've already provided a generous

10    discovery period and we're going to get it done within that

11    period.

12         MR. BUTLER:  Your Honor, just to respond to that

13    briefly.  You have given us more discovery period then we're

14    going to need because we're going to retry the Hill case with

15    an updated list of lawsuits and updated documents.  We've got

16    the documents we need except for some update.

17         THE COURT:  Did you file motions for summary

18    judgment in every one of these cases?

19         MR. BOORMAN:  In many of the cases Your Honor, we

20    do.

21         THE COURT:  Do you anticipate one will be filed in

22    this case?

23         MR. BOORMAN:  We anticipate we will file a motion

24    for partial summary judgment at least.  Yes, Your Honor.  Your

25    Honor, one thing I wanted to raise that came up in the Court's

10:12:19AM 1   discussion.  All we want is process.  We want to be able to

2   mark documents with a confidential protection and then they

3   can challenge it; and have process that we can meet and

4   confer.  If we can't come to an agreement, come to the Court

5   and then the Christian protective order; that process is in

6   paragraph four.

7          THE COURT:  Send the Christian protective order to

8   Mr. Butler.  You are already on your process.  Send it to him

9   by 5:00 p.m. tomorrow so he can review it.  And I'm going to

10  have you all submit a joint proposed scheduling order that

11  incorporates my schedule, and my rulings this morning, and the

12  final protective order by August 31, which I think is a week

13  from today.  Submit those to the Court and Mr. Butler, if you

14  have any objections other than those that you have already

15  stated to the Christian order, which is the one I'm inclined

16  to sign, then notify them what they are and they'll include

17  that in what they submit.

18          MR. BUTLER:  Your Honor, can we change that deadline

19  to August 30th?  I'm going to be traveling on August 31st.

20          THE COURT:  Yes, August 30th will be fine.

21          MR. BUTLER:  One other thing Your Honor.  Pursuant

22  to the first order the Court entered in this case, Plaintiff's

23  expert disclosures are due September 18.  Looking at my notes,

24  did you tell us when expert disclosures are due?

25          THE COURT:  I did not.  Typically, the parties can

10:14:25AM 1  agree to that once they know what the discovery period is

2  going to be.  Can you all agree to that or not?

3          MR. PEELER:  We've tried already one time Your

4  Honor.  You've got some strong language in your Rule 16 order

5  that comes out about not amending the initial time for expert

6  disclosures that you've set out in that order.  We would ask

7  that Plaintiff disclose their experts --

8          THE COURT:  Listen, I am flexible on -- Generally, I

9  should say I would normally defer to the parties if they could

10  come up with an expert disclosure schedule.  As long as the

11  date I'm concerned about is the end of discovery, the final

12  end of discovery.  If you all can come up with a better

13  disclosure of expert schedule, as long as it's done so that

14  the discovery deadline is not expired then it will be fine

15  with me, but I'm not really anticipating that you all are

16  necessarily going to reach agreement on what that should be so

17  we'll decide it today.

18          MR. PEELER:  The Defense had proposed, which was

19  similar in other cases, we proposed an August 15th discovery

20  deadline.  Your Honor has backed that up a month.  So the

21  Defendant could live for sure with the February 15, 2024,

22  Plaintiff expert disclosure; an April 15 Defendant expert

23  disclosure; and then a June 15 rebuttal disclosure.  So that

24  allows everyone to gather up the facts they need.

25          THE COURT:  Say those dates again so the Plaintiffs

10:16:14AM 1    that can write them down and digest them.

2              MR. PEELER:  The Plaintiff's expert disclosures

3    would be due February the 15th.  The Defense would be April

4    15; and then rebuttal would be June 15.

5              THE COURT:  And all discovery closes July 18th.

6              MR. PEELER:  Correct.

7              THE COURT:  Any heartburn over that schedule for

8    disclosure of experts Mr. Butler?

9              MR. BUTLER:  What was the July date Your Honor?

10             THE COURT:  The final discovery date the discovery

11   closes July 18th.

12             MR. BUTLER:  Yes, sir.  Let me look at something

13   right quick, Your Honor.  Frankly, I don't know why anybody

14   needs that long.  And I don't know why the Defendant needs two

15   month to identify its experts when they have defended about

16   200 of these cases.  They've already got their experts, at

17   least some of them.  They had four --

18             THE COURT:  Let's take this one by one.  When will

19   the Plaintiff be ready to disclose its experts?  I guess from

20   what I'm hearing you already know who they are today.  Are you

21   just going to use the same -- I guess you'll have different

22   medical experts.  I don't want to speculate about that.  When

23   does the Plaintiff wish to disclose his experts?

24             MR. BUTLER:  The dates that Mr. Peeler suggests

25   although I don't know we need that long.

10:18:35AM 1    THE COURT:  All right, if you all don't want that

2    long then we'll move it up.  Tell me when you want to disclose

3    your experts.

4        MR. BUTLER:  The problem I'm seeing here is when do

5    we depose these people?

6        THE COURT:  That's what I understand; it's not going

7    to be done after July the 18th.

8        MR. BUTLER:  That's the problem.

9        MR. PEELER:  The reason we have the 60 day --

10        THE COURT:  If the Plaintiffs want to move it up,

11   when can you reasonably name your experts?

12        MR. BUTLER:  Plaintiff.

13        THE COURT:  Yes.

14        MR. BUTLER:  We can do it by February 15th for

15   sure.

16        THE COURT:  Can you do it before then?

17        MR. BUTLER:  We could but Ford has insisted thus far

18   that it depose all the Plaintiff's experts before it discloses

19   its experts.  So the question then arises --

20        THE COURT:  If we move Ford up then we probably need

21   to move Plaintiff up a little bit.  I'm asking you when is the

22   earliest reasonable date for you to name your experts; is it

23   February or is it earlier?

24        MR. BUTLER:  We could do it earlier.

25        THE COURT:  That will help because that will move

10:19:35AM 1   Ford up corresponding.

2              MR. BUTLER:  As a practical matter the crucial

3      question is:  Is Ford going to be allowed to depose all of

4      Plaintiff's experts before it discloses any of its own

5      experts?  Because that affects that dates and the timeline.

6      Because you get into another problem then with this schedule,

7      if Plaintiff's rebuttal experts --

8              THE COURT:  Would the Plaintiff prefer that that

9      happens so that when you depose Ford's expert you will go

10     ahead in one deposition and learn their criticism of your

11     experts, which they likely will present at trial.

12             MR. BUTLER:  Doesn't matter in this case.

13             THE COURT:  Okay.  You tell me the earliest

14     reasonable time that you want to disclose your experts and

15     then we'll back Ford up a little bit.

16             MR. BUTLER:  I don't know.  What do we think?  We

17     were going to be ready in September because that's what the

18     Court's order told us to do.  We will back it up and have more

19     time and have more polished disclosures.  January, back them

20     all up a month.  I don't know what days of the week those are.

21             THE COURT:  We will find a weekday in the middle of

22     January.

23             MR. PEELER:  Your Honor, the dates that we propose

24     take into account that all of these experts are going to have

25     to rely on a lot of the facts that are in discovery specific

10:21:00AM 1    to this case.  The reason that we pushed it back to February

2    15; and then 60 days in April 15; at then 60 day June 15, all

3    before the close of discovery is to allow all of the fact

4    discovery that needs to happen to occur so that the experts

5    can form their opinions on the available facts and then not

6    have to go back later and revise opinions because additional

7    facts are discovered.  So that's the way that we staged it and

8    the reason we put the 60 day block between Plaintiff,

9    Defendant, and then Plaintiff, rebuttal is to allow for a

10   disclosure, deposition of the expert disclosure, by Defendant,

11   a deposition by the Plaintiff, and then a rebuttal by the

12   Plaintiff.  So from our standpoint that's going to be the most

13   efficient way to handle it.  So whether it's 30 days one way

14   or the other I don't think that should control is so much as

15   how can we set this up to get all the facts that the experts

16   need in order to make their disclosures to not have to

17   continually revise them.

18        MR. BUTLER:  Your Honor, I have to respond to that.

19   Number One, after 40 or 50 e-mails, we finally completed on

20   August 1 and 2, exhumations and autopsies of Mr. and Ms. Mills

21   whose bodies were taken in body bags to the hospital in

22   Bainbridge for Ford's radiologist to do all types of imaging:

23   x-ray, CT, MRI.  They've got all that.

24        Ford has affidavit signed by all of the key scene

25   witnesses, the flight nurse who showed up right behind the

10:22:45AM 1    Mills, two Troopers, EMTs, eight affidavits I think that's

2    right.  Those people are all around who've been available to

3    Ford and Ford is going to have many months from today if they

4    haven't already talked to some of the witness to go talk to

5    them.  Ford did the same thing in the Hill case and talked

6    about how they needed to depose all these people.  In the Hill

7    case there were not as many scene witnesses as this one, but

8    there were a dozen 15, Ford took two depositions.  The truth

9    is we don't need all this time but that's got nothing to do

10   with the question --

11              THE COURT:  What are your dates again Mr. Peeler?

12              MR. PEELER:  February the 15th is the Plaintiff's

13   expert disclosure, April 15th is Defendant's expert disclosure

14   with depositions occurring in that 60-day window, and then

15   June 15 is Plaintiff's rebuttal with depositions occurring

16   within that 60-day window.

17              THE COURT:  That's not going to be a 60-day window;

18   there's going to be a 30-day window.

19              MR. PEELER:  Yes, Your Honor, sorry for rebuttal it

20   is 30-days.  Nothing prejudices the Plaintiff in the schedule.

21              THE COURT:  In light of my schedule, which is a

22   little more expensive than what the Plaintiff's preferred,

23   this disclosure of expert witnesses nobody is going to be

24   prejudiced by this schedule because everything is still going

25   to be finished by July 18th.  So I'm going to --

10:24:27AM 1        MR. BUTLER:  We would ask respectfully to move it up

2    a month.  I've got the dates on the calendar.  We would

3    suggest these dates.  Plaintiff's disclosures by January 11,

4    Defendant's disclosures by March 7, Plaintiff's rebuttal by

5    May 9; that keeps the same two-month interregnums.  We just

6    moved it up a date to make sure that we don't get down here

7    and --

8        THE COURT:  I don't have a problem with that other

9    than what I don't want to happen is some expert -- There be

10   some discovery learned after the Plaintiff's disclosure and

11   their depositions that could alter their opinions and then

12   you've got another deposition of them to find out whether

13   they've got any supplemental changes in their opinions prior

14   to the trial.  Now, suppose if that happens the ruling could

15   be you're stuck with what you opined to in February; and you

16   can't change your mind or add anything.  But by at least

17   adding another month it gives you more time to make sure all

18   the experts have got all the facts they need.

19       MR. BUTLER:  Appreciate that observation by the

20   court.  I can say that as a practical matter the Defense

21   experts opinions will change after the deposition.

22       THE COURT:  It will.

23       MR. BUTLER:  It will.

24       THE COURT:  Regardless.

25       MR. BUTLER:  One of the reasons will be that they

10:26:03AM 1  learn something after the deposition that they didn't know

2  before.  So in an academic sense the Court's absolutely

3  correct.  In a practical matter it doesn't make any

4  difference.

5       MR. PEELER:  Your Honor, nothing prejudices the

6  Plaintiff --

7       THE COURT:  I suspect as a practical matter the

8  one-month expert schedule isn't going to matter either.

9       All right, Plaintiff's disclosure of experts, make

10  sure this is included in the scheduling order is February

11  15th; Defendant's disclosure April 15th; Plaintiff's

12  rebuttal disclosures June 15.  And Mr. Peeler I don't want to

13  hear you all coming back and complaining that 30 days was just

14  not enough time to take the deposition that Plaintiff's

15  rebuttal expert.  Our schedules are so busy we just couldn't

16  get it done in 30 days.  Plaintiff's have offered to do this

17  so that you will have 60 days to do that and you've insisted

18  on 30.

19       MR. PEELER:  Understood.

20       MR. BUTLER:  Your Honor, can I have a moment?  I

21  just remembered a possible scheduling conflict.  It appears,

22  nevermind.  I was, misapprehending the dates.  Our rebuttal is

23  June 15th.  I'll be back by then if there are any rebuttal

24  experts.  Thank you, Your Honor.

25       THE COURT:  Okay, let's make sure everybody

10:28:13AM 1    re-checks their calendars again for February of 2025 because

2    that date is going to be immovable because I can't move it

3    earlier than January because that's when try criminal cases;

4    and I can't really move it to March because I need to leave

5    that open for other criminal and civil cases.  I don't want to

6    push it off any farther so before we leave here let's just

7    make sure you are all available February 2025.

8             MR. BUTLER:  From Plaintiff's perspective I can say

9    that will trash one more quail season for me, but that's all

10   right.  I'm used to it.

11            THE COURT:  You just need to retire if you want to

12   go quail hunting.

13            MR. BUTLER:  My buddy Eddie Garland says he will

14   retire when the phone quits ringing or he can't hear it;

15   that's my policy, Your Honor.  There's nothing I'd rather be

16   doing on February 3rd than being in this courtroom trying this

17   case.

18            MR. PEELER:  February 3rd is great with the

19   Defendants Your Honor.

20            THE COURT:  Okay, what I expect to happen then is

21   for Defendant's Counsel to prepare a revised scheduling order

22   with my rulings today and with this schedule.  Mr. Butler, get

23   it to him by Monday at 5:00 along with the Christian

24   protective order Monday at 5:00.  And then Mr. Butler take a

25   couple of days to review it.  If you have objections still

10:30:06AM 1    tell them what they are and put that in the order where

2    there's a section where there is disagreements.  What I'll do

3    is read the two positions and I'll say I adopt the Plaintiffs

4    or I adopt Defendants, but don't you repeat all this other

5    briefing.  This conference I think is helpful and it should

6    narrow things down as far as my expectations.  And then get

7    that back to me, both orders for me to sign August 30th I

8    guess.

9            MR. BUTLER:  Yes, sir.

10            THE COURT:  Is there anything major that needs my

11    input that we haven't discussed at this time?

12            MR. PEELER:  Nothing from the Defendant, Your Honor.

13            THE COURT:  How long do we think this trial will

14    last?

15            MR. BUTLER:  Your Honor, the first Hill trial,

16    mistrial was declared on Friday morning I think it was the

17    third week of trial.  The second Hill trial lasted exactly

18    three weeks.  I can't estimate what Ford is going to do, but I

19    would say three weeks.

20            THE COURT:  Let me get Mr. Boorman's assessment of

21    how long he thinks.

22            MR. BOORMAN:  We agree with two to three weeks, Your

23    Honor.

24            THE COURT:  Okay, thank you.  Yes, sir.

25            MR. BUTLER:  Something in response to the Court's

10:32:22AM 1    question Your Honor.

2              THE COURT:  There is no surviving Plaintiff,

3    correct?

4              MR. BUTLER:  They are both dead.  Mr. Mills lived

5    for nine days in the hospital in Tallahassee and then he died.

6    Nothing further from the Plaintiff, Your Honor.

7              THE COURT:  Okay, I look forward to those two orders

8    and hopefully this thing will stay on track.  And based on

9    Mr. Butler's assessment this discovery should be conducted at

10   a leisurely pace since I've given everybody so much time.

11   Let's try to get as much done upfront as we can so nobody's

12   rushing around at the last minute looking for some kind of

13   extension.  We're not going to change this.  We're going to

14   trial in February; that's plenty of time, okay.  We're

15   adjourned.

16                      (Proceedings concluded.)

17                         END OF RECORD

18

19

20

21

22

23

24

25

10:33:20AM 1        CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Joan Drammeh, Federal Official Court

4  Reporter, in and for the United States District Court for the

5  Middle District of Georgia, do hereby certify that pursuant to

6  Section 753, Title 28, United States Code, that the foregoing

7  is a true and correct transcript of the stenographically

8  reported proceedings held in the above-entitled matter and

9  that the transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12

13  Dated this 28th day of August, 2023

14

15

16  _Joan Drammeh_

17

18  JOAN DRAMMEH, CVR, CCR

19  FEDERAL OFFICIAL COURT REPORTER

20

21

22        MY COMMISSION EXPIRES:

23        APRIL 1, 2024



24

25

MR. BOORMAN: [12]  15/11 15/15
17/13 18/8 18/11 18/14 18/21 25/1
25/6 25/19 25/23 36/22
MR. BUTLER: [57]
MR. PEELER: [20]  3/18 9/23 11/7
11/17 12/3 12/21 13/5 13/8 27/3 27/18
28/2 28/6 29/9 30/23 32/12 32/19 34/5
34/19 35/18 36/12
MS. WRIGHT: [3]  10/5 10/9 15/20
THE CLERK: [1]  3/5
THE COURT: [87]

'

'94 [1]  22/6
'95 [1]  22/6

0

00062 [1]  17/11
00088 [1]  3/6
09:24:10 [1]  3/2

1

1 and [1]  31/20
105 [2]  1/19 1/21
105TH [1]  1/14
11 [1]  33/3
1130 [1]  2/3
1199 [1]  1/17
12 [1]  1/16
127 [1]  2/1
12th [3]  6/9 6/18 6/19
13TH [3]  1/14 1/19 1/21
14-day [1]  6/11
15 [11]  10/25 27/21 27/22 28/4 28/4
31/2 31/2 31/2 32/8 32/15 34/12
15 rebuttal [1]  27/23
15th [8]  5/19 5/20 6/5 28/3 32/12 34/11
34/11 34/23
15th discovery [1]  27/19
15th for [1]  29/14
15th is [1]  32/13
16 [1]  27/4
1626 [2]  8/1 9/1
17 [1]  22/19
18 [4]  14/5 14/6 14/6 26/23
18th [9]  5/11 5/11 5/18 7/1 7/5 28/5
28/11 29/7 32/25
1994 [1]  22/17
1998 [1]  22/8
1999 [1]  22/7

2

200 [1]  28/16
2005-2006 [1]  22/16
2006 [1]  22/16
2023 [3]  1/5 3/2 38/13
2024 [13]  5/11 5/11 5/18 5/20 5/20 6/5
6/9 6/10 6/18 6/20 7/1 7/5 27/21
2025 [5]  5/6 5/6 5/8 35/1 35/7
24 [2]  1/5 3/2
25 [4]  10/16 10/17 22/8 22/10
26th [1]  6/10
28 [1]  38/6
28th [1]  38/13

3

30 [5]  22/6 31/13 34/13 34/16 34/18
30-day [1]  32/18
30-days [1]  32/20

3000 [1]  1/24
30308 [1]  1/23
30309 [1]  2/4
30324 [1]  1/16
30th [3]  26/19 26/20 36/7
31 [1]  26/12
31901 [2]  1/14 1/19
31902 [2]  1/17 1/21
31st [1]  26/19
35 [4]  13/25 14/4 14/12 16/14
3900 [1]  2/1
3rd [3]  5/6 5/6 35/16
3rd is [1]  35/18
3rd of [1]  5/8

4

40 [1]  31/19
44114 [1]  2/2
4:23-CV-00088 [1]  3/6
4:23-CV-00088-CDL [1]  1/4

5

50 [11]  10/16 10/16 10/19 10/19 10/20
10/21 11/2 11/11 11/12 11/12 31/19
5:00 [3]  13/24 35/23 35/24
5:00 p.m [1]  26/9

6

60 [5]  29/9 31/2 31/2 31/8 34/7
60-day [3]  32/14 32/16 32/17
600 [1]  1/24

7

753 [1]  38/6

8

86 [1]  24/12

9

99 percent [1]  17/6
999 [1]  2/3
9:30 a.m [1]  6/18

A

a.m [1]  6/18
able [4]  17/6 21/1 22/25 26/1
about [19]  4/7 4/18 7/22 8/20 10/20
13/2 13/24 16/14 19/3 20/15 20/18
22/5 22/9 22/14 27/5 27/11 28/15
28/22 32/6
above [1]  38/8
above-entitled [1]  38/8
absolutely [2]  18/23 34/2
abundantly [1]  19/23
academic [1]  34/2
according [1]  14/8
account [1]  30/24
actual [1]  6/21
actually [1]  15/11
add [1]  33/16
adding [1]  33/17
addition [4]  10/22 11/2 11/12 11/16
additional [3]  10/16 10/19 31/6
address [1]  37/15
adjourned [1]  37/15
admissible [3]  7/17 7/18 11/25
admissions [1]  10/17
admitted [16]  12/8 12/11 12/14 12/23
13/11 14/1 14/1 14/3 14/4 14/11 14/13
14/14 14/20 15/18 16/7 16/14

adopt [4]  6/1 6/2 36/3 36/4
advance [1]  25/1
affects [1]  30/5
affidavit [1]  31/24
affidavits [1]  32/1
after [12]  7/2 7/4 8/7 15/18 15/24 16/7
23/17 29/7 31/19 33/10 33/21 34/1
again [5]  6/3 20/5 27/25 32/11 35/1
against [2]  11/7 11/12
ago [2]  17/19 22/18
agree [5]  19/17 21/22 27/1 27/2 36/22
agreed [4]  4/15 15/21 15/23 19/13
agreement [5]  5/24 15/24 17/7 26/4
27/16
agreements [1]  19/1
ahead [1]  30/10
al [2]  1/4 3/7
Alabama [1]  20/17
all [56]
Allen [4]  17/15 19/4 19/5 19/11
ALLISON [3]  1/14 1/15 3/12
allow [3]  10/14 31/3 31/9
allowed [1]  30/3
allows [1]  27/24
almost [1]  22/6
along [2]  4/5 35/23
already [12]  10/25 11/4 12/16 23/12
24/16 25/9 26/8 26/14 27/3 28/16
28/20 32/4
also [2]  3/13 17/19
alter [1]  33/11
alternative [1]  23/21
although [1]  28/25
am [5]  12/2 17/9 18/1 23/20 27/8
amend [5]  6/23 7/3 7/5 16/2 25/4
amending [1]  27/5
among [1]  3/24
Andrews [1]  3/15
announce [1]  3/4
another [7]  20/6 20/23 23/22 23/23
30/6 33/12 33/17
answer [3]  16/8 19/18 20/7
anticipate [2]  25/21 25/23
anticipating [2]  8/20 27/15
any [30]  4/7 5/16 6/8 6/13 6/14 6/20
6/23 7/7 7/13 7/15 7/18 7/25 8/4 9/1
11/22 14/8 16/23 17/24 18/6 18/6
18/17 20/22 22/11 26/14 28/7 30/4
33/13 34/3 34/23 35/6
anybody [2]  5/7 28/13
anything [3]  17/18 33/16 36/10
anytime [1]  9/9
anyway [1]  20/4
apparently [4]  4/6 9/13 9/16 19/4
APPEARANCES [1]  1/12
appears [1]  34/21
apply [1]  6/13
Appreciate [1]  33/19
appropriate [1]  23/7
April [5]  27/22 28/3 31/2 32/13 34/11
are [60]
argue [1]  4/18
argument [3]  12/3 13/23 22/3
arises [2]  21/18 29/19
around [2]  32/2 37/12
articulate [1]  21/3
articulation [1]  20/25
as [36]  3/20 3/24 6/24 7/5 7/15 7/19
7/25 8/1 10/10 10/10 12/22 13/14
14/17 15/20 15/24 16/13 18/4 19/22

## A

as... [18]  23/5 24/3 24/3 24/24 27/10 27/10 27/13 27/13 30/2 31/14 32/7 32/7 33/20 34/7 36/6 36/6 37/11 37/11
ask [3]  6/15 27/6 33/1
asked [1]  21/13
asking [4]  6/12 22/20 22/24 29/21
assert [1]  22/25
assessment [2]  36/20 37/9
associated [3]  8/13 8/17 11/23
assumed [1]  14/12
assuming [1]  24/1
at [30]  5/7 6/11 6/18 7/17 7/22 8/5 9/25 12/4 13/24 14/11 15/2 15/3 16/24 18/1 19/16 21/19 22/23 23/2 25/24 26/23 28/12 28/16 30/11 31/2 33/16 35/23 35/24 36/11 37/9 37/12
ATLANTA [4]  1/16 1/25 2/4 10/2
AUGUST [12]  1/5 3/2 5/19 5/20 6/4 26/12 26/19 26/19 26/20 27/19 31/20 36/7 38/13
automakers [1]  19/15
autopsies [1]  31/20
available [11]  8/9 8/12 8/15 8/15 12/5 12/12 12/24 13/1 31/5 32/2 35/7
avoid [1]  13/22
avoided [1]  4/11
aware [1]  17/9

## B

back [12]  9/4 14/9 21/23 22/16 30/15 30/18 30/19 31/1 31/6 34/13 34/23 36/7
backed [1]  27/20
bags [1]  31/21
BAILEY [2]  1/14 3/13
Bainbridge [1]  31/22
based [2]  21/25 37/8
baseless [1]  21/8
basis [3]  12/17 24/2 24/25
be [102]
Beasley [4]  17/15 19/4 19/5 19/10
because [24]  7/11 12/14 13/23 14/1 19/15 19/23 20/13 20/16 21/15 21/19 24/14 24/15 25/7 25/14 29/25 30/5 30/6 30/17 31/6 32/24 35/1 35/2 35/3 35/4
becomes [3]  19/23 20/25 25/3
been [19]  3/23 4/10 8/7 11/20 12/1 12/10 12/16 12/20 13/4 13/11 13/13 13/24 14/2 14/14 19/6 21/3 21/20 22/8 32/2
before [13]  1/9 6/21 7/4 8/10 9/1 9/5 22/22 29/16 29/16 30/4 31/3 34/2 35/6
begin [1]  5/5
behalf [1]  3/19
behind [1]  31/25
being [4]  10/23 16/2 24/3 35/16
believe [4]  11/1 14/24 15/15 21/13
best [2]  5/3 21/17
better [1]  27/12
between [1]  31/8
beyond [1]  8/14
bit [3]  4/4 29/21 30/15
bites [1]  25/8
block [1]  31/8
bodies [1]  31/21
body [1]  31/21
bogged [1]  25/7
BOORMAN [8]  2/3 3/20 12/22 15/7

17/11 18/3 23/11 24/25
Boorman's [1]  36/20
both [4]  3/14 14/17 36/7 37/4
bow [1]  19/16
BOX [1]  1/17
BRENNAN [1]  1/14
briefing [4]  4/16 5/15 7/22 36/5
briefly [1]  25/13
BROGDON [3]  1/4 3/6 3/14
Bronco [1]  17/20
buddy [1]  35/13
burden [2]  9/5 20/25
burdensome [1]  25/4
busy [1]  34/15
but [37]  4/6 4/9 4/16 4/17 4/20 7/18 8/11 8/15 8/18 8/22 9/5 9/13 10/1 10/21 11/19 11/25 12/13 12/19 12/23 13/13 14/3 14/15 14/25 17/21 18/15 19/1 19/17 22/12 24/22 27/15 29/17 32/7 32/9 33/16 35/9 36/4 36/18
BUTLER [10]  1/21 3/11 10/3 13/16 18/25 26/8 26/13 28/8 35/22 35/24
Butler's [1]  37/9
BUTLERPRATHER.COM [4]  1/15 1/16 1/20 1/22

## C

calendar [1]  33/2
calendars [1]  35/1
call [3]  7/11 9/10 9/14
calls [3]  20/6 23/14 23/19
came [1]  25/25
camera [1]  16/19
can [32]  5/3 5/16 5/23 6/12 7/5 8/7 8/9 9/4 10/21 12/16 18/15 21/15 23/4 24/21 24/22 26/3 26/3 26/9 26/18 26/25 27/2 27/12 28/1 29/11 29/14 29/16 31/5 31/15 33/20 34/20 35/8 37/11
can't [11]  4/6 5/24 9/15 21/14 21/18 26/4 33/16 35/2 35/4 35/14 36/18
cannot [3]  3/25 15/5 16/23
Caroline [1]  3/15
case [62]
cases [11]  4/25 4/25 5/1 10/13 13/21 25/18 25/19 27/19 28/16 35/3 35/5
categories [1]  22/3
category [4]  22/14 22/17 22/18 22/24
cause [1]  7/3
CCR [2]  2/9 38/18
CDL [1]  1/4
CENTER [1]  2/1
certainly [2]  3/25 4/3
CERTIFICATE [1]  37/18
certified [1]  9/7
certify [1]  38/5
challenge [5]  13/13 23/5 23/9 23/10 26/3
challenged [1]  23/6
challenging [2]  13/12 17/9
Chamber [1]  12/15
chance [1]  4/18
change [4]  26/18 33/16 33/21 37/13
changes [2]  18/6 33/13
characterize [1]  12/7
CHARLES [1]  1/24
CHARLES.PEELER [1]  1/25
Charlie [1]  3/18
check [2]  10/3 15/12
checked [1]  14/9

checks [1]  35/1
Christian PT 17/10 18/5 18/23 26/5 26/7 26/15 35/23
civil [4]  4/2 4/25 7/24 35/5
claim [3]  14/8 16/25 23/9
claimed [2]  14/7 16/15
claims [1]  19/7
clarification [1]  10/18
CLAY [1]  1/9
clear [2]  3/9 9/1
clerk [6]  3/3 3/22 6/6 6/6 6/11 6/15
CLEVELAND [2]  2/2 9/23
client [2]  17/18 19/8
close [4]  5/10 5/18 14/13 31/3
closes [2]  28/5 28/11
Code [1]  38/6
collectively [1]  10/15
COLUMBUS [7]  1/2 1/6 1/14 1/17 1/19 1/21 10/1
come [8]  10/1 10/2 10/6 10/9 26/4 26/4 27/10 27/12
comes [2]  7/2 27/5
coming [2]  23/21 34/13
common [2]  8/3 13/21
COMPANY [2]  1/6 3/7
comparable [1]  7/17
compel [3]  8/23 9/6 24/12
competitor [2]  22/9 22/11
complaining [1]  34/13
completed [1]  31/19
compromise [1]  4/5
concealed [1]  20/18
concealing [1]  20/14
concept [1]  21/6
concern [1]  20/8
concerned [1]  27/11
conciliation [1]  4/10
concluded [2]  8/8 37/16
conducted [1]  37/9
confer [1]  26/4
conference [9]  1/9 3/6 6/17 6/19 9/3 10/8 23/20 36/5 38/10
confidential [10]  13/10 14/5 21/16 23/5 23/8 23/9 24/4 24/6 24/24 26/2
confidentiality [3]  12/6 14/8 21/7
conflict [2]  5/8 34/21
conformance [1]  38/9
consented [1]  17/23
considered [1]  16/3
considering [1]  16/11
consistent [1]  10/12
contemplate [1]  20/23
contemplated [1]  10/23
contemplates [1]  8/13
contentious [1]  5/4
contentiousness [1]  4/20
contesting [1]  24/3
context [7]  13/17 13/25 19/18 21/23 21/24 21/24 22/2
continually [1]  31/17
continue [1]  16/16
continued [1]  12/20
continuing [1]  11/23
control [1]  31/14
convenient [1]  8/9
correct [13]  11/13 12/22 13/5 13/16 14/18 16/5 17/12 17/13 19/12 28/6 34/3 37/3 38/7
corresponding [1]  30/1
could [12]  4/9 4/10 15/3 21/15 22/10

**C**

could... [7]  22/13 27/9 27/21 29/17 29/24 33/11 33/14
couldn't [1]  34/15
counsel [2]  3/13 35/21
count [3]  11/7 11/12 14/4
county [1]  15/2
couple [3]  3/19 17/18 35/25
court [31]  1/1 4/24 5/1 5/14 5/16 7/1 7/25 9/5 13/18 13/19 14/15 14/17 16/19 17/10 17/16 17/24 18/16 18/22 19/9 19/21 21/14 22/22 23/10 24/9 26/4 26/13 26/22 33/20 38/3 38/4 38/19
Court's [8]  4/2 7/25 16/6 19/18 25/25 30/18 34/2 36/25
courtroom [3]  6/18 14/18 35/16
courts [1]  12/15
criminal [3]  4/25 35/3 35/5
criticism [1]  30/10
crucial [2]  20/12 30/2
CT [1]  31/23
cumbersome [1]  23/25
currently [3]  13/11 13/14 16/2
CV [3]  1/4 3/6 17/11
CVN [1]  14/17
CVR [2]  2/9 38/18

**D**

DAN [2]  1/16 3/12
DANIEL [1]  1/16
date [10]  5/8 5/17 7/2 7/4 27/11 28/9 28/10 29/22 33/6 35/2
Dated [1]  38/13
dates [8]  27/25 28/24 30/5 30/23 32/11 33/2 33/3 34/22
day [10]  4/19 6/11 29/9 31/2 31/8 32/14 32/16 32/17 32/18 38/13
days [11]  8/10 9/13 30/20 31/2 31/13 32/20 34/13 34/16 34/17 35/25 37/5
dead [1]  37/4
deadline [6]  5/14 5/15 6/7 26/18 27/14 27/20
dealing [1]  19/15
decedents [1]  7/12
December [2]  6/18 6/19
decide [6]  4/16 5/16 5/17 8/22 22/21 27/17
decided [1]  24/19
deciding [1]  16/21
decision [1]  16/4
decisions [1]  4/8
declared [1]  36/16
decree [1]  21/1
decrees [1]  20/21
deemed [2]  19/22 24/16
DEFENDANT [14]  1/6 1/23 3/17 8/14 10/15 12/1 13/21 20/13 27/21 27/22 28/14 31/9 31/10 36/12
Defendant's [7]  6/1 6/2 24/1 32/13 33/4 34/11 35/21
Defendants [5]  5/21 11/6 13/13 20/10 35/19 36/4
defended [1]  28/15
Defense [3]  27/18 28/3 33/20
defer [1]  27/9
delay [1]  16/18
depose [5]  29/5 29/18 30/3 30/9 32/6
deposition [8]  8/21 30/10 31/10 31/11 33/12 33/21 34/1 34/14

depositions [7]  7/22 8/4 8/7 32/8 32/14 32/15 33/1
design [2]  22/5 22/17
determination [1]  21/12
determinations [1]  7/23
did [10]  4/19 9/13 9/18 14/4 19/14 19/25 25/17 26/24 26/25 32/5
didn't [2]  24/14 34/1
died [1]  37/5
difference [1]  34/4
differences [2]  4/16 18/7
different [5]  18/12 18/13 18/19 19/1 28/21
digest [1]  28/1
directly [2]  16/3 19/18
disagreements [3]  3/24 36/2
disclose [5]  27/7 28/19 28/23 29/2 30/14
disclosed [7]  11/21 12/1 12/17 12/20 13/4 13/7 16/24
discloses [2]  29/18 30/4
disclosure [17]  12/8 12/19 24/3 27/10 27/13 27/22 27/23 27/23 28/8 31/10 31/10 32/13 32/13 32/23 33/10 34/9 34/11
disclosures [9]  26/23 26/24 27/6 28/2 30/19 31/16 33/3 33/4 34/12
discontinued [1]  22/17
discoverable [1]  11/24
discovered [2]  24/16 31/7
discovery [34]  5/4 5/10 5/13 5/14 5/18 7/7 7/13 7/16 7/19 8/7 8/24 8/25 9/10 16/22 16/23 19/16 19/22 19/22 20/2 25/10 25/13 27/1 27/11 27/12 27/14 27/19 28/5 28/10 28/10 30/25 31/3 31/4 33/10 37/9
discuss [1]  23/21
discussed [1]  36/11
discussion [1]  26/1
displayed [2]  14/14 14/15
dispositive [6]  5/15 5/16 5/19 6/4 6/8 6/14
dispute [4]  8/20 9/3 9/9 9/10
distinction [1]  12/21
distributed [1]  14/18
district [7]  1/1 1/1 1/10 9/24 10/2 38/4 38/5
DIVISION [1]  1/2
do [34]  4/9 5/1 5/3 6/1 6/24 6/25 9/4 9/14 10/19 11/15 17/4 17/17 18/14 18/15 20/21 22/10 22/20 23/19 25/20 25/21 29/4 29/14 29/16 29/24 30/16 30/18 31/22 32/9 34/16 34/17 36/2 36/13 36/18 38/5
docket [5]  12/14 12/25 15/10 15/13 15/16
document [11]  13/1 13/3 15/2 20/21 20/24 21/2 21/4 21/13 23/8 23/8 24/3
documents [43]
does [6]  5/6 7/18 11/11 16/24 17/2 28/23
doesn't [6]  11/22 12/7 17/20 17/21 30/12 34/3
doing [2]  13/24 35/16
don't [32]  3/8 4/12 8/22 10/13 11/25 12/15 14/13 14/24 16/20 17/2 17/25 18/10 18/16 18/25 19/3 19/7 22/11 28/13 28/14 28/22 28/25 29/1 30/16 30/20 31/14 32/9 33/6 33/8 33/9 34/12 35/5 36/4

done [14]  4/6 7/1 10/12 10/25 11/4 16/17 18/6 22/5 22/13 25/10 27/13 29/7 34/16 37/11
down [11]  4/23 5/2 5/5 15/1 16/10 16/22 19/16 25/8 28/1 33/6 36/6
dozen [1]  32/8
draft [1]  5/22
DRAMMEH [4]  2/9 2/10 38/3 38/18
due [7]  5/19 6/4 6/8 6/9 26/23 26/24 28/3
during [2]  4/25 5/2
Dusty [1]  3/13
duty [3]  20/16 22/7 22/15

**E**

e-mails [2]  9/4 31/19
each [2]  9/4 10/14
earlier [3]  29/23 29/24 35/3
earliest [2]  29/22 30/13
easier [3]  9/16 18/21 18/24
Eddie [1]  35/13
EDWARD [1]  1/24
effectuating [1]  17/8
efficient [2]  21/11 31/13
effort [1]  9/8
eight [4]  14/7 16/16 16/19 32/1
either [1]  34/8
electronically [1]  10/10
ELIZABETH [2]  2/1 3/20
ELIZABETH.WRIGHT [1]  2/2
else [1]  5/2
EMTs [1]  32/1
end [5]  5/12 25/2 27/11 27/12 37/17
engineer [2]  22/10 22/12
enhanced [2]  20/15 22/15
enough [1]  34/14
enter [1]  18/1
entered [3]  16/6 23/12 26/22
entitled [4]  21/1 21/7 21/10 38/8
entry [1]  20/4
ERSP [2]  20/15 22/18
establish [1]  7/3
established [1]  8/8
estates [1]  3/14
estimate [1]  36/18
et [2]  1/4 3/6
EVAN [1]  1/16
even [5]  8/7 9/13 15/18 16/7 22/22
ever [1]  4/13
every [3]  4/18 20/22 25/18
everybody [3]  18/15 34/25 37/10
everyone [1]  27/24
everything [2]  21/15 32/24
evidence [11]  7/16 12/4 12/9 12/14 12/24 14/1 14/2 14/20 15/19 16/7 20/14
exactly [1]  36/17
example [1]  11/21
excellent [1]  17/1
except [1]  25/16
exception [1]  8/17
executor [1]  3/14
exhibits [1]  13/10
exhumations [1]  31/20
expect [1]  35/20
expectations [2]  36/6
expensive [1]  32/22
experience [4]  17/16 19/6 21/20 21/25
experienced [1]  4/1
expert [16]  26/23 26/24 27/5 27/10

**E**

expert... [12]  27/13 27/22 27/22 28/2
30/9 31/10 32/13 32/13 32/23 33/9
34/8 34/15
experts [24]  27/7 28/8 28/15 28/16
28/19 28/22 28/23 29/3 29/11 29/18
29/19 29/22 30/4 30/5 30/7 30/11
30/14 30/24 31/14 31/15 33/18 33/21
34/9 34/24
expired [1]  27/14
explain [1]  23/6
explanation [1]  20/22
extension [3]  6/13 6/15 37/13
extensions [7]  5/12 5/13 6/5 6/7 6/10
6/11 6/16
extent [1]  12/7

**F**

face [8]  9/2 9/2 9/8 9/8 9/19 9/19 23/18
23/18
fact [2]  16/23 31/3
factored [1]  10/23
facts [6]  27/24 30/25 31/5 31/7 31/15
33/18
faint [1]  9/12
fair [2]  20/10 21/11
fairly [2]  5/4 17/9
faith [4]  9/2 9/8 23/17 24/2
fall [1]  22/8
falling [1]  13/22
far [4]  10/10 24/3 29/17 36/6
farther [1]  35/6
February [17]  5/6 5/6 5/8 6/21 27/21
28/3 29/14 29/23 31/1 32/12 33/15
34/10 35/1 35/7 35/16 35/18 37/14
Federal [5]  4/1 7/24 8/18 38/3 38/19
Felicia [1]  17/10
few [1]  14/2
Fifty [1]  11/3
fight [4]  24/13 24/14 24/15 24/19
file [5]  6/16 7/4 23/10 25/17 25/23
filed [8]  9/24 13/20 15/7 16/1 17/10
21/3 22/22 25/21
filing [1]  9/1
filings [1]  19/20
filmed [1]  14/17
final [6]  6/17 6/19 6/20 26/12 27/11
28/10
finally [1]  31/19
find [7]  5/2 15/2 17/25 21/12 22/25
30/21 33/12
fine [6]  10/3 11/3 18/24 23/4 26/20
27/14
finished [1]  32/25
firm [2]  17/15 19/13
first [10]  5/22 14/9 14/11 14/13 14/17
19/10 22/7 22/16 26/22 36/15
five [2]  13/25 24/11
flexible [1]  27/8
flight [1]  31/25
focused [1]  20/10
folks [1]  3/19
follow [1]  10/14
FORD [43]
Ford's [4]  15/8 23/24 30/9 31/22
foregoing [1]  38/6
form [1]  31/5
format [1]  38/9
forth [1]  9/4
forward [1]  37/7

**G**

found [3]  17/16 17/17 20/15
four [3]  24/12 26/6 28/17
frankly [1]  16/20 28/13
Friday [1]  36/16
front [2]  5/12 16/4
fundamental [1]  11/20
further [1]  37/6

**G**

GA [7]  1/14 1/16 1/17 1/19 1/21 1/25
2/4
GAMD.USCOURTS.GOV [1]  2/10
Garland [1]  35/13
gather [1]  27/24
gave [1]  24/13
general [1]  8/11
generally [3]  8/22 23/25 27/8
generous [1]  25/9
GEORGIA [4]  1/1 1/6 9/22 38/5
get [23]  5/15 6/25 6/25 7/6 9/10 11/18
12/15 13/23 16/16 17/5 19/16 21/17
21/23 25/7 25/10 30/6 31/15 33/6
34/16 35/22 36/6 36/20 37/11
give [3]  4/18 6/12 6/20
given [6]  4/19 5/3 18/17 20/20 25/13
37/10
gives [2]  11/10 33/17
giving [1]  20/10
glad [1]  4/9
Glenn [1]  3/15
go [9]  10/2 15/12 20/24 21/18 22/2
30/9 31/6 32/4 35/12
goal [1]  25/9
going [58]
gone [2]  14/9 19/2
good [9]  3/3 3/11 3/18 7/3 9/2 9/8 19/6
23/17 24/2
good-faith [1]  24/2
got [23]  3/19 4/23 5/13 9/9 9/18 11/13
16/13 16/21 17/22 20/1 21/4 21/21
23/10 24/18 25/15 27/4 28/16 31/23
32/9 33/2 33/12 33/13 33/18
governed [1]  8/18
governs [1]  13/9
grace [1]  6/11
great [1]  35/18
guess [4]  8/12 28/19 28/21 36/8
guided [2]  7/23 8/2
Gunn [1]  9/10

**H**

had [14]  3/23 4/13 4/23 6/22 10/21
14/5 14/12 14/24 15/11 17/15 19/4
22/10 27/18 28/17
handle [3]  4/24 4/24 31/13
hands [1]  9/11
happen [3]  31/4 33/9 35/20
happened [1]  14/25
happens [2]  30/9 33/14
happy [4]  10/5 10/5 10/9 18/22
hard [1]  13/19
harmful [1]  17/18
has [22]  5/14 8/7 10/12 11/20 11/22
11/25 12/10 13/3 13/13 15/15 16/15
19/13 19/21 20/24 21/2 21/20 21/20
22/8 23/23 27/20 29/17 31/24
have [58]
haven't [3]  14/9 32/4 36/11
having [3]  11/19 17/24 17/25

**H**

he [9]  6/15 9/12 14/24 15/8 26/9 35/13
35/14 36/9 37/5
he'll [1]  9/10
hear [2]  34/13 35/14
hearing [5]  4/11 23/14 23/16 23/23
28/20
heartburn [2]  19/2 28/7
held [1]  38/8
help [2]  9/11 29/25
helpful [2]  13/18 36/5
here [14]  3/16 3/20 3/20 4/10 4/19 5/12
9/22 10/6 10/9 19/7 21/23 29/4 33/6
35/6
hereby [1]  38/5
hidden [1]  12/15
Hill [34]  7/9 7/10 7/13 7/14 7/14 10/21
11/7 11/11 11/13 12/4 14/1 14/5 14/7
14/9 14/11 14/13 14/16 14/17 15/21
16/8 16/14 19/4 19/22 19/25 20/15
24/6 24/11 24/14 24/16 25/14 32/5
32/6 36/15 36/17
him [4]  9/14 23/19 26/8 35/23
hinder [1]  16/24
his [5]  16/4 23/14 23/14 23/19 28/23
hold [1]  9/11
Honor [47]
HONORABLE [1]  1/9
hopefully [3]  4/5 8/2 37/8
hospital [2]  31/21 37/5
how [9]  11/25 12/16 16/24 18/12 18/12
31/15 32/6 36/13 36/21
hunting [1]  35/12

**I**

I'd [1]  35/15
I'll [7]  4/8 4/16 6/1 8/18 34/23 36/2 36/3
I'm [32]  4/17 4/22 5/4 5/21 7/6 7/15
7/23 8/1 8/2 8/19 9/9 10/7 10/14 11/18
11/19 14/24 17/4 19/4 19/5 20/10 24/1
24/23 26/9 26/15 26/19 27/11 27/15
28/20 29/4 29/21 32/25 35/10
I've [16]  3/19 4/12 4/13 4/17 9/18 10/11
10/12 13/24 17/15 19/17 23/12 24/18
25/3 25/9 33/2 37/10
identify [2]  3/9 28/15
if [52]
imaging [1]  31/22
immovable [1]  35/2
importance [1]  4/3
important [1]  20/19
in [156]
inaudible [1]  16/3
inclined [2]  18/1 26/15
include [2]  11/2 26/16
included [1]  34/10
including [2]  11/4 13/10
incorporates [1]  26/11
indulge [1]  19/9
ineffective [1]  25/4
informally [1]  9/15
information [3]  10/11 11/20 11/22
informed [1]  3/22
initial [2]  22/5 27/5
input [1]  36/11
insisted [2]  29/17 34/17
internet [1]  12/5
interregnums [1]  33/5
interrogatories [3]  10/16 10/16 11/7
into [12]  10/23 12/9 12/14 12/23 13/23
14/1 14/2 14/25 15/18 16/7 30/6 30/24

**I**

inverse [1]  8/24
involve [3]  17/20 17/20 17/21
involved [1]  17/12
involvement [1]  17/24
iron [1]  6/20
irreconcilable [1]  5/8
is [116]
isn't [2]  23/16 34/8
issue [5]  11/20 16/3 16/21 21/17 23/22
issued [1]  7/25
issues [2]  4/20 8/1
it [114]
it's [20]  6/15 7/10 7/17 10/12 14/10
14/18 14/22 14/22 16/22 19/2 19/20 20/12
22/10 23/4 23/24 24/4 24/17 24/19
27/13 29/6 31/13
items [1]  12/18
its [5]  8/8 28/15 28/19 29/19 30/4

**J**

JAMES [2]  1/21 3/13
January [6]  7/1 7/4 30/19 30/22 33/3
35/3
JIM [2]  1/22 3/11
JOAN [4]  2/9 2/10 38/3 38/18
job [1]  4/8
join [1]  6/24
joint [2]  3/23 26/10
jointly [1]  4/14
JR [1]  1/21
judge [9]  1/10 6/12 13/6 14/23 15/16
16/3 16/4 16/10 23/7
judged [1]  15/25
judgment [3]  4/17 25/18 25/24
Judicial [1]  38/10
July [8]  5/10 5/11 5/18 28/5 28/9 28/11
29/7 32/25
June [6]  27/23 28/4 31/2 32/15 34/12
34/23
just [35]  3/8 4/9 7/3 7/14 7/19 8/5 8/20
9/12 9/12 9/14 9/17 10/18 11/8 11/19
14/2 14/15 14/22 18/1 18/16 18/22
19/5 19/19 19/25 21/14 21/18 23/24
24/21 25/12 28/21 33/5 34/13 34/15
34/21 35/6 35/11

**K**

keep [3]  4/5 5/16 15/22
keeps [1]  33/5
key [2]  2/1 31/24
kind [2]  17/6 37/12
know [15]  4/13 5/7 15/8 18/6 18/25
22/9 22/11 27/1 28/13 28/14 28/20
28/25 30/16 30/20 34/1
knows [1]  4/7
knuckle [1]  19/16

**L**

label [1]  21/5
Labor [1]  4/19
LAND [1]  1/19
language [1]  27/4
LARAE [1]  1/17 3/12
last [2]  36/14 37/12
lasted [1]  36/17
later [1]  31/6
law [2]  3/22 17/15
lawsuits [1]  25/15
lawyer [5]  3/24 15/11 20/6 20/17 20/23

lawyers [12]  4/1 4/18 9/7 9/13 9/14
9/22 9/11 17/22 17/22 19/8 20/9 24/2
learn [2]  30/10 34/1
learned [1]  33/10
least [3]  25/24 28/17 33/16
leave [1]  6/25 35/4 35/6
leisurely [1]  37/10
LENOX [1]  1/16
less [2]  4/7 11/10
let [4]  19/10 20/6 28/12 36/20
let's [4]  28/18 34/25 35/6 37/11
light [1]  32/21
like [7]  4/16 5/1 9/14 19/3 19/7 19/25
20/9
liked [1]  19/17
likely [1]  19/5 30/11
limine [1]  24/13
line [2]  18/14 18/15
lines [1]  13/1
list [1]  25/15
Listen [1]  27/8
literally [1]  19/24
litigation [2]  18/18 18/18
little [9]  4/4 4/10 5/17 8/3 20/1 25/8
29/21 30/15 32/22
live [2]  8/16 27/21
lived [1]  37/4
LMOORE [1]  1/18
local [3]  4/2 7/25 7/25
long [7]  27/10 27/13 28/14 28/25 29/2
36/13 36/21
look [1]  15/2 15/3 28/12 37/7
looking [1]  8/2 26/23 37/12
lot [4]  9/14 24/8 25/8 30/25

**M**

made [6]  9/8 10/24 12/25 15/24 15/25
19/20
mails [1]  9/4 31/19
maintain [1]  12/17
major [3]  19/2 19/3 36/10
make [16]  4/8 6/5 9/17 10/7 11/8 17/1
20/24 21/12 24/18 31/16 33/6 33/17
34/3 34/9 34/25 35/7
makes [4]  9/7 9/15 18/21 18/24
making [1]  7/15
many [4]  13/18 25/19 32/3 32/7
March [2]  33/4 35/4
mark [1]  26/2
marked [1]  19/9
marking [1]  24/23
matter [11]  6/24 7/5 14/22 15/4 30/2
30/12 33/20 34/3 34/7 34/8 38/8
matters [2]  4/24 6/20
may [10]  7/14 8/15 11/23 11/24 13/17
14/2 17/20 21/9 21/10 33/5
MBOORMAN [1]  2/4
McCallister [5]  3/15 14/4 20/7 20/24
24/7
me [24]  3/22 4/9 5/24 9/10 10/4 11/22
12/23 16/21 19/9 19/10 22/20 22/24
24/19 27/15 28/12 29/2 30/13 35/9
36/7 36/7 36/20
mean [2]  10/19 10/20
medical [1]  28/22
meet [1]  26/3
meetings [1]  9/25
member [1]  15/1
met [3]  9/7 9/7 23/17
MICHAEL [1]  2/3

middle [3]  1/1 30/21 38/5
Mike [1]  3/11
Mill [2]  7/7 7/11
Mills [4]  7/7 31/20 32/1 37/4
mind [1]  33/16
minor [1]  4/15
minute [2]  11/19 37/12
misapprehending [1]  34/22
missing [1]  23/20
misstated [1]  11/15
Missus [1]  3/14
mistrial [2]  14/12 36/16
misunderstanding [1]  12/2
model [1]  22/7
modify [3]  14/6 16/13 16/15
moment [2]  7/7 34/20
Monday [2]  35/23 35/24
month [7]  27/20 28/15 30/20 33/2 33/5
33/17 34/8
months [2]  17/19 32/3
MOORE [1]  1/17 3/12
more [9]  4/10 19/4 24/17 25/13 30/18
30/19 32/22 33/17 35/9
morning [7]  3/3 3/4 3/11 3/18 13/24
26/11 36/16
most [4]  14/16 21/11 24/5 31/12
motion [14]  4/17 5/15 5/17 7/4 9/2 9/5
13/20 13/22 14/6 16/1 16/13 16/15
23/10 25/23
motions [12]  5/16 5/19 6/4 6/8 6/14
6/23 8/23 8/24 24/12 24/12 24/12
25/17
MOTOR [2]  1/6 3/7
move [8]  29/2 29/10 29/20 29/21 29/25
33/1 35/2 35/4
moved [1]  33/6
moving [1]  4/5
MR [12]  1/16 1/19 1/24 2/3 3/3 3/13 6/6
15/7 17/11 23/11 31/20 37/4
Mr. [17]  9/10 10/3 12/22 13/16 18/3
18/25 24/25 26/8 26/13 28/8 28/24
32/11 34/12 35/22 35/24 36/20 37/9
Mr. Boorman [3]  12/22 18/3 24/25
Mr. Boorman's [1]  36/20
Mr. Butler [8]  10/3 13/16 18/25 26/8
26/13 28/8 35/22 35/24
Mr. Butler's [1]  37/9
Mr. Gunn [1]  9/10
Mr. Peeler [3]  28/24 32/11 34/12
MRI [1]  31/23
MS [11]  1/14 1/17 2/1 3/15 3/20 9/23
14/3 20/6 20/23 24/7 31/20
Ms. [1]  3/15
Ms. Glenn [1]  3/15
much [4]  4/13 31/14 37/10 37/11
mutually [1]  8/9
my [21]  3/22 4/8 8/11 9/12 9/18 11/5
12/10 14/25 18/2 19/5 19/13 20/8
26/11 26/11 26/23 32/21 35/13 35/15
35/22 36/6 36/10

**N**

name [2]  29/11 29/22
narrow [1]  36/6
NE [3]  1/16 1/24 2/3
necessarily [2]  10/1 27/16
necessary [1]  12/20
need [16]  7/4 7/18 8/5 8/16 9/2 10/1
25/14 25/16 27/24 28/25 29/20 31/16
25/16 26/11 26/23 32/21 35/13 35/15
35/22 36/9 35/4 35/11

**N**

needed [1] 32/6
needs [7] 5/20 24/21 24/22 28/14 28/14 31/4 36/10
Network [1] 14/18
never [3] 17/17 19/17 21/3
nevermind [1] 34/22
Nevertheless [1] 4/12
new [1] 5/22
next [1] 22/2
Nick [1] 3/15
nine [2] 4/14 37/5
Ninety [1] 4/14
Ninety-nine percent [1] 4/14
no [26] 5/11 5/13 6/5 6/6 6/10 6/13 6/16 9/5 9/18 9/23 10/9 13/17 16/9 18/21 19/10 20/13 20/25 21/4 21/19 22/23 23/2 23/2 23/25 24/13 24/24 37/2
nobody [1] 32/23
nobody's [1] 37/11
non [6] 17/23 18/3 20/18 20/21 21/2 21/5
non-sharing [6] 17/23 18/3 20/18 20/21 21/2 21/5
nondisclosure [1] 12/17
nondisclosures [1] 12/18
None [1] 9/3
normally [1] 27/9
not [63]
noted [2] 6/16 6/23
notes [4] 5/21 6/6 9/18 26/23
nothing [6] 32/9 32/20 34/5 35/15 36/12 37/6
notified [1] 6/11
notify [1] 26/16
now [9] 14/9 14/21 15/24 16/1 17/25 19/21 21/4 22/19 33/14
number [3] 10/23 17/11 31/19
number 4:22-CV-00062 [1] 17/11
Number One [1] 31/19
nurse [1] 31/25

**O**

object [2] 5/23 8/21
objections [2] 26/14 35/25
observation [1] 33/19
observed [1] 12/13
obvious [1] 7/24
obviously [2] 4/23 17/5
occur [1] 31/4
occurred [1] 22/16
occurring [2] 32/14 32/15
off [2] 18/23 35/6
offered [1] 34/16
office [1] 15/12
OFFICIAL [3] 38/1 38/3 38/19
OH [3] 2/2 7/10 23/20
Ohio [2] 9/23 10/8
okay [20] 3/8 3/17 3/22 5/9 7/13 9/9 11/6 11/15 11/17 13/3 13/16 14/22 21/14 23/3 30/13 34/25 35/20 36/24 37/7 37/14
old [2] 22/6 22/19
on [43]
once [3] 12/19 20/5 27/1
one [26] 6/22 7/11 9/9 9/17 9/25 11/19 15/8 18/5 18/12 20/9 22/5 25/18 25/21 25/25 26/15 26/21 27/3 28/18 28/18 30/10 31/13 31/19 32/7 33/25 34/8

35/9
one-month [1] 34/8
onerous [1] 20/25
only [5] 12/12 12/25 14/7 14/19 20/15
open [2] 14/15 35/5
opined [1] 33/15
opinions [5] 31/5 31/6 33/11 33/13 33/21
opponent [1] 8/18
opposed [1] 14/6
opposing [1] 13/13
or [37] 3/14 4/15 6/2 6/14 6/14 6/24 7/7 8/11 8/20 8/24 9/6 10/2 10/8 10/11 11/2 11/24 12/2 12/18 13/1 14/12 15/3 15/9 16/11 17/20 18/1 19/8 20/22 21/13 22/21 24/6 27/2 29/23 31/14 31/19 33/16 35/14 36/4
order [60]
ordered [1] 13/6
orders [6] 7/25 8/25 19/14 19/17 36/7 37/7
other [24] 4/4 4/23 4/24 4/24 4/25 5/2 6/22 6/25 8/10 8/16 9/4 10/13 11/24 17/21 20/10 21/5 25/3 26/14 26/21 27/19 31/14 33/8 35/5 36/4
otherwise [1] 12/19
ought [1] 20/6
our [14] 3/19 4/25 8/25 12/6 14/6 15/11 15/20 15/23 17/11 20/16 25/9 31/12 34/15 34/22
out [11] 3/4 6/20 8/9 9/12 9/15 10/3 14/22 19/10 27/5 27/6 33/12
over [4] 10/2 10/11 21/20 28/7
overprotective [1] 22/1
own [1] 30/4

**P**

p.m [1] 26/9
pace [1] 37/10
page [1] 38/9
pages [1] 13/18
PAGESCRANTOM.COM [1] 1/18
papers [4] 4/12 13/19
paperwork [1] 4/13
paragraph [1] 26/6
part [3] 4/8 15/20 15/21
partial [1] 25/24
particular [5] 13/1 16/21 20/20 21/2 22/12
parties [10] 3/9 6/24 8/4 8/11 9/2 9/6 17/6 23/21 26/25 27/9
party [2] 8/18 10/14
party's [1] 4/4
past [2] 19/14 21/19
patient [1] 24/23
pattern [1] 23/24
pay [1] 12/5
PEACHTREE [2] 1/24 2/3
PEELER [5] 1/24 3/19 28/24 32/11 34/12
people [5] 8/8 12/13 29/5 32/2 32/6
per [1] 12/5
percent [2] 4/14 17/6
percentage [1] 24/7
perhaps [1] 8/17
period [4] 25/10 25/11 25/13 27/1
permission [1] 6/25
person [2] 4/7 9/19
perspective [3] 4/4 15/8 35/8
pertinent [1] 22/4

PHILYAW [2] 1/16 3/12
phone [2] 19/11 19/14
physically [1] 15/12
pickup [2] 17/20 17/21
pieces [1] 14/19
place [5] 5/2 13/12 21/11 21/21 24/21
placed [1] 15/18
plaintiff [21] 3/13 8/12 11/11 15/21 17/14 22/4 27/7 27/22 28/19 28/23 29/12 29/21 30/8 31/8 31/9 31/11 31/12 32/20 34/6 37/2 37/6
Plaintiff's [19] 5/25 6/12 23/6 26/22 28/2 29/18 30/4 30/7 32/12 32/15 32/22 33/3 33/4 33/10 34/9 34/11 34/14 34/16 35/8
PLAINTIFFS [11] 1/4 1/13 3/10 5/23 11/1 13/12 15/6 15/11 27/25 29/10 36/3
Plaintiffs' [1] 10/15
pleadings [2] 6/23 7/3
plenty [2] 5/13 37/14
PO [1] 1/17
point [7] 4/18 5/7 12/10 14/25 16/24 19/10
POINTE [1] 1/16
policy [1] 35/15
polished [1] 30/19
position [7] 5/25 6/1 6/2 6/2 10/11 12/2 12/6
positions [1] 36/3
possible [1] 34/21
posture [2] 24/19 24/20
power [2] 8/14 20/20
practical [4] 30/2 33/20 34/3 34/7
PRATHER [2] 1/19 3/12
precious [2] 20/1
predecessor [1] 9/12
preemptively [1] 22/21
prefer [1] 30/8
preferred [1] 32/22
prejudice [1] 20/3
prejudiced [1] 32/24
prejudices [3] 19/8 32/20 34/5
preliminary [1] 7/16
prepare [2] 5/22 35/21
present [2] 3/9 30/11
presented [1] 24/23
preservation [1] 8/6
preserve [1] 8/5
pretrial [3] 6/17 6/19 7/21
prevent [1] 20/13
previously [3] 11/16 11/20 12/1
prior [2] 11/21 33/13
privilege [2] 11/23 12/17
privileged [2] 11/25 12/19
privileges [1] 23/1
probable [1] 14/10
probably [3] 8/14 20/6 29/20
problem [9] 10/13 20/5 21/5 21/9 23/23 29/4 29/8 30/6 33/8
procedure [3] 4/2 7/24 23/22
proceedings [3] 3/1 37/16 38/8
process [21] 10/11 10/13 10/14 17/7 17/8 17/8 21/11 21/17 21/18 21/21 23/11 23/13 23/14 23/15 23/15 23/19 24/21 26/1 26/3 26/5 26/8
produced [1] 24/6
production [2] 10/17 20/2
Program [1] 20/16
project [2] 22/15 22/16

**P**

proper [1] 24/19
propose [1] 30/23
proposed [8] 3/23 3/25 4/14 5/25 10/12
26/10 27/18 27/19
proposing [1] 8/13
propound [1] 10/16
proprietary [2] 12/18 21/16
prosecuting [1] 19/7
prosecution [1] 16/25
protect [2] 12/18 21/20
protected [5] 8/25 13/15 15/24 17/7
22/21
protection [4] 12/20 15/22 21/10 26/2
protective [31] 7/6 8/24 9/6 11/18 13/8
13/11 13/20 13/22 14/7 15/20 16/2
16/18 17/3 17/5 17/23 18/4 18/19
19/14 20/17 21/12 21/19 22/22 23/24
24/7 24/20 25/2 25/4 26/5 26/7 26/12
35/24
proved [1] 20/14
provided [1] 25/9
public [12] 2/1 12/11 12/11 12/13 12/14
12/19 12/25 14/23 15/1 15/4 15/12
15/16
publicly [8] 11/21 12/1 12/16 12/25
13/4 13/7 15/9 16/24
pursuant [3] 8/5 26/21 38/5
push [1] 35/6
pushed [1] 31/1
put [4] 5/21 18/23 31/8 36/1

**Q**

quail [2] 35/9 35/12
question [13] 9/17 11/5 16/6 16/8 18/2
19/18 20/7 21/10 21/17 29/19 30/3
32/10 37/1
questioned [1] 13/2
quick [1] 28/13
quite [1] 16/20
quits [1] 35/14
quoted [1] 14/15

**R**

radiologist [1] 31/22
raise [1] 25/25
RAMSEY [3] 1/19 1/20 3/12
rather [1] 35/15
ray [1] 31/23
re [1] 35/1
re-checks [1] 35/1
reach [4] 4/5 5/24 17/6 27/16
read [5] 4/12 4/17 10/11 14/19 36/3
ready [2] 28/19 30/17
real [1] 24/24
really [6] 8/19 12/7 20/8 20/19 27/15
35/4
reason [10] 5/14 11/24 18/17 20/22
21/3 21/4 23/25 29/9 31/1 31/8
reasonable [3] 17/17 29/22 30/14
reasonably [1] 29/11
reasons [2] 13/23 33/25
rebuttal [12] 27/23 28/4 30/7 31/9
31/11 32/15 32/19 33/4 34/12 34/15
34/22 34/23
recently [1] 17/9
record [4] 3/8 6/6 15/4 37/17
redone [1] 7/18
reference [1] 7/21
regard [7] 4/13 8/19 8/23 8/23 17/4

17/7 19/2
Regardless [1] 33/24
regular [1] 5/3
regulations [1] 38/10
rely [1] 30/25
remember [4] 14/3 14/25 15/5 15/6
remembered [1] 34/21
repeat [1] 36/4
replies [1] 6/14
reply [1] 6/9
reported [1] 38/8
REPORTER [3] 38/1 38/4 38/19
represent [1] 18/16
represented [2] 15/7 17/15
request [2] 10/24 11/2
requested [1] 11/1
requests [2] 10/17 10/17
require [1] 9/6
resolve [3] 9/3 9/8 23/17
resolving [1] 8/1
respectfully [2] 21/7 33/1
respond [2] 25/12 31/18
responded [1] 17/2
responding [1] 8/25
response [4] 6/8 12/3 16/15 36/25
responses [1] 6/14
rested [1] 14/12
retire [1] 35/11 35/14
retry [1] 25/14
reverse [2] 22/10 22/11
review [2] 26/9 35/25
reviewed [2] 17/24 17/25
revise [2] 31/6 31/17
revised [1] 35/21
right [10] 6/24 7/5 9/18 13/8 28/13 29/1
31/25 32/2 34/9 35/10
ringing [1] 35/14
rollover [1] 17/19
roof [6] 20/16 22/5 22/10 22/12 22/15
22/17
routinely [1] 24/4
rule [5] 8/1 8/11 8/25 24/22 27/4
ruled [3] 13/14 19/21 24/16
rules [8] 4/2 4/2 7/24 7/25 8/6 8/16
8/17 8/19
ruling [1] 33/14
rulings [4] 7/16 24/9 26/11 35/22
runs [1] 10/25
rushing [1] 37/12

**S**

said [3] 10/19 13/19 19/20
same [7] 14/10 18/1 18/4 19/22 28/21
32/5 33/5
sanction [1] 24/12
Savannah [1] 10/3
say [3] 6/1 9/18 12/23 13/5 14/19 15/6
21/14 27/9 27/25 33/20 35/8 36/3
36/19
saying [3] 11/8 19/4 19/5
says [5] 9/9 15/6 15/22 23/15 35/13
scene [2] 23/24 32/7
schedule [11] 4/21 26/11 27/10 27/13
28/7 30/6 32/20 32/21 32/24 34/8
35/22
schedules [1] 34/15
scheduling [11] 3/6 3/23 4/14 5/22 6/22
6/23 8/22 26/10 34/10 34/21 35/21
Schley [1] 3/15
seal [7] 14/22 15/3 15/7 15/9 15/16

15/18 16/11
16/12 24/4
sealed [1] 16/6
season [1] 35/9
seated [1] 3/3
second [8] 14/1 14/5 14/15 16/8 16/14
22/14 22/18 36/17
section [2] 36/2 38/6
see [5] 4/4 9/15 10/13 11/25 16/20
seeing [1] 29/4
seek [1] 21/25
seem [1] 11/22
seems [1] 4/9
send [3] 18/15 26/7 26/8
sense [2] 8/3 34/2
separately [1] 15/25
September [4] 6/9 6/10 26/23 30/17
set [5] 4/23 5/1 5/5 27/6 31/15
setting [1] 5/5
seven [1] 22/18
several [3] 13/19 16/17
shade [1] 19/10
shall [1] 6/16
share [2] 20/9 21/15
shared [2] 21/14 21/16
sharing [12] 17/23 17/23 18/3 18/3
20/13 20/17 20/18 20/18 20/21 20/23
21/2 21/5
shoes [1] 4/4
shooting [1] 9/3
should [13] 7/1 13/20 16/11 17/7 21/14
21/16 22/21 22/25 27/9 27/16 31/14
36/5 37/9
shouldn't [1] 8/10
show [1] 9/25
showed [1] 31/25
side [2] 8/10 25/8
side's [1] 6/25
sign [2] 26/16 36/7
signed [4] 15/25 18/5 25/3 31/24
signing [1] 25/2
similar [5] 18/2 18/9 19/13 23/12 27/19
simply [2] 17/2 24/4
since [4] 9/24 12/5 16/21 37/10
sir [13] 3/19 5/20 11/5 11/14 13/17
22/23 23/2 23/2 24/13 25/6 28/12 36/9
36/24
slow [2] 16/22 25/9
so [53]
sold [2] 22/7 22/8
some [23] 4/5 4/15 5/4 7/21 8/16 11/24
13/10 17/15 17/21 21/5 21/6 21/9
21/10 21/18 21/21 24/3 25/16 27/4
28/17 32/4 33/9 33/10 37/12
somebody [5] 5/20 24/23
somebody's [2] 8/20 8/21
something [6] 7/2 22/9 22/21 28/12
34/1 36/25
somewhere [5] 5/2 10/1
sorry [1] 32/19
sort [1] 19/24
speaking [1] 23/25
special [1] 5/5
specially [2] 4/23 5/1
specific [1] 30/25
speculate [1] 28/22
SQR [1] 2/1
ST [5] 1/14 1/19 1/21 1/24 2/3
staged [1] 31/7
stamp [5] 14/5 20/20 23/4 23/8 24/4

**S**

stamped [1] 24/6
standard [1] 4/25
standpoint [1] 31/12
stands [1] 13/14
Star [1] 12/15
start [1] 3/10
stated [1] 26/15
states [6] 1/1 1/10 5/25 38/4 38/6 38/10
STATUS [1] 1/9
stay [2] 15/24 37/8
STE [2] 1/24 2/3
stenographically [1] 38/7
step [1] 23/20
still [3] 14/8 32/24 35/25
stipulated [1] 18/3
stored [1] 10/10
Strength [1] 20/16
strong [1] 27/4
stuck [1] 33/15
stuff [3] 20/9 20/18 21/2
subject [3] 14/8 18/18 24/6
submit [8] 5/22 5/24 16/18 18/22 21/8 26/10 26/13 26/17
submitted [5] 3/23 6/3 13/19 18/4 19/1
subpoena [1] 8/14
substantial [3] 32/24 24/2 24/24
success [1] 19/5
succinctly [1] 5/25
such [3] 6/16 8/1 9/1
sufficiently [1] 7/17
suggest [1] 33/3
suggests [1] 28/24
summary [3] 4/17 25/17 25/24
super [3] 20/16 22/7 22/15
supplemental [1] 33/13
support [1] 24/25
suppose [1] 33/14
sure [14] 6/5 8/19 9/18 11/8 14/16 20/24 24/18 27/21 29/15 33/6 33/17 34/10 34/25 35/7
surviving [1] 37/2
suspect [1] 34/7
system [1] 12/6

**T**

take [7] 8/4 18/23 22/24 28/18 30/24 34/14 35/24
taken [8] 7/7 7/15 7/19 7/20 8/5 8/7 24/16 31/21
takes [1] 5/17
taking [2] 5/21 12/1
talk [1] 32/4
talked [2] 32/4 32/5
Tallahassee [1] 37/5
team [1] 3/20
tell [6] 5/23 6/15 26/24 29/2 30/13 36/1
tendered [3] 13/11 14/2 14/3
terms [2] 4/24 5/1
testify [1] 8/16
testimony [1] 8/5
than [10] 4/7 5/2 7/2 11/10 18/19 19/5 26/14 32/22 33/9 35/3 35/16
thank [3] 9/21 34/24 36/24
that [236]
that's [27] 6/22 8/2 9/12 9/13 10/3 12/10 13/23 14/21 16/5 17/13 17/19 18/10 20/8 23/7 23/23 29/6 29/8 30/17 31/7 31/12 32/1 32/9 32/17 35/3 35/9 35/15 37/14

their [15] 4/4 15/22 17/18 19/1 19/2 19/7 27/1 28/16 30/10 31/5 31/18 33/11 33/11 33/13 35/1
them [23] 4/15 10/7 14/16 14/16 14/19 15/3 15/15 15/18 16/16 17/6 17/16 19/6 19/7 24/8 26/16 28/1 28/1 28/17 30/19 31/17 32/5 33/12 36/1
theme [1] 13/21
then [36] 7/3 8/15 11/21 12/15 17/25 20/22 21/4 23/9 23/22 24/22 25/4 25/13 26/2 26/5 26/16 27/14 27/23 28/4 29/2 29/16 29/19 29/20 30/6 30/15 31/2 31/2 31/5 31/9 31/11 32/14 33/11 34/23 35/20 35/24 36/6 37/5
there [38] 3/24 4/9 4/15 5/11 5/13 6/5 6/10 6/13 6/16 7/21 12/10 13/8 14/2 14/23 15/7 17/6 16/10 16/16 18/6 18/17 21/4 21/15 21/20 22/3 23/13 23/16 23/23 24/9 24/11 24/18 24/21 32/7 32/8 33/9 34/23 36/2 36/10 37/2
there'll [1] 6/16
there's [11] 8/16 20/13 20/25 21/18 22/22 23/25 24/15 24/24 32/18 35/15 36/2
therefore [2] 12/6 12/12
these [15] 4/1 4/20 7/23 8/1 9/13 14/14 17/5 21/6 25/8 25/18 28/16 29/5 30/24 32/6 33/3
they [67]
they'll [1] 26/16
They're [1] 23/7
they've [6] 12/19 19/6 21/4 28/16 31/23 33/13
thing [11] 6/22 9/14 12/25 13/21 16/18 19/3 22/8 25/25 26/21 32/5 37/8
things [3] 12/15 16/17 36/6
think [17] 5/3 8/6 9/1 11/15 12/21 13/17 17/2 17/11 17/19 19/8 26/12 30/16 31/14 32/1 36/5 36/13 36/16
thinking [2] 10/20 13/24
thinks [1] 36/21
third [1] 36/17
Thirty [1] 12/1
Thirty-five [1] 13/25
this [89]
THOMPSONHINE.COM [1] 2/2
those [33] 4/8 4/16 5/17 8/6 8/8 8/11 9/25 10/23 12/8 12/12 12/16 12/21 12/23 13/14 14/4 14/6 15/2 15/9 16/7 16/11 16/18 17/22 19/17 22/6 22/9 22/19 23/1 26/13 26/14 27/25 30/20 32/2 37/7
though [1] 20/12
thought [3] 3/25 9/13 19/20
three [4] 13/1 36/18 36/19 36/22
through [3] 16/1 19/24 20/24
throwing [1] 19/10
Thursday [1] 3/2
thus [1] 29/17
time [21] 5/7 5/13 5/17 6/20 8/9 11/19 14/11 16/24 17/5 20/22 24/14 27/3 27/5 30/14 30/19 32/9 33/17 34/14 36/11 37/10 37/14
timeline [1] 30/5
times [2] 13/19 14/17
Title [1] 38/6
today [10] 3/14 3/16 13/14 18/15 24/20 26/13 27/17 28/20 32/3 35/22
told [2] 20/17 30/18
tomorrow [1] 26/9

too [4] 9/4 13/18 14/13 25/3
took [1] 32/8
total [1] 10/19
towards [1] 25/9
track [1] 37/8
trail [2] 13/10 14/11
trained [1] 4/1
trainload [1] 19/24
transcript [3] 1/9 38/7 38/9
trash [1] 35/9
travel [1] 10/5
traveling [1] 26/19
treated [1] 7/19
treatment [3] 13/9 16/16 21/7
trial [30] 5/3 5/5 5/17 6/21 7/17 7/22 8/5 8/11 11/21 12/4 12/5 12/11 12/12 12/13 14/1 14/5 14/10 14/13 14/16 14/17 16/8 16/14 20/11 30/11 33/14 36/13 36/15 36/17 36/17 37/14
trials [2] 16/1
tried [1] 27/3
tries [1] 13/21
Troopers [1] 32/1
TROUTMAN.COM [1] 1/25
truck [2] 17/21 22/7
trucks [3] 17/20 20/16 22/15
true [3] 3/25 12/7 38/7
truth [1] 32/8
try [4] 4/22 21/20 35/3 37/11
trying [4] 4/3 14/24 21/22 35/16
turn [1] 5/3
TV [1] 14/17
two [12] 8/10 13/1 16/1 22/3 28/14 32/1 32/8 33/5 36/3 36/22 37/7
two-month [1] 33/5
type [1] 11/22
typed [1] 13/18
types [2] 8/6 31/22
Typically [1] 26/25

**U**

under [11] 8/15 8/17 13/15 14/22 15/3 15/7 15/9 15/16 15/18 16/11 19/17
understand [8] 4/3 5/12 11/9 12/22 18/10 20/9 21/24 29/6
understanding [2] 11/19 15/23
Understood [1] 34/19
unfairly [1] 19/8
unforeseeable [1] 7/2
UNITED [5] 1/1 1/10 38/4 38/6 38/10
unless [3] 8/16 10/22 16/17
unnecessary [3] 19/19 19/21 19/23
unreasonable [2] 18/1
until [3] 4/19 8/10 23/16
up [25] 7/2 9/10 9/14 9/25 13/23 23/21 24/13 25/2 25/25 27/10 27/12 27/20 27/24 29/2 29/19 30/1 30/15 30/18 30/20 31/15 31/25 33/1 33/6
update [1] 25/16
updated [2] 25/15 25/15
upfront [1] 37/11
urgency [1] 16/21
us [11] 3/14 3/16 6/20 11/10 20/17 23/4 23/6 25/9 25/13 26/24 30/18
use [6] 7/22 8/21 10/21 19/25 22/17 28/21
used [3] 7/14 12/4 35/10

**V**

vehicle [1]  17/21
verbatim [1]  18/22
versus [2]  17/10 18/5
very [4]  18/2 18/8 24/17 24/23
video [3]  7/22 8/4 8/21
view [2]  12/5 14/18

**W**

wait [1]  8/10
waiting [1]  16/4
waived [1]  12/6
walk [1]  4/3
want [22]  8/4 10/2 11/8 11/11 11/12
18/6 18/16 18/25 22/11 23/8 23/9 26/1
26/1 28/22 29/1 29/2 29/10 30/14 33/9
34/12 35/5 35/11
wanted [3]  22/9 22/12 25/25
wants [3]  16/15 23/5 23/6
was [34]  7/2 7/7 7/19 7/20 7/21 10/20
11/1 11/5 11/15 12/4 12/5 12/25 13/1
13/2 15/17 15/22 15/24 16/6 16/6
16/18 16/18 19/21 20/14 20/21 21/22
22/2 22/5 24/7 27/18 28/9 34/13 34/22
36/16 36/16
WATSONPENCE.COM [1]  2/4
way [6]  16/23 20/13 20/15 31/7 31/13
31/13
we [81]
we'd [1]  18/22
we'll [4]  9/11 27/17 29/2 30/15
we're [9]  11/8 19/23 25/7 25/10 25/13
25/14 37/13 37/13 37/14
we've [9]  4/23 10/25 15/25 16/13 19/15
19/20 19/25 25/15 27/3
week [3]  26/12 30/20 36/17
weekday [1]  30/21
weeks [3]  36/18 36/19 36/22
well [8]  3/21 4/1 4/1 14/17 16/10 16/20
19/9 21/9
well-trained [1]  4/1
went [1]  15/1
were [29]  3/24 7/15 12/8 12/11 12/12
12/13 12/14 12/23 14/1 14/3 14/7
14/10 14/13 14/19 14/20 15/7 15/18
15/23 16/7 17/12 22/7 24/6 24/6 24/9
24/11 30/17 31/21 32/7 32/8
weren't [1]  24/10
what [40]
what's [3]  21/17 23/11 23/12
whatever [3]  11/4 11/12 23/5
when [19]  3/22 6/2 8/1 10/23 14/6
19/15 21/14 24/24 26/24 28/15 28/18
28/22 29/2 29/4 29/11 29/21 30/9 35/3
35/14
whenever [1]  20/6
where [9]  4/10 4/24 5/24 6/24 10/3
12/15 15/14 36/1 36/2
wherever [1]  10/8
whether [7]  5/7 7/16 7/17 16/11 22/21
31/13 33/12
which [19]  4/8 6/20 8/12 13/18 15/21
16/2 17/10 17/11 17/15 18/15 20/21
20/24 22/5 23/22 26/12 26/15 27/18
30/11 32/21
who [7]  3/9 4/7 12/13 15/8 17/17 28/20
31/25
who've [1]  32/2
whole [1]  21/6
whose [1]  31/21

why [10]  3/8 12/20 13/18 14/21 14/23
21/22 24/1 23/6 28/13 28/14
will [45]
window [4]  32/14 32/16 32/17 32/18
wish [1]  28/23
within [2]  25/10 32/16
without [4]  6/12 17/24 20/13 20/22
witness [3]  8/17 13/2 32/4
witnesses [4]  8/12 31/25 32/7 32/23
woke [1]  13/23
won't [1]  13/23
work [3]  8/9 9/11 9/15
would [22]  9/12 10/22 14/23 15/2 15/4
15/8 15/8 17/18 18/14 18/17 18/23
19/9 22/11 27/6 27/9 28/3 28/3 28/4
30/8 33/1 33/2 36/19
WRIGHT [3]  2/1 3/20 9/23
write [1]  28/1
written [1]  20/1
wrong [1]  12/23

**X**

x-ray [1]  31/23

**Y**

year [1]  22/7
years [6]  13/25 22/6 22/8 22/10 22/18
22/19
Yes [16]  3/5 9/20 11/5 11/14 11/16
18/8 18/11 25/1 25/6 25/24 26/20
28/12 29/13 32/19 36/9 36/24
you [74]
you'll [3]  7/4 10/1 28/21
you're [7]  4/6 9/25 19/15 20/3 22/20
22/24 33/15
you've [12]  5/12 9/9 11/4 11/13 16/21
19/2 19/4 24/16 27/4 27/6 33/12 34/17
your [65]

**Z**

zealous [2]  17/17 19/6
zero [1]  11/10
Zoom [2]  9/5 9/18