

## EISENSTAT FORENSIC PATHOLOGY, LLC
Jonathan Eisenstat, MD
PO Box 567028
Atlanta, GA 31156
678-654-2107

Jim Butler
Butler Prather
105 13th Street
Columbus, GA 31901

Re: Mills v. Ford

2/15/2024

Dear Mr. Butler,

At your request, I have applied standard and accepted medical and forensic pathology methods to examine the causation of death of Herman Mills and Debra Mills and if they experienced any conscious pain and suffering. This report states my conclusions and the bases for them.

## Qualifications

I am a Medical Doctor, practicing Forensic Pathologist, and the past Chief Medical Examiner for the Georgia Bureau of Investigation.  I have performed over 4,100 autopsies in my career, and have viewed or assisted in approximately 45,000 more in my career.  My training includes subspecialty fellowships in Forensic Pathology, Pediatric Pathology, and Forensic Neuro and Cardiac Pathology.  I am certified by the American Board of Pathology to practice Anatomic and Forensic Pathology.  The remainder of my experience is set forth in my Curriculum Vitae, which is attached.  I have testified as an expert witness in both criminal and civil cases throughout the state of Georgia and a number of other jurisdictions throughout the United States.

## Opinions

It is my opinion, to a reasonable degree of medical certainty, that Herman and Debra Mills died of complications directly related to being compressed between the crushed roof and their respective seats of the Ford F-250 in which they were travelling.  More specifically, Herman Mills was subjecting to the stresses associated with bony fractures he sustained, as well as the alterations in breathing and cardiac function, from being

Mills v. Ford                                                                    2

compressed between the collapsed roof and his seat while being upside down in the vehicle. These injuries and stresses resulted in significant pain at the scene as well as while he was in the ambulance, helicopter and hospital, which further restricted his ability to move and breathe, resulting in progressively worse pneumonia, respiratory failure and death. Debra Mills died of positional asphyxia with her blunt impact injuries contributing, due to the vehicle being overturned with the roof crushed down on her. Debra experienced conscious pain and fear while she asphyxiated to death.  These opinions will be further elucidated below.

**Facts and Data Considered**

I have reviewed the following supplied items concerning the above referenced case:

- 911 calls x 2 with transcripts
- Trooper Sanchez dashcam video
- Grady EMS records for Herman Mills
- Grady EMS records for Debra Mills
- Tallahassee memorial records for Herman Mills
- Tallahassee Memorial radiology for Herman Mills
- Funeral home records for Herman Mills
- Funeral home records for Debra Mills
- Death certificates of Herman Mills
- Death certificate of Debra Mills
- Scene photographs
- Photographs of Mills' vehicle
- Georgia Department of Public Safety photographs
- Trooper Sanchez photographs
- Georgia Bureau of Investigation toxicology report for Debra Mills
- Decatur county fire and rescue report
- Decatur County coroner's investigation report
- City of Bainbridge public safety report
- City of Climax fire and rescue report
- Survival flight records
- Affidavits
        - Brian Palmer
        - Colby Swicord
        - Jacob Sanchez
        - Jimmy Lee Cooper
        - Trenton Russ
        - Anthony Harrison
        - Courtney Pollock
        - Kristen Drexler
- Depositions with exhibits:
        - Jimmy Lee Cooper
        - Anthoney Harrison
        - Brian Palmer

Mills v. Ford                                                                    3

        - Colby Swicord
        - Kristen Drexler
        - Trenton Russ
        - Brett Wilkinson
        - Courtney Pollock
        - Jacob Sanchez

Additionally, I personally performed the exhumation autopsies of both Herman and Debra Mills on August 1+2, 2023, as well as inspected the involved vehicle on February 8, 2024.

**Basis and Reasons for Opinions**

On August 22, 2022, Debra Mills was the driver and her husband Herman Mills was the front seat passenger, in a 2015 Ford F250 Lariat Super Duty King Ranch edition pick-up truck when it left the roadway, struck a driveway and metal pipe, overturned, and landed on its roof. The scene is depicted in the below representative photographs.





Mills v. Ford                                                                                    4



A number of individuals responded to the scene.  Below are excerpts from depositions of a few of these individuals.

Anthony Harrison, a registered nurse with a Life Flight Helicopter crew, was driving behind the Mills.  He testified to the following:

Page 29, line 14 - *The way, as it says in here, she was folded in half. And by "folded in half," I mean she's in her seat, however, her feet are forward, and her -- like she's folded in half upside-down in the vehicle still. I believe her eyes were open but bloodshot and no obvious purposeful movement.*

Page 30, line 4 - *On her arm the first time. That's correct. Q Okay. Did you feel a pulse that first time? A I did feel a faint pulse initially.*

Page 55, line 3 - *So when you say, "folded in half," what that makes me think about is chest pushed against thighs. Is that what you're talking about? A Yes. Q All right. So if somebody has their chest pressed against their thighs because the roof has collapsed, wouldn't it cause difficulty breathing? MR. HENDERSON: Object to form. THE WITNESS: I would say that, yes, any time your knees are against your chest and you're upside-down in a vehicle, you would probably have some difficulty breathing.*

Page 57, line 24 - *is it fair to say that Ms. Mills was alive for some period of time but you cannot say for how long? A I would say yes.*

Georgia State Patrol Trooper Brian Palmer testified:

Page 32, line 23 - *Did Mrs. Mills have her seatbelt on? A Yes. Q Okay. Do you know how the seatbelt was routed across her body, meaning -- A She was wearing it properly, if that's what you're asking. Q Did someone cut her seatbelt? A Yes, sir. Q Okay. Do you know who cut her seatbelt? A Yes, sir. I do. Q Who was it? A Me.*

Page 33, line 19 - *I cut the seatbelt off of Ms. Debra, and he (Swicord) cut the seatbelt off of Mr. Herman, I believe. Q Got it. When you cut Mrs. Mills' seatbelt, did her body shift or move at all? A No.*

Mills v. Ford                                                                          5

Page 56, line 8 - *It states: "The roof of the truck was crushed down on top of both Mr. and Mrs. Mills. Both Mr. and Mrs. Mills were bent over nearly double with the roof pushing down on them, which caused difficulty breathing for both of them. There is no doubt in my mind from witnessing them and the scene that the roof crush is what caused their injuries." So in my opinion, in my professional opinion of working all kind of crashes from minor injuries to serious injuries, that is my opinion on this crash just because of how she was sitting, how -- like I testified earlier, how her legs were bent up kind of almost in a fetal position.*

Firefighter Colby Swicord testified:

Page 23, line 6 - *the only thing that really stood out to me was it was tight, once I did get inside the vehicle, to get Mr. Mills. Between the center console and the roof, there was not a whole lot of room to work. Q Is that common for you when you respond to rollover accidents, that it's tight inside the occupant department? A It is. But I remember the roof and console, I don't remember there being much more than, you know, 4 to 6 inches of room to work between the console and the roof.*

Page 29, line 4 - *What about her -- it's often called the torso, you know, the upper body from the waist to the shoulders. Do you recall where that part of her body was? A I remember it being like in the seat area. And I remember her head -- her head being drooped, and it had a purple discoloration to it as we were preparing her to be exited from the vehicle. Q I'm sorry, what do you mean by "drooped"? A Limp. Q So it was her -- A It was kind of like this, limped over. Q Was her chin to her chest? A To my knowledge, yes. Q Okay. And I believe you said her face had purple discoloration; is that correct? A Yes, sir.*

Courtney Pollock, a responding EMT for Decatur County EMS, testified:

Page 16, line 9 - *I just remember Mrs. Mills, how compacted she was. Q What do you mean by "compacted"? A She was crushed in the -- between the roof and the bottom of the truck. Q Was any part of her body in contact with the roof? A As far as I remember, she was crushed between them both, so it was all in contact.*

Page 19, line 11 - *She was completely bent over...I believe that the top part of her body was connected to the bottom part of her body. They were touching.*

Page 38, line 8 - *Was he having difficulty breathing, Mr. Mills? A Yes. Q Did he appear to be suffocating? A Yes. Q Once Mr. Mills was extricated from the vehicle, did he start talking? A Yes. Q Do you remember what he said? A He told me his chest hurt.*

Georgia State Patrol Trooper Sanchez testified:

Page 39, line 4 - *She looked like her head was caved -- caved in like -- I'm showing it on the camera, but I'm going to -- like the chin was pushed into the chest. I thought her face*

Mills v. Ford                                                                                    6

*was really purple. Her hair was pinched in between the seat and the hood. I remember that specifically, because I remember them trying to pull her out.*

Page 41, line 23 - *When you say that her chin was into her chest, is that because of how her body just landed or was there something pushing on her head? A I would say it's a combination of the pushing on the head and that she's upside-down.*

Debra was pronounced dead at the scene.  Herman was extricated from the vehicle and transported to the hospital where he remained until his death.

Grady EMS patient care report documented Herman's vitals below, indicating he was alert and conscious the entire time he was in their care, and that his heart rate was initially elevated, his respiratory rate was consistently elevated, and his pulse oximetry was initially low.  This is consistent with the stress he was experiencing while being trapped upside down resulting in difficulty breathing and a low oxygen saturation.

| Vital Signs | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time | AVPU | Side | POS | BP | Pulse | RR | SPO2 | ETCO2 | CO | BG | Temp | Pain | GCS(E+V+M)/Qualifier | RTS | PTS |
| 15:08 | Alert | L | | 138/84 M | 120 R | 26 R | 86 Rm | | | | | 6 | 15=4+5+6/NFP | 12 | |
| 15:12 | Alert | L | | 120/79 A | 106 R | 24 R | 98 Rm | | | | | | 15=4+5+6/NFP | 12 | |
| 15:14 | Alert | L | | / | 88 R | 22 R | 98 Rm | | | | | | 15=4+5+6/NFP | | |
| 15:14 | Alert | L | | 113/77 A | 86 R | 22 R | 98 Ox | | | | | | 15=4+5+6/NFP | 12 | |
| 15:23 | Alert | L | | / | 77 R | 22 R | 98 | | | | | | 15=4+5+6/NFP | | |
| 15:25 | Alert | L | | 126/66 M | 99 R | 22 R | 98 Ox | | | | | | 15=4+5+6/NFP | 12 | |

He was transferred to the care of survival flight, who transported Herman to Tallahassee Memorial Hospital.  From survival flight:

SF 21 arrives on scene. Initial pt. contact made in Decatur County ambulance. Pt. supine on spine board with c-collar in place. Patient placed on our Zoll monitor for continuous, cardiac, blood pressure, and oxygen. Pt has a GCS of 15. Patient complained of left chest and back pain. Small bruising noted to the top of the patient's head and two-inch abrasion noted on patient's right shin with no active bleeding reported. PERRL 3mm. Airway patent; SpO2 93% on NRB at 15 LPM. Breath sounds CTA bilaterally with symmetrical chest expansion. Cardiac monitor shows fluctuation between sinus rhythm and low sinus tach. Right upper quadrant rigidity noted on palpation of the abdomen, with all other quadrants soft and unremarkable. Lower extremities show no obvious ortho-trauma and pedal pulses present bilaterally. #18ga angiocath on the RH and LFA flushed easily with no signs of infiltration. Patient loaded onto SF aircraft, spinal restriction is maintained via long spine board and cervical collar with assistance from EMS and secured with all straps. All equipment secured and preflight checks completed by crew. SF 21 lifted without incident and pt. tolerated ascent to altitude.

The discharge summary from Tallahassee Memorial Hospital documents his hospital stay leading up to his death.

Discharge Summary Information
    Admitted  8/22/2022
    Discharged  8/31/2022

History of Present Illness
    77 y/o male arrives via EMS ground as level 1 trauma alert s/p MVC with (-) LOC. EMS reported patient was hypoxic to 70s and hypotensive on scene but responded to fluid bolus and NRB O2. Primary survey intact. CXR negative for  HTX, (+) small L PTX. GCS 15. FAST negative for intraabdominal or pericardial fluid. GCS 15. C-collar in place. Secondary survey reveals L lateral facial bruising, R anterior calf laceration, multiple abrasions and ecchymosis R shoulder and RUE, L mid thorax chest abrasion consistent with seatbelt sign. Patient c/o chest pain, received Fentanyl in trauma bay. Patient HDS to scanner for complete trauma imaging.

A summary of the August 22 admission radiology performed on Herman documents the following:

CT head: Multifocal subarachnoid hemorrhages are scattered throughout the sulci of the bilateral high convexity cerebral hemispheres, with probable component of punctate foci of subdural hemorrhages along the high convexity cerebral hemispheres and anterior falx.   There is moderate volume loss and chronic white matter small vessel ischemic changes.

CT cervical spine: No evidence of acute fractures or subluxation. There is moderate degenerative changes at the C5-6 and C6-7 level. No soft tissue abnormalities.

CT neck angiogram: The bilateral carotid arteries and vertebral arteries are patent with no signs of dissection.. There is minimal atherosclerotic calcifications in the origin of the great vessels. There are multiple prominent bilateral cervical lymph nodes. There is soft tissue stranding involving the bilateral supraclavicular regions likely posttraumatic.

CT CHEST: Minimally displaced proximal left clavicular fracture with surrounding mild edema. There is also mildly displaced right third-fifth rib fractures. There is also minimally displaced anterior left fourth rib fracture. There is also mildly displaced mid sternal fracture with subjacent small amount of mediastinal blood products. No evidence of pneumothorax or pleural effusion.

There are mild compression deformities involving the superior endplate of T3, T5, T10, and T12 vertebral bodies. No significant retropulsion.

There is multiple prominent bilateral hilar and mediastinal lymph nodes predominantly subcarinal measuring up to 2.8 x 2.1 cm.

CT abdomen and pelvis: There is moderate splenomegaly measuring 16.7 in the AP dimension. There is a small amount of perisplenic and perihepatic hemorrhage, from a small posterior splenic laceration (swirl sign seen on axial image 145 of series 3 with mixed heterogeneous attenuation suggesting active extravasation). There is aortic atherosclerotic calcification. There is multiple retroperitoneal prominent lymph nodes of unclear etiology measuring up to 16 mm in diameter. There is bilateral inguinal fat-containing hernias. The bowel is nonobstructive. There is mild atherosclerotic calcification of the abdominal aorta.

**Hospital Course**
8/23: Repeat CTH stable. Hypotension overnight, placed on Neo. hyperkalemia, improved x2 hyperK protocol, nephrology consulted. Leukocytosis, hx of leukemia. Thrombocytopenia, will give 1u PLT.
8/24: Alertness improved, but still confused. 02 requirements titrated down, remains on HHFNC. Will have dobhoff placed for nutrition. Lytes corrected. Hgb trending down, CT ABD/pelvis ordered to r/o internal hemorrhage. Drop in hgb likely related to hematuria, will give 1u PRBC for tachycardia.
8/25: Transitioned from HFNC to BIPAP overnight, ABG now compensated. Hematuria improving. Remains tachypneic and has episodes of tachycardia which per nursing are related to timing of pain medication.
8/26: Patient had episodes of fever with hypotension overnight. Give 2 units of pRBC overnight, now normotensive. On zosyn. UA and repeat blood cultures ordered. WBC trending up. XR appears worse on the right. On Bipap
8/27: NAEON. VSS on bipap. On goal TF via DHT. XR this AM with worsening pulmonary edema on the right. Improved Bipap settings. Head CT unremarkable.
8/28: NAEON. tachycardic on HFNC. Increase free water flushes. ABG with increase CO2. added propranolol. XR unchanged.
8/29: NAEO, continued intermittent tachycardia, HTN. ABG with metabolic alkalosis. XR with increased patchy opacities.
8/30: NAEON. HTN on Cardene. Remains on BIPAP without any improvement in oxygenation. Mental status unchanged
8/31: GCS 9. BiPAP yesterday with high FI02 requirements, transitioned to HHFNC due to vomiting. Requiring 100% & FI02 on HHFNC. FW deficit. TFs stopped yesterday after emesis. NGT op  650 in 24 hrs. Acute AKI, bolus given, IVMF started. Palliative have been consulted and are in discuss to transition to comfort care.

8/31:  After further discussion with the patient's family and palliative they decided to transition Mr. Mills to comfort measures.  See positive nodes for further discussion details.  Time of death 1441

**Assessment:**
77 y/o male arrives via EMS ground as level 1 trauma alert s/p MVC with (-) LOC. His wife died in the accident. He was found to have SAH, SDH. Initially pt was alert and oriented to a point, but over the last couple of days he has become more lethargic and requiring more respiratory assistance via BiPAP. His clinical course has also been complicated by multiple fxs, Pneumomediastinum, PNA, VSplenic laceration with perisplenic and perihepatic hemorrhage, Traumatic Foley insertion. He does have an advance directive on file.

This morning pt had vomiting episode while on BiPAP, labs are more skewed, pt looks clinically worse. Called and spoke with Jason and informed him that pt is worse and it is time to transition him to comfort, he is suffering. He tells me that he and his brothers will be here in an hour's time. I informed him that I can try to work within my means of making pt more comfortable, but until comfort care is consented to I cannot provide pt with the current comfort care needs that he is really requiring right now. He voiced understanding and again told me that they will be here in the hour.

The coroner signed the death certificates without any postmortem examination being performed by a forensic pathologist thus exhumations were done and complete autopsies were performed by me on August 1+2, 2023.

The autopsy of Debra documented the following:

Mills v. Ford                                                                                      8

**Final Diagnosis:**

I.       Blunt impact injuries of head, with:
        A.      Subscalpular soft tissue and galeal hemorrhage, bilateral frontal, parietal and occipital
        B.      No internal head injuries

II.      Blunt impact of torso, with:
        A.      Contusions
        B.      Depressions, back
        C.      Subcutaneous hemorrhage, chest and abdomen
        D.      Fractures of ribs (right 2-9; left 2-8) and spinous processes (C7, T1)
        E.      Hemorrhage, anterior mediastinum and posterior parietal pleura
        F.      Laceration, liver
        G.      Epidural hemorrhage, C7-T6 spinal cord

III.     Blunt impact of extremities, with:
        A.      Contusions

IV.     Pulmonary congestion and edema

V.      Cysts, bilateral kidneys

VI.     Adrenal adenoma

VII.    Hepatic steatosis

VIII.   Remote left lung surgery

IX.     Status post embalming and interment

X.      Marked decompositional change.

The autopsy of Herman documented the following:

**Final Diagnosis:**

I.   Blunt impact of head and neck, with:
        A.      Left lateral facial bruising (anamnestic)
        B.      Subscalpular soft tissue hemorrhage, bilateral frontal, parietal and occipital
        C.      Bilateral temporalis muscle hemorrhage
        D.      Subarachnoid hemorrhage, bilateral lateral convexities and right anterior temporal pole
        D.      Cerebral contusions
        E.      Hemorrhage overlying left thyroid cartilage

Mills v. Ford                                                                         9

II.   Blunt impact of torso, with:
    A.      Contusions
    B.      Fractures of sternum at the level of the 3rd rib, left 4th rib, left 2nd – 6th, and right 3rd – 5th ribs
    C.      Left clavicular head fracture
    D.      Compression fractures of T3, T5, T10, and T12 (anamnestic)
    E.      Pneumothorax, small, left (anamnestic)
    F.      Splenic laceration
    G.      Epidural hemorrhage, lower thoracic to lumbar spinal cord
    H.      Hemorrhage, anterior mediastinum

III.   Blunt impact of extremities (anamnestic), with:
    A.      Abrasions, ecchymosis, and laceration

IV.   Acute bronchopneumonia, pulmonary congestion, and pulmonary edema

V.   Changes consistent with early hypoxic ischemic encephalopathy

VI.   Chronic lymphocytic leukemia (anamnestic), with:
    A.      Lymphadenopathy, pulmonary hilum, neck, and retroperitoneum
    B.      Splenomegaly (595 grams)
    C.      Leptomeningeal infiltrate

VII.   Chronic obstructive pulmonary disease (anamnestic)

VIII.  Hypertensive Cardiovascular Disease (anamnestic)

IX.   Hyperlipidemia (anamnestic)

X.   Diverticulosis

XI.   Remote appendectomy

XII.  Status post left lung surgery

XIII. Status post embalming and interment

XIV. Marked decompositional change

Urine toxicology performed in the hospital for Herman was negative and postmortem toxicology for Debra was negative.

I personally inspected the vehicle and the below representative photographs from my inspection document the severity of the intrusion of the roof into the occupant space.

Mills v. Ford                                                                10






In consideration of all of the above, my opinions remain the same as stated in the autopsy reports:

"This 64 year old woman, Debra Grubbs Mills was the driver of a vehicle involved in a single vehicle accident that occurred on August 22, 2022. The vehicle was found upside down, on its roof, with significant intrusion into the occupant space by the roof. As per individuals at the scene, Debra and her husband, who was the front seat passenger, were "bent over nearly double with the roof pushing down on them which caused difficulty breathing". Her husband was able to be extricated from the vehicle and was transported to the hospital. Debra was extricated but was pronounced dead at the scene. The blunt impact injuries identified at autopsy included scalp hemorrhage without skull fracture or intracranial injury, and rib and spinous process fractures with laceration of her liver and spinal epidural hemorrhage. These injuries are consistent with Debra's head being impacted by the roof, causing her head to bend forward and having her C7-T1 spinous processes contacted by the roof as she continued to be flexed forward…It is my opinion to a reasonable degree of medical certainty, that Debra Grubbs Mills died of positional asphyxia with her blunt impact injuries contributing, and that her manner of death is accident due to the vehicle being overturned with the roof crushed down on her."

Mills v. Ford                                                                11

"Herman Mills was a 79 year old man who was the front seat passenger in a single motor vehicle accident that occurred on August 22, 2022. The vehicle was found upside down, on its roof, with significant intrusion into the occupant space by the roof. He needed to be extricated from the vehicle, was alert at the scene with a Glasgow Coma Score of 15, and complained of severe anterior chest wall pain, back pain, with subsequent altered mental status. He was transported to Tallahassee Memorial hospital where he was admitted at 17:30 the same day. He was initially diagnosed with left lateral facial bruising, right anterior calf laceration, multiple abrasions and ecchymosis of the right shoulder and right upper extremity, left mid thorax chest abrasion consistent with a seatbelt sign, and a small left pneumothorax. A head CT showed bilateral high convexity subarachnoid hemorrhage and possible minimal subdural hemorrhage, which remained stable, but over the first night his blood pressure dropped, and his potassium increased, both of which were addressed medically. He remained confused and had a drop in his hemoglobin and hematocrit, most likely due to hematuria. CT scans of his chest, abdomen, and pelvis noted right 3rd – 5th mildly displaced rib fractures, left 4th mildly displaced rib fracture, minimally displaced proximal left clavicular head fracture, mildly displaced mid sternal fracture, and mild acute compression fractures of T3, T5, T10, and T12, as well as a small splenic laceration. He was placed on pain medication but when the medication would start to wear off, he would get tachycardic and tachypneic. He remained on oxygen and was being fed through a Dobhoff tube. Chest X-rays showed progressively worsening pulmonary infiltrates and on 8/30/2022, his oxygen requirements increased, and he vomited. He continued to decline, going into acute kidney failure, he was made DNR, and palliative care was consulted. He was pronounced dead on August 31, 2022. Autopsy findings were consistent with what was documented in the medical records…it is my opinion to a reasonable degree of medical certainty that Herman Mills died of complications following blunt impact injuries he sustained when the vehicle in which he was a front seat passenger, overturned resulting in the roof crushing down on him. As per individuals at the scene, Herman and his wife, who was the driver, were "bent over nearly double with the roof pushing down on them which caused difficulty breathing". Herman was subjecting to the stresses associated with the bony fractures he sustained, as well as the alterations in breathing and cardiac function from being compressed upside down in his vehicle. These stresses resulted in significant pain, which restricting his ability to move and breathe, resulting in progressively worse pneumonia, respiratory failure and death."  The thoracic compression fractures are consistent with loading of his spine by the roof while being compressed between the roof and his seat.

In summary, if not but for the roof crushing down on Herman and Debra Mills, causing them to be compressed upside down in their vehicle, Debra would not have died on August 22, 2022 and Herman would not have died on August 31, 2022.  The medical records document the pain that Herman experienced as a result of his injuries.  Debra experienced conscious pain and suffering as well as the fear of impending doom as she asphyxiated while being crushed between the collapsed roof and her seat.  Autopsy failed to identify any blunt injury that would have rendered her unconscious. The rib and spine fractures would have been extremely painful, as they were for Herman, and she would have experienced this pain as well as fear as she struggled to breathe while being upside

Mills v. Ford                                                                                    12

down and compressed in a confined space between the collapsed roof and her seat.  Her difficulty breathing was due to this position compromising the bellows action of respiration (ability to expand and collapse her chest) and the pain of breathing due to her fractures. Positional asphyxia deaths, such as that seen with Debra, would take at least many seconds to minutes before becoming unconscious and at least minutes before death.

In coming to my opinions in this case, I utilized standard pathologic methods as I have in every injury evaluation I have performed over my career.  The documented injuries were evaluated as to potential mechanisms utilizing my education, training and experience.

All of the above opinions are given with a reasonable degree of medical certainty and are subject to change upon receipt of further information.

Thank you for the opportunity to review this case.  If you have any questions, please do not hesitate to call me at the above number.

Sincerely,

Jonathan Eisenstat, MD
Diplomate of the American Board of Pathology
Board certified, Anatomic and Forensic Pathology