```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

JAMES EDWARD BROGDON, JR., *et al.*,  *

    Plaintiffs,   *

vs.   *   CASE NO. 4:23-CV-88 (CDL)

FORD MOTOR COMPANY,   *

    Defendant.   *

O R D E R

Debra and Herman Mills died after a wreck in their 2015 Ford F-250 Super Duty truck. Plaintiffs, who are the Millses' surviving children and the executors of their estates, brought this wrongful death action against Ford Motor Company, claiming that the truck's roof design was defective and that this defect caused the Millses' deaths. Plaintiffs also assert a failure-to-warn claim against Ford. Ford filed two partial summary judgment motions. First, Ford seeks summary judgment on several aspects of Plaintiffs' substantive claims (ECF No. 52). In response to the motion, Plaintiffs stated that they did not assert claims for the Millses' pre-impact pain and suffering or for a defect in the truck's restraint system. Pls.' Resp. to Def.'s Partial Mot. Summ. J. 11-12 & n.30, ECF No. 79. The motion as to those claims is moot. As to the other matters raised in the first summary judgment motion, the Court finds that genuine fact disputes exist on those issues,

so the Court denies the summary judgment motion on those issues. Second, Ford seeks summary judgment on Plaintiffs' claim for punitive damages. For the reasons set forth below, that motion (ECF No. 53) is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following facts. This action arises from a wreck on August 22, 2022 involving a 2015 Ford F-250 Super Crew 4x4 King Ranch edition truck being driven by Debra Mills in which her husband Herman Mills was the front seat passenger. Travelling at the 55-miles-per-hour speed limit, the vehicle left the road onto

the grassy right-side shoulder following a right-hand curve.  Mrs. Mills released the accelerator but did not apply the brakes; the truck slowed a bit as she intentionally turned the steering wheel sharply to the left causing the truck to move in the direction of a telephone pole.  Mrs. Mills then intentionally turned the steering wheel to the right.  Although the truck avoided striking the telephone pole, it hit the upslope of a dirt driveway over a concrete culvert and went airborne.  The front of the truck hit the ground, then the truck pitched over and landed upside down.  Mrs. Mills was pronounced dead at the scene, and Mr. Mills died nine days later.

## DISCUSSION

### I. Ford's Motion as to Substantive Claims (ECF No. 52)

Ford contends the Court should decide the following issues as a matter of law: (1) that Plaintiffs may not seek damages for Mrs. Mills's post-impact conscious pain and suffering, (2) that Plaintiffs may not pursue the theory that Mrs. Mills died of positional asphyxiation, and (3) that Plaintiffs may not proceed on their failure-to-warn claims.  The Court addresses each issue in turn.  There is no dispute that Georgia law applies in this diversity action.

#### A. Mrs. Mills's Pain and Suffering

In a Georgia wrongful death action, an estate may not recover for the decedent's pain and suffering if "the medical evidence is

that death was instantaneous, and there is no evidence the decedent exhibited consciousness of pain." *Grant v. Ga. Pac. Corp.*, 521 S.E.2d 868, 870 (Ga. Ct. App. 1999) (concluding that there was no evidence of pre-death pain and suffering where the decedent was found dead of a heart attack after he inhaled turpentine fumes but there was no evidence that he consciously suffered pain). But an estate can recover for the decedent's pain and suffering if there is evidence that the decedent consciously experienced pain before she died. *See, e.g.*, *Park v. Nichols*, 706 S.E.2d 698, 701 (Ga. Ct. App. 2011) (finding that the jury's decision to award pain and suffering damages was supported by the evidence where one witness testified that the decedent was trying to talk and look back at her child as she died, even though other witnesses testified that when they saw her, she looked unconscious).

Here, Ford argues that there is no genuine fact dispute on whether Mrs. Mills consciously suffered pain because several witnesses testified that Mrs. Mills was dead by the time they saw her at the scene and because *Ford's* experts opine that Mrs. Mills lost consciousness due to a cardiac event before the truck crashed and did not regain consciousness before she died. At this stage in the litigation, though, the Court must view the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor.

4

Plaintiffs' medical expert opines that Mrs. Mills was still conscious after the truck landed on its roof. Plaintiffs also pointed to evidence that would permit a reasonable juror to conclude that Mrs. Mills steered the truck after it left the road, along with evidence that the first witnesses who arrived at the scene after the crash observed that by the time they reached Mrs. Mills, she still had a pulse and was moving her legs and trembling. Based on this evidence, genuine fact disputes exist on whether Mrs. Mills consciously experienced pain after the crash but before she died. Ford's summary judgment motion on this issue is denied.[1]

B.   Positional Asphyxiation Theory as to Mrs. Mills

Plaintiffs assert that the roof of the F-250 truck was defectively designed and that Mrs. Mills died of positional asphyxiation because the roof deformed and crushed her, folding her in half so that her chest was pressed to her thighs. Dr. Jonathan Eisenstat, a board certified forensic pathologist, opines that Mrs. Mills died of positional asphyxiation. Ford nonetheless argues that there is no evidence Mrs. Mills died of positional asphyxiation, contending that Dr. Eisenstat's testimony is

---

[1] Ford also moved for summary judgment as to any claim for pain and suffering that occurred before the truck pitched over and the Millses were crushed inside as the roof and driver/passenger compartment collapsed. Plaintiffs responded that they are not asserting such claims in this action. The pain and suffering claim is based upon injury after the roof and driver/passenger compartment collapsed on them but before they died.

5

speculative and that Ford's theory—that Mrs. Mills died from a cardiac event—is unassailable.

Ford correctly notes that expert testimony is necessary to establish Mrs. Mills's cause of death and that if an expert's testimony is excluded under Federal Rule of Evidence 702, that testimony cannot create a genuine fact dispute. Ford did not file a motion to exclude Dr. Eisenstat's testimony under Rule 702. Instead, Ford suggests in its summary judgment briefing that the Court should ignore Dr. Eisenstat's testimony as unreliable. Ford, however, did not include in its summary judgment briefing a sufficient basis for the Court to exclude Dr. Eisenstat's opinion on positional asphyxiation. The Court finds that Dr. Eisenstat's testimony creates a genuine fact dispute as to whether Mrs. Mills died of positional asphyxiation. Accordingly, Ford's summary judgment motion on this issue is denied.[2]

## C.   Failure-to-Warn Claims

In Georgia, a product manufacturer has a duty to warn consumers of dangers arising from the use of the product. That duty "arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994); *accord* O.C.G.A. § 51-1-11(c) ("Nothing contained in this subsection shall relieve

---

[2] Ford did not seek summary judgment that Mr. Mills did not die from injuries he sustained in the crash.

6

a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer."). Plaintiffs assert that the F-250 truck's roof was dangerously weak and that although Ford was aware of the danger, Ford did not provide any warnings about the problem either before or after the Millses acquired the F-250 truck.

Ford contends that the failure-to-warn claim is simply a repackaged design defect claim that is not cognizable under Georgia law. Plaintiffs' failure-to-warn claim is based on the following contentions: the roof of the F-250 truck was unreasonably dangerous, Ford was aware of the dangers, the Millses could not have known about the dangers, Ford did not provide any pre-sale or post-sale warnings about those dangers, and those dangers were realized during the crash and proximately caused the Millses' injuries and deaths. In support of Ford's argument that Georgia does not recognize this type of claim, Ford relies on two Texas District Court cases regarding the elements of a *marketing defect* claim under *Texas law*. Ford, however, did not point to any binding authority that a Georgia failure-to-warn claim cannot be based on a manufacturer's failure to warn of the unreasonable danger caused by alleged design defects, and the Court is not convinced that Georgia law bars such a claim. *See, e.g.*, *Ford Motor Co. v. Gibson*, 659 S.E.2d 346, 351 (Ga. 2008) (affirming denial of judgment as a matter of law as to a similar failure-to-warn claim

7

where Ford failed to warn of the dangers caused by alleged design defects). To the extent that Ford may suggest that Plaintiffs' failure-to-warn claim must be supported by expert testimony, the Court rejects any such argument. Because the issue is whether Ford knew of risks with the design but provided no warning at all, the Court is satisfied that the jury can understand the causation element of this claim without a warnings expert. For these reasons, the Court denies Ford's summary judgment motion on the failure-to-warn claim.

## II. Ford's Motion as to Punitive Damages (ECF No. 53)

Plaintiffs seek punitive damages under O.C.G.A. § 51-12-5.1, which provides that punitive damages may only be awarded "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Conscious indifference to consequences involves an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Atl. Star Foods, LLC v. Burwell*, 889 S.E.2d 202, 207 (Ga. Ct. App. 2023) (quoting *Wardlaw v. Ivey*, 676 S.E.2d 858, 861-62 (Ga. Ct. App. 2009)).

Ford argues that insufficient evidence exists from which a jury could find that punitive damages are authorized.[3] Ford does not dispute that its engineers completed an enhanced roof strength project for Super Duty trucks in 2006 (sixteen years before the Millses' crash and several years before their 2015 truck was manufactured) and developed a design for a significantly stronger roof. But Ford maintains that based on its testing and research, most head and neck injuries in rollover crashes happen before the roof is deformed, so a stronger roof would not prevent those types of injuries. Ford claims it did not know of a significant risk that roof deformation could cause injuries like thoracic and positional asphyxia.

Plaintiffs presented evidence, however, from which a reasonable juror could find:

- Ford has known for decades that it is important to maintain occupant survival space in the event of a rollover crash.

- Roof strength is a predictor of roof intrusion severity during a rollover crash; a weaker roof correlates with more severe roof intrusion.

- Roof intrusion due to a rollover crash can result in injuries to a vehicle occupant's head, neck, chest, and

---

[3] Ford also argued that punitive damages are not allowed because Georgia law provides that only one punitive damages award "may be recovered . . . from a defendant for any act or omission if the cause of action arises from product liability." O.C.G.A. § 51-12-5.1(e)(1). In the State Court of Gwinnett County, a jury awarded punitive damages against Ford in a Ford F-250 roof design case, but the Georgia Court of Appeals vacated the punitive damages award. *Ford Motor Co. v. Hill*, No. A24A0657, 2024 WL 4646890, at *9 (Ga. Ct. App. Nov. 1, 2024). Given that the punitive damages award in *Hill* was vacated, the Court finds that O.C.G.A. § 51-12-5.1(e)(1) does not bar an award of punitive damages here.

abdomen. There is a statistically significant relationship between greater roof intrusion and more severe occupant injuries.

- Positional asphyxiation can occur when occupant space is restricted, such as when a roof collapses and compresses an occupant's chest. In this case, when witnesses found Mr. and Mrs. Mills, they were upside down and folded in half with their chests pressed against their thighs, and such a position can cause breathing difficulties.

- Federal Motor Vehicle Safety Standard 216 suggests a minimum standard for roof crush resistance, but the roofs of the 1999-2016 F-250 Super Duty trucks did not meet that minimum standard.

- The 1999-2016 F-250 Super Duty trucks did not meet Ford's internal roof strength goal.

- Tests like static roof crush tests, drop tests, and dolly rollover tests are necessary to test roof performance, but Ford did not do any physical roof strength testing for the 1999-2016 Super Duty trucks, including the 2015 F-250 Crew Cab Super Duty model.

- Ford's engineers completed an enhanced roof strength project for Super Duty trucks in 2006, and they designed a significantly stronger roof, but Ford decided not to use the enhanced design.

The Court understands that Ford's experts opine that there is no causal relationship between roof strength, roof deformation, and injury causation. A jury could believe that evidence and conclude that Ford did not knowingly disregard the rights of individuals riding in its vehicles. But if Plaintiffs' evidence is believed, then the jury could find that there were significant risks to occupant safety in the event of a roof intrusion during a rollover crash and that Ford intentionally disregarded those risks even though it knew that a stronger roof could reduce

10

occupant injuries. Accordingly, the Court finds that genuine fact disputes exist on whether Ford's conduct would authorize an award of punitive damages.

## CONCLUSION

For the reasons set forth above, Ford's summary judgment motion on the substantive claims (ECF No. 52) is moot as to claims for the Millses' pre-impact pain and suffering and for a defect in the truck's restraint system because Plaintiffs do not assert such claims in this action. The motion is denied as to Plaintiffs' claim for Mrs. Mills's pain and suffering, Plaintiffs' claim that Mrs. Mills died of positional asphyxiation, and Plaintiffs' failure-to-warn claims. Ford's summary judgment motion on Plaintiffs' claim for punitive damages (ECF No. 53) is also denied.

IT IS SO ORDERED, this 5th day of November, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA