IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JAMES EDWARD ("Dusty") BROGDON, Jr., as Executor of the Estate of Debra Sue Mills, deceased, and JAMES EDWARD BROGDON, Jr., and RONALD BRIAN ("Rusty") BROGDON, Individually and as surviving children of Debra Sue Mills,<br><br>and<br><br>JAMES EDWARD BROGDON, Jr., as Executor of the Estate of Herman Edwin Mills, deceased, and JASON EDWIN MILLS, Individually and as surviving child of Herman Edwin Mills,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 4:23-cv-00088-CDL |

**PLAINTIFFS' RESPONSE TO
FORD'S MOTION TO EXCLUDE NET WORTH EVIDENCE**

Plaintiffs ask the Court to deny Ford's motion *in limine* to exclude all evidence of its own net worth, financial condition, wealth, or profits from evidence, should the jury determine that punitive damages are appropriate. Plaintiffs respond as follows.

**ARGUMENT**

For the third time this year, Ford attempts to exclude its own net worth, wealth, and profits from the consideration of a jury charged with determining the proper amount of punitive damages to be imposed against Ford. Ford's motion *in limine* to exclude this evidence from this

1

case is functionally identical to its motion to exclude Dr. Joshua Brooks, and *actually* identical to the motion *in limine* Ford filed, and this Court denied, in *Christian v. Ford. See* Doc. 73, *Christian v. Ford*, 4:22-cv-62 (January 11, 2024). Plaintiffs respectfully submit there is no reason for the Court to rule differently on this Ford motion than it did on the same Ford motion in the *Christian* case, and Ford has not suggested any such reason to rule differently.

As Ford has so recently attempted to exclude this sort of evidence, Plaintiffs will attempt not to burden the Court with a repetition of what they have already written in response to Ford's Motion to Exclude Dr. Brooks. *See* Doc. 239. In brief, however, as this Court knows, punitive damages exist to punish a defendant like Ford for misconduct and/or deter future such misconduct. *See* O.C.G.A. § 51-12-51. To determine what amount of damages is necessary to deter a large corporate defendant like Ford, the jury needs the very information Ford is attempting to exclude.[1] The larger and richer the defendant, the greater that defendant's ability to pay a financial penalty, and the larger the financial penalty must be to be effective.[2]

---

[1] Ford states repeatedly that it does not contest that it can pay punitive damages, and thus evidence of its wealth is irrelevant to determine its ability to pay such an award. That is a frivolous argument. Of course the question is not whether *can* Ford pay—the question is *how much* of an award is necessary to punish and/or deter a defendant with Ford's wealth. That question requires evidence of Ford's net worth and profits.

[2] Ford's motion recites almost an entire page in block quote from a Seventh Circuit opinion to argue that corporate defendants are somehow different from individual defendants; according to this reasoning, an individual's net worth may be relevant in assessing punitive damages, but not a corporation's. *See* Doc. 232 at 8. The reasoning in that opinion is *dictum*, is in tension with other Supreme Court discussions of punitive damages and with the views of other circuits, and even with later Seventh Circuit decisions that state that wealth should bear on the appropriate size of an award of penalties, without any distinction drawn between a corporate defendant or an individual defendant. *See, e.g., TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) n.28 ("Under well-settled law . . . factors such as [the tortfeasor's net worth] are typically considered in assessing punitive damages."). *See Leister v. Dovetail, Inc.*, 546 F.3d 875, 883 (7th Cir. 2008) (stating that wealth is relevant to a size of penalties without distinguishing corporate or individual defendants). *See also Isbell v. John Crane, Inc.*, 74 F.Supp.3d 893, 898–99 (N.D. Ill. 2014) (stating that *Zazu*'s punitive damages analysis was *dictum*)*; E.E.O.C. v. Staffing*

As the Georgia Supreme Court has ruled, if a jury is going to effectively discourage future misconduct from a defendant that the jury has found liable for punitive damages, then the jury must know about the defendant's financial state to know how large a punitive damages award it will take to prove effective. *Wilson v. McLendon*, 166 S.E.2d 345, 346 (Ga. 1969). *See* Georgia Suggested Pattern Jury Instructions – Civil § 66.750 (citing *Hosp. Auth. of Gwinnett Cnty. v. Jones*, 386 S.E.2d 120, 124 n.13 (Ga. 1989), *vacated and remanded on other grounds*, 499 U.S. 914 (1991) (mem.). Georgia law holds that evidence of Ford's financial condition is relevant and admissible. As this Court has recently held, to rule otherwise "would not only be unsupported by binding precedent but would have the effect of eviscerating one of the primary purposes of punitive damages in civil cases." Order on Ford's Mot. *in limine*, *Christian v. Ford*, 4:22-cv-62 (March 4, 2024) (hereinafter *Christian* Ord.).

Ford also argues specifically that the United States Supreme Court bars "the use of evidence of wealth to uphold an otherwise unconstitutional punitive damage award[.]" Doc. 232 at 2. Ford relies in large part on two cases— *State Farm Mutual Automobile Insurance Company v. Campbell* and *BMW of North America, Inc. v. Gore*—neither of which stands for what Ford claims.

In *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003), the insureds sued their insurer for bad faith failure to settle claims against them within the insured's policy limits. 538 U.S. at 412. The trial court admitted (and the Utah appellate courts affirmed) evidence of the insurer's claims review policy and instances of out-of-state conduct that was "lawful where it occurred," even if the conduct had nothing to do with third-party

---

*Network, L.L.C.,* No. 02c1591, 2002 WL 31473840 (N.D. Ill. Nov. 4, 2002) (same); *Jones v. Scientific Colors, Inc.*, No. 00 C 0171, 2001 WL 902778 (N.D. Ill. July 3, 2001) (same).

3

automobile insurance claims like the one against the *Campbell* insureds. *Id.* at 415. The Supreme Court concluded that the Utah courts erred in admitting and relying on such evidence of "conduct that bore no relation" to the insureds' harm because a "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* at 422.

Ford has taken this ruling and attempted to construe it to prohibit any mention of sales of the Ford "Super Duty" truck, within Georgia or without, for any purpose. Again, as this Court ruled earlier this year, that is not what *Campbell* held. *Campbell* is anchored to the principle that defendants should not be punished for lawful conduct that didn't cause the plaintiffs harm. *Christian* Ord. at 5–6. *Campbell* does not bar a jury from considering Ford's net worth in assessing punitive damages.

In *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 565–67 (1996), a jury in Alabama awarded $4 million in punitive damages (later reduced to $2 million) for defendant BMW's failure to disclose to the plaintiff that the car he bought had been repainted before purchase. The plaintiff's compensatory damages were $4,000. *Id.* The Supreme Court noted that "none of the aggravating factors associated with particularly reprehensible conduct" were present, as the harm inflicted was "purely economic in nature" and the presale refinishing of the car "had no effect on its performance or safety features, or even its appearance for at least nine months after [] purchase." *Id.* at 576. The Supreme Court also acknowledge that "neither the jury nor the trial court was presented with evidence that any of BMW's out-of-state conduct was unlawful." *Id.* Even within the body of that opinion, however, the Supreme Court noted that "[i]n our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case." *Id.* at 568.

4

These are wildly different cases than the one at hand. Evidence of Ford's profits from sales of the "Super Duty" is directly and specifically relevant to the issues in this case. Such evidence shows that Ford made design choices that weakened the roof because those choices and changes saved Ford money, increasing Ford's profits.  Somebody at Ford (Plaintiffs have been wholly unable to get Ford to admit who) made the decision to keep selling "Super Duty" trucks with weak roofs for 17 years despite hundreds of notices that roof crush was killing and maiming citizens in those trucks—despite the fact Ford knew the roof was dangerously weak and knew, from the ERSP for "Super Duty" trucks team of Ford engineers and Ford's design of a much stronger roof for the lighter F150 trucks, how to build a safer, stronger roof. Indeed, *before the Mills' own 2015 F250 truck was even built* Ford has already installed a four-times-stronger roof in the lighter F150 (six years earlier, the 2009 model year version) *and* had actually already designed a five-times-stronger roof for the 2017 model year "Super Duty" trucks.  The profitability of the "Super Duty" trucks is evidence why Ford did such things and of the clear need for the imposition of punitive damages against Ford. Ford put innocent citizens at risk *for profit*.

As the Supreme Court advised in *Gore*, the degree of reprehensibility of the defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." 517 U.S. at 575. How many "Super Duty" trucks were sold, how widely, for how long, with what marketing, how much money Ford saved by selling them with the defective roof, when Ford had clear notice of the harm they were doing—all of this is *directly* relevant to the "enormity of [Ford's] offense. . . . This principle reflects the accepted view that some wrongs are more blameworthy than others." *Id.* The harm caused here was not merely economic—Mr. and Mrs. Mills are dead. Should the jury decide that Ford is liable for punitive damages, then

Plaintiffs will have the right to present evidence as to the scale of Ford's conduct to show reprehensibility of conduct—especially when the Ford "Super Duty" truck was just as dangerous and defective in other states as it was in Georgia.

Even *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), which Ford cites, limits itself to its own very specific facts. In *Williams*, a fraud and deceit case arising from cigarettes, the Supreme Court held very specifically that a trial court was not in error when it refused to instruct the jury that it could punish the defendant for the impact of its alleged misconduct on others. *Id.* at 357. This was *after* the plaintiff's counsel told the jury to think about how many other people would die from smoking cigarettes. *Id.* at 350. That very specific ruling in no way applies to the facts of this case; and yet still, the Supreme Court caveated its holding in *Williams* by saying that it "does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility," and that "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible[.]" *Id.* at 355.

In *Christian*, this Court considered all of the above case law and all of Ford's arguments, and denied Ford's motion, as have many other federal courts. With all of the above Supreme Court jurisprudence, countless federal courts have denied motions just like Ford's. *See Russell v. Allianz Life Ins. Co. of N. Am.*, No. 3:13-CV-00030-DMB, 2015 WL 127874, at *1 (N.D. Miss. Jan. 8, 2015) ("However, Allianz's request to exclude evidence of net worth and financial status during the punitive damages phase of trial, if reached, will be denied. The Court rejects Allianz's argument that the Fourteenth Amendment and Supreme Court jurisprudence prohibit evidence of a defendant's net worth in the determination of punitive damages."); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL

6

6732819, at *4 (S.D. Ill. Dec. 16, 2011) (denying defendant's arguments to bar consideration of defendant's total wealth) (citing *Campbell* and stating that "the Supreme Court has also clarified that a defendant's wealth is a relevant and admissible factor in determining the amount of a punitive damages award[.]"); *TVT Recs. v. Island Def Jam Music Grp.*, 257 F. Supp. 2d 737, 745 (S.D.N.Y. 2003) (rejecting defendants' argument based on *Campbell*) ("It is well-settled, in fact, that evidence of a defendant's net worth is properly considered given the goals of punishment and deterrence served by punitive damages.").

**CONCLUSION**

For all of the above reasons, Plaintiffs respectfully ask that the Court deny this motion.

Respectfully submitted this 5th day of December, 2024.

/s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
RAMSEY B. PRATHER
Georgia Bar No. 658395
ramsey@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com
ALLISON B. BAILEY
Georgia Bar No. 478434
allison@butlerprather.com
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
(706) 322-1990

LARAE DIXON MOORE
Georgia Bar No. 223379
lmoore@pagescrantom.com
PAGE SCRANTOM SPROUSE
TUCKER & FORD
1111 Bay Avenue 3rd Floor
P.O. Box 1199

Columbus Georgia 31902
(706) 324-0251

***Attorneys for Plaintiffs***