```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                          COLUMBUS DIVISION

JAMES EDWARD BROGDON, JR., et    *
al.,
                                 *
     Plaintiff,
                                 *
vs.                                       CASE NO. 4:23-CV-88 (CDL)
                                 *
FORD MOTOR COMPANY,
                                 *
     Defendant.
                                 *
```

O R D E R

This order memorializes the oral rulings the Court made during the final pretrial conference on December 12, 2024 and includes additional rulings on motions not finally decided at the pretrial conference. If the Court defers ruling on a particular issue or the application of a ruling to the particular circumstances at trial is unclear, the parties have a duty to raise the issue at trial in order to preserve any argument or objection.

The parties' revised final proposed pretrial order is due by **December 23, 2024.** The exhibits shall include final exhibit lists that contain no "catchall" exhibit designations, as well as Ford's counter-designations for deposition testimony to be used at trial.

The trial will begin on Monday, February 3, 2025 at 9:00 a.m. By **January 21, 2025,** counsel shall submit to the Court a joint proposed supplemental juror questionnaire on matters that the parties deem necessary (including any relationship to any insurers

and information about what type of vehicles the jurors drive). The proposed questionnaire should not take an average person more than fifteen minutes to complete.

The Court carefully considered the parties' briefing on the pending motions and makes the following rulings. The Court reiterates that counsel must object at trial if they believe that opposing counsel asks an inappropriate question or elicits testimony that would violate any of these rulings.

- Plaintiffs' Motion to Exclude Chris Eikey (ECF No. 213) is DENIED.

- Plaintiffs' Motion to Exclude Donald Tandy (ECF No. 214) is DENIED as to testimony regarding the subject vehicle's event data recorder but GRANTED as to Mrs. Mills's "impairment status."

- Plaintiffs' Motion to Exclude Mark Sochor (ECF No. 215) is DENIED as to his cause of death opinion, as well as his seatbelt opinion (provided that he conducted his own analysis of the issue).

- Plaintiffs' Motion to Exclude Jamie Downs (ECF No. 216) is GRANTED IN PART AND DENIED IN PART. Under Federal Rule of Evidence 702, an expert witness may only offer opinion testimony if the proponent of the testimony "demonstrates to the court that it is more likely than not" that the witness is qualified to offer the opinion because of his knowledge, skill,

experience, training, or education, that the witness's "testimony is based on sufficient facts or data," that the "testimony is the product of reliable principles and methods," and that the "opinion reflects a reliable application of the principles and methods to the facts of the case." Here, Plaintiffs do not dispute that a forensic pathologist is generally qualified to offer an opinion on cause of death following an autopsy that documents the decedent's injuries and conditions. Plaintiffs do, however, object to Dr. Downs's opinion about whether deformation of the Ford F-250 truck correlated to occupant injury because Dr. Downs is not qualified to offer such an opinion. Plaintiffs also object to Dr. Downs's cause of death opinions for Mr. and Mrs. Mills as pure *ipse dixit*—meaning that he did not use a reliable methodology—because he did not clearly state the basis for those opinions. The Court reviewed Dr. Downs's expert report and deposition and makes the following rulings.

<u>Opinion Regarding Vehicle Deformation/Occupant Injury</u>

Dr. Downs opines that vehicle deformation does not directly correlate to occupant injury. Based on the Court's review, this opinion is based on Dr. Downs's observation that (1) the roof crush on the Millses' F-250 truck appeared to be worse on the passenger side than on the driver side and (2) Mr. Mills was taller than Mrs. Mills, but Mr. Mills was extracted from the

3

truck alive while Mrs. Mills died at the scene. The Court is not convinced that Ford demonstrated that it is more likely than not that Dr. Downs is qualified to offer an opinion on this issue or that Dr. Downs's testimony on this issue is based on reliable methodology.

- First, as Ford noted in its response brief, "Dr. Downs merely observed the undisputed fact that there was less roof deformation in the F-250 on Mrs. Mills'[s] side . . . than on Mr. Mills'[s] side." Def.'s Resp. 8, ECF No. 249.
- Second, Dr. Downs admits that the question of what happened inside the truck to cause Mr. and Mrs. Mills's blunt force injuries is a "biomechanical or kinematics" question that he did not answer. Downs Dep. 159:16-22, ECF No. 72.
- Third, Ford did not point to any evidence that Dr. Downs is qualified to perform or actually did perform an analysis, supported by a reliable methodology, regarding the specific encroachment of the truck's roof into the Millses' occupant compartment and how that encroachment more likely than not affected the occupants.

For all these reasons, the Court GRANTS Plaintiffs' motion to exclude Dr. Downs's testimony that vehicle deformation does not correlate to occupant injury.

Opinion Regarding Mrs. Mills's Cause of Death

Dr. Downs opines that Mrs. Mills died of "sudden cardiac dysrhythmia occurring in a setting of cardiomegaly," that the "irregular heartbeat" caused Mrs. Mills to run off the road, and that Mrs. Mills did not regain consciousness before she died. Downs Expert Report 2, ECF No. 71.[1] As discussed in more detail below, the Court finds that Dr. Downs should be permitted to offer an opinion on why he ruled out positional asphyxiation as a cause of death for Mrs. Mills. But the Court finds that Ford failed to demonstrate that it is more likely than not that Dr. Downs based his "cardiomegaly" and related opinions on sufficient facts or data or on reliable methodology.

Ford represents that Dr. Downs used a forensic pathology method akin to a "differential type diagnosis" method to arrive at his opinions on the cause of death for Mrs. Mills. According to Ford, that method included observing Mrs. Mills's autopsy and looking at her organs and tissues, plus reviewing her medical records. Dr. Downs produced a report with his opinions.

- o Dr. Downs explained in his report why he ruled out positional asphyxiation as a cause of death for Mrs. Mills.[2] He listed all his findings from an external and internal

---

[1] Dr. Downs's report is not sequentially numbered, so the Court cites to the page number of the CM/ECF document.
[2] Plaintiffs' forensic pathologist opines that Mrs. Mills died of positional asphyxia with her blunt impact injuries contributing.

5

examination of Mrs. Mills's body, and he explained in detail why he reached his opinion on positional asphyxiation based on the examination. Dr. Downs noted that given the "bending" of Mrs. Mills observed "by the scene responders, the potential for sufficient compressive forces to restrict chest excursion, impairing breathing should be considered," but he noted that "the lack of any corresponding identified acute spine fracture (especially since [Mrs. Mills] had previously diagnosed compression fracture) or identified compressive injury argues against a chest-to-thighs position with sufficient force to result in a compressive/positional asphyxiation process. Physical stigmata of positional asphyxiation were absent at autopsy." *Id.* at 28. Dr. Downs further noted that the process of positional asphyxiation "takes time," although he did not say how much time it would take or whether the amount of time would be affected by multiple rib fractures or a medical history of Chronic Obstructive Pulmonary Disease. *Id.* Dr. Downs did state that witness commentary regarding Mrs. Mills's "difficulty breathing must be considered" in light of her "multiple rib fractures, which would be expected to be painful and cause difficulty breathing." *Id.* He further stated that he could not assess the "true extent of hemo-/pneumo-thoraces

6

associated" with Mrs. Mills's rib fractures because of "significant trochar artifact" related to the embalming of Mrs. Mills's body and "decompositional artifact" related to the decomposition of her body. *Id.* But he did conclude that the "clinical picture and data simply do not support asphyxiation as a factor" in Mrs. Mills's death. The Court is satisfied that Dr. Downs should be permitted to offer an opinion on why he ruled out positional asphyxiation as a cause of death for Mrs. Mills and thus DENIES Plaintiffs' motion to the extent it seeks to exclude this opinion.

- o Dr. Downs's next opinion is that Mrs. Mills's cause of death was "Hypertensive heart disease" and that she "died as the result of sudden cardiac dysrhythmia [irregular heartbeat] occurring in a setting of cardiomegaly [enlarged heart]." *Id.* at 6, 28. Dr. Downs's report does not clearly explain the basis for this opinion. Ford points out that in the "Cardiovascular" section of the internal investigation portion of his report, Dr. Downs reported a 396 gram heart ("healthy reference to maximal 350 fresh; range 148-296"). *Id.* at 22. In the "Diagnoses" section of his report, Dr. Downs listed a diagnosis of "Cardiomegaly," "Blunt force injury," and conditions that appeared in Mrs. Mills's medical records, including May 2022 reports of intermittent chest pain, episodic shortness

7

of breath, marked subcutaneous lower extremity edema, symptomatic tachycardia, and chronic obstructive pulmonary disease/emphysema. *Id.* at 22, 29. Ford also points out that in his deposition, Dr. Downs testified that Mrs. Mills had a "very, very significantly enlarged heart" and stated that an enlarged heart "*can trigger* a sudden cardiac dysrhythmia." Downs Dep. 150 12:17, ECF No. 72 (emphasis added). Finally, Ford contends that Dr. Downs relied on the opinion of its mechanical engineering expert, who opines that Mrs. Mills did not apply the brakes or intentionally steer the truck after she left the roadway. Ford did not, though, point to any portion of Dr. Downs's report or deposition that discloses the factual basis for his conclusion that an enlarged heart (or some other abnormality in Mrs. Mills's heart chambers, heart tissue, or coronary arteries) *did cause* an irregular heartbeat that *did cause* Mrs. Mills to lose consciousness. This is the crux of Plaintiffs' objection: Dr. Downs did not explain how he "ruled in" cardiomegaly as the cause of Mrs. Mills's death or how he "ruled out" all other potential causes, such as the blunt force injuries Mrs. Mills sustained in the wreck. So, contrary to the representation of Ford's counsel that Dr. Downs used a method akin to a "differential type diagnosis," the present record does not

8

reveal that Dr. Downs considered the possible causes of Mrs. Mills's death and then systematically ruled out possible causes using scientific methods and procedures until he arrived at his cardiomegaly opinion. Accordingly, the Court finds that Ford failed to establish that Dr. Downs's opinion on Mrs. Mills's cause of death is sufficiently reliable to be admitted under Federal Rule of Evidence 702. The Court thus GRANTS Plaintiffs' motion to exclude Dr. Downs's opinion that Mrs. Mills died of hypertensive heart disease and sudden cardiac dysrhythmia.

Regarding Mr. Mills's Cause of Death

Dr. Downs opines that Mr. Mills died of "blunt force injury."[3] Downs Expert Report 33. In reaching this opinion, Dr. Downs observed the autopsy for Mr. Mills, looked at his organs and tissues, and reviewed his medical records. Dr. Downs produced a report with his opinions. He explained that he found evidence of significant blunt force injuries, with multiple rib fractures and contusions, and that the blunt force injuries coupled with Mr. Mills's underlying medical conditions caused his death. In reaching this opinion, Dr. Downs considered and ruled out compressive asphyxiation as a cause of Mr. Mills's death. Dr.

---

[3] Plaintiffs' forensic pathologist concluded that Mr. Mills suffered significant injuries from blunt impact to the torso. He opines that Mr. Mills suffered thoracic compression from being compressed between the collapsed roof and his seat while being upside down in the truck, and that compression contributed to his death.

9

Downs explained the basis for that opinion: he noted that although responders observed Mr. Mills "bending," there was not "any corresponding identified acute spine fracture" or "identified compressive injury" which "argues against a chest-to-thighs position with sufficient force to result in a compressive/positional asphyxiation process." *Id.* at 55. Dr. Downs also noted that there was no "[p]hysical stigmata of positional asphyxiation" for Mr. Mills *Id.* He further stated that he could not assess the "true extent of hemo-/pneumo-thoraces associated" with Mr. Mills's rib fractures because of "significant trochar artifact" related to the embalming of Mr. Mills's body and "decompositional artifact" related to the decomposition of his body. *Id.* Dr. Downs concluded that the "clinical picture and data simply do not support asphyxiation as a factor" in Mr. Mills's death. The Court is satisfied that Dr. Downs should be permitted to offer an opinion on why he ruled out asphyxiation as a cause of death for Mr. Mills. Moreover, Plaintiffs do not argue that the autopsy and medical records revealed insufficient facts and data for Dr. Downs to conclude that blunt force injury contributed to Mr. Mills's death. For all these reasons, the Court DENIES Plaintiffs' motion to the extent it seeks to exclude Dr. Downs's opinion on Mr. Mills's cause of death.

10

- Plaintiffs' Motion to Exclude Daniel Camacho (ECF No. 217) is DENIED.

- Plaintiffs' Motion to Exclude Michelle Vogler (ECF No. 218) is DENIED.

- Plaintiffs' Daubert Motion re "Various Subjects" (ECF No. 219) is TERMINATED as duplicative of pending motions in limine.

- Plaintiffs' Motion to Strike Ford's Daubert Motions (ECF No. 235) is DENIED.

- Ford's Motion to Exclude Paul Lewis (ECF No. 220) is DENIED.

- Ford's Motion to Exclude Joshua Brooks (ECF No. 221) is DENIED. By **January 21, 2025,** each side should submit a trial brief on what, if any, limits apply to profitability evidence.

- Ford's Motion to Exclude Drs. Cochran and Ellis (ECF No. 222) is DENIED.

- Ford's Motion to Exclude Dr. Eisenstat (ECF No. 223) is DENIED.

- The Court reviewed Plaintiffs' trial brief on "Right to Cross Examine Expert" and declines to reconsider its oral ruling from the bench at the pretrial conference.  Plaintiffs may question expert witnesses about evidence of other claims that they reviewed in reaching their opinions, but not the disposition/settlement of such claims.

- Ford's Motion in Limine re "Evidence of Other Incidents" (ECF No. 231) is DEFERRED.  Plaintiffs may submit a supplemental

11

affidavit in opposition to the motion by **December 23, 2024.** Ford shall make specific objections to Plaintiffs' proffered chart of OSI evidence (ECF No. 279-3) by **January 6, 2025.**

- Ford's Motion in Limine re "Net Worth Evidence" (ECF No. 232) is DEFERRED. By **January 21, 2025,** each side should submit a trial brief on what, if any, limits apply to profitability evidence.

- Ford's: Omnibus Motion in Limine (ECF No. 234) re:
  1. "Evidence or Testimony that the Restraint System was Defective."  Motion GRANTED.
  2. "Lay Witnesses Giving Expert Medical Testimony."  Motion GRANTED.
  3. "Referring to Consulting Experts and Experts Who Are Not Called as Witnesses."  Motion DEFERRED.
  4. "Improper Questioning of Witnesses."  Motion DEFERRED.
  5. "Hill v. Ford Motor Company."  Motion DEFERRED.

- Plaintiffs' Motion in Limine re "Exhumations of the Bodies of Herman and Debra Sue Mills (ECF No. 240) is DENIED.

- Plaintiffs' Motion in Limine re "Argument that Debra Mills was Unconscious or Dead Before or During the Wreck" (ECF No. 241) is DENIED.  As discussed above, Dr. Downs shall not be permitted to opine that Mrs. Mills was unconscious or dead before the pitch-over occurred.  But the Court declined to exclude the opinions of Dr. Sochor, including his opinions that Mrs. Mills

12

suffered a cardiac event that caused her to be unconscious at the time of the crash.

- Plaintiffs' Motion in Limine re "Dissimilar Tests and Statistical Analyses Involving Dissimilar Vehicles" (ECF No. 242) is DENIED.

- Plaintiffs' Motion in Limine re "Ford's CRIS Tests, Malibu Tests, and Other Litigation Tests" (ECF No. 243) is DENIED.

- Plaintiffs' Motion in Limine re "Reference to or Testimony that '9X%' of Belted Passengers are Uninjured in Rollover Wrecks" (ECF No. 244) is DENIED.

- Plaintiffs' Motion in Limine re "Argument, Testimony, and Allegations that Debra Mills was not Properly Wearing her Seatbelt" (ECF No. 245) is DENIED.

- Plaintiffs' Motion in Limine re "Argument or Insinuation that Plaintiffs' Counsel or Employees Engaged in 'Witness Tampering'" (ECF No. 246) is DEFERRED.

- Plaintiffs' Omnibus Motion in Limine (ECF No. 247) re:
  1. "Ford's attempts to inject things into the trial unrelated to the defect at issue."  Motion DEFERRED.
  2. "Argument or testimony that the Super Duty roof was "better" or "stronger" than other automakers' roofs in other vehicles."  Motion DENIED.

3. "Any examination or insinuations about the circumstances of Plaintiffs' hiring counsel."  Motion GRANTED.

4. "Speculation by unqualified witnesses that Debra Mills suffered a 'medical' event prior to or during the crash before the roof collapsed."  Motion GRANTED as to Sanchez and Cooper.

5. "Argument or questioning prospective jurors, witnesses, or parties about whether and how they wear their seatbelts."  Motion GRANTED.

6. "Argument or testimony about comparisons to unidentified and dissimilar other rollover wrecks."  Motion GRANTED.

7. "Argument or examination regarding vehicles witnesses, parties, or their employees or lawyers own, drive, or have driven and regarding whether they would put their family in Super Duty trucks."  Motion DEFERRED as to experts who may testify regarding the safety Super Duty Trucks; Motion GRANTED as to other witnesses.

8. "Any reference to or insinuation about the supposed effects a verdict against Ford will have on Ford's employees and operations."  Motion GRANTED.  If Ford contends that this type of evidence is relevant on punitive damages amount, it needs to establish relevance.

9. "Argument or insinuations that Ford's lawyers 'represent' Ford's employees and engineers."  Motion DEFERRED.

14

10. "Questioning or argument about whether decedents did or did not read the owner's manual."  Motion GRANTED to the following extent: Ford shall not be permitted to argue that Mr. and Mrs. Mills failed to read the truck's owner's manual, and Ford shall not be able to question witnesses about whether Mr. and Mrs. Mills read the truck's owner's manual UNLESS Ford first proffers outside of the jury's presence non-speculative evidence that Mr. and Mrs. Mills did not read the manual or any warnings affixed to the truck.  The Court recognizes that where a plaintiff's failure-to-warn claim is based on the adequacy of the contents of the warning, the plaintiff cannot establish causation unless she shows that she read the allegedly inadequate warning. *Camden Oil Co., LLC v. Jackson*, 609 S.E.2d 356, 359 (Ga. Ct. App. 2004).  Here, though, Plaintiffs' failure-to-warn claim is that Ford did not adequately communicate warnings about the truck's roof because Ford presented no warning at all on the truck or in the manual.  A product user's failure to read the owner's manual in such a case does not automatically doom a failure-to-warn claim.  *Id.* (noting that in a "presentation and location of warnings" case, a plaintiff's failure to read a poorly placed, too-small label could be circumstantial evidence of the warning's inadequacy).

11. "Examination or insinuations about life insurance proceeds received or some other supposed 'settlement.'" Motion GRANTED.

## SUMMARY OF UPCOMING DEADLINES

1. December 19, 2024: Ford's amended objections to Plaintiffs' deposition designations due.

2. December 23, 2024: revised final proposed pretrial order due. The exhibits shall include final exhibit lists that contain no "catchall" exhibit designations, as well as Ford's counter-designations for deposition testimony.

3. December 23, 2024: Plaintiffs' supplemental response/affidavit in opposition to Ford's motion in limine regarding "other incidents" (ECF No. 231) due.

4. January 3, 2025: Ford shall notify Plaintiffs of its decision regarding a trial representative.

5. January 6, 2025: Ford shall make specific, concise objections to Plaintiffs' proffered chart of OSI evidence (ECF No. 279-3).

6. January 21, 2025: proposed jury instructions due.

7. January 21, 2025: proposed voir dire questions due.

8. January 21, 2025: joint proposed supplemental juror questionnaire due.

9. January 21, 2025: each side should submit a trial brief on any limitations on the admissibility of evidence regarding Ford's profitability, including whether evidence of profits from the sale of Ford F-250 Super Duty trucks with the same allegedly defective roof design should be limited to Georgia profits.

IT IS SO ORDERED, this 17th day of December, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA