**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| JAMES EDWARD ("Dusty") BROGDON,  JR., | : | |
| as Executor of the Estate of Debra Sue Mills, | : | |
| deceased, and JAMES EDWARD BROGDON, | : | |
| JR., and RONALD BRIAN ("Rusty") BROGDON, | : | |
| Individually and as surviving children of | : | |
| Debra Sue Mills, | : | CIVIL ACTION NO.: |
| | : | 4:23-cv-00088-CDL |
| And | : | |
| | : | |
| JAMES EDWARD BROGDON, JR., as | : | |
| Executor of the Estate of Herman Edwin Mills, | : | |
| deceased, and JASON EDWIN MILLS, | : | |
| Individually and as surviving child of Herman | : | |
| Edwin Mills, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FORD MOTOR COMPANY, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT FORD MOTOR COMPANY'S MOTION FOR JUDGMENT AS A**
**MATTER OF LAW**

At the close of Plaintiffs' case, Defendant, Ford Motor Company, ("Ford") files this

Motion for Judgment as a Matter of Law.

## Remaining Claims

The Joint Pretrial Order identifies the following legal grounds for recovering damages and

costs from Ford in this automotive product liability lawsuit:

(a)    Negligent Design;

(b)    Failure to Warn;

(c)    Punitive Damages; and

1

(d)    Attorney's Fees

For the reasons listed below, Ford is entailed to judgment as a matter of law (JMOL).

## JMOL Standard

Under Federal Rule of Civil Procedure 50, JMOL is appropriate if "the facts and inferences point [so] overwhelmingly in favor of one party ... that reasonable people could not arrive at a contrary verdict." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997), (citation omitted). In making that determination, the district court reviews all the evidence in the record, drawing "all reasonable inferences in favor of the nonmoving party, and ... may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000). Those are the jury's functions. *Id*. at 150–51, 120 S. Ct. 2097. Credence is given to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151, 120 S. Ct. 2097 (citations and quotation marks omitted). *Brown v. Ala. Dep't of Transp*., 597 F.3d 1160, 1173 (11th Cir. 2010).

## Argument

### I.    Ford is Entitled to Judgment as a Matter of Law on All Design Defect Claims

#### A.    The Proof Georgia Law Requires

The Georgia Supreme Court has made clear that the heart of a design case, is proof of alternative design:

> The "heart" of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one. Banks v. ICI Americas, supra at 736(1), 450 S.E.2d 671. Consequently, the appropriate analysis does not depend on the use of the product,8 as that may be narrowly or broadly defined, but rather includes the consideration of whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the product. (footnote omitted) Id.; see Restatement (Third) of Torts: Products Liability, § 2. See also Ogletree v. Navistar Intl. Transp. Corp., 269 Ga. 443, 445, 500 S.E.2d 570 (1998).

*Jones v. NordicTrack, Inc.* 274 Ga. 115, 118 (2001).

"[L]iability for defective design attaches only when the plaintiff proves that the seller failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." *Woods v. A.R.E. Accessories, LLC*, 345 Ga. App. 887, 890 (2018) quoting Banks, 264 Ga. at 736 n.4, 450 S.E.2d 671 (citation and punctuation omitted; emphasis in original). Without evidence of a feasible, safer alternative design, a plaintiff cannot succeed on design defect claim. *Jester v. Emerson Climate Technologies, Inc.* 1:19-cv-05735-WMR, 2022 WL 1044060 at *7 (N.D. Ga. Jan. 5, 2022) (granting summary judgment); *Fincher v. Monroe County Board of Commissioners,* 5:18-cv-00424-TES, 2019 WL 510448 at *5 (M.D. Ga. Feb. 8, 2019)(granting motion to dismiss)In addition to proving that a product was defectively designed, a plaintiff seeking to hold a manufacturer liable for a design defect must show that the defect proximately caused the plaintiff's injury. *Banks v. ICI Americas, Inc.,* 264 Ga. 736, n.4, 450 S.E.2d 671 (1994). *citing Jones v. NordicTrack, Inc*., 274 Ga. 115, 117, 550 S.E.2d 101 (2001).

For Plaintiffs to recover under a design defect theory, they must produce evidence that the alleged defects in the roof caused the deaths of Mr. and Mrs. Mills. *Oliveira v. Bridgestone Americas Holding, Inc*., No. CIVA106CV1280RLV, 2007 WL 1655842, at *1 (N.D. Ga. June 5, 2007) ("To prove that the defendants are liable, the plaintiffs must prove two things: (1) a defect existed, and (2) the defect caused the plaintiffs' injuries.") (*citing Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1294-95 (11th Cir. 2005)).

**B.**    *Plaintiffs' Proof Fails*

**1.    Mr. Mills**

There is no expert testimony that Mr. Mills would have survived this accident had it occurred in a vehicle with a stronger roof.

**2.    Mrs. Mills**

3

On the precise issue of how the alleged defect in the roof caused Mrs. Mill's injuries and death, Plaintiffs' expert, Dr. Eisenstat, opines that Mrs. Mills died from positional asphyxiation. Positional asphyxiation is a diagnosis of exclusion. Two points are dispositive. First, the circumstances of the accident must support the conclusion that an individual was compressed to the point of being unable to extricate themselves from their position.  Second, other causes of death, a cardiac event in particular, must be ruled out.

The *scene photographs* depict the driver's side window as having little deformation, allowing plenty of room for Mrs. Mills—the shorter of the two occupants—to extricate herself, *if she were conscious*. Mr. Mills—the taller of the two occupants—was extricated from his front passenger seating position, without having suffered positional asphyxiation, despite even less room. The point being that Mrs. Mills had room to move, if she was conscious. Indeed, the driver's side headrest was not deformed, and Mrs. Mills' seated height would not have been higher than the headrest. The fact she was sent as bent-over in an overturned truck does not equate that she did not have room to move.

A reasonable jury could not find that Ms. Mills died of positional asphyxiation based upon this evidence.

## II.    Ford is Entitled to Judgment as a Matter of Law on All Failure to Warn Claims

### A.    *The Proof Georgia Law Requires*

"In standard products liability cases premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Dietz v. Smithkline Beecham Corp*., 598 F.3d 812, 815 (11th Cir. 2010) (*citing Wheat v. Sofamor*, S.N.C., 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999). If the plaintiff fails to establish the existence of a duty to warn, the defendant is not subject to liability. *Wheat*, 46 F. Supp.2d at 1363. According to the Restatement (Third),

commercial sellers must alert consumers or users as to product risks so that they may use the products safely. Restatement Third, Torts: Products Liability § 2(c). Warnings must inform the user or consumer of inherent risks that reasonably foreseeable product users and consumers would deem material or significant in choosing whether to use the product. *Id.* Hence, the focus of a failure to warn claim is whether the manufacturer's failure to warn rendered the product unreasonably dangerous.

Like the design defect standard, Section 2(c) calls for a determination as to whether the product could have reasonably been made safer by an alternative instruction or warning. *Id.; see also Williams v. Manitowoc Cranes, L.L.C.,* 898 F.3d 607, Prod. Liab. Rep. (CCH) P 20396 (5th Cir. 2018) ("We conclude the jury had an adequate basis for finding that an alternative warning could have communicated valuable additional information about the falling counterweight danger, allowing [Plaintiff] to avoid injury").  The existence of a duty to warn is a legal question. *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 794 S.E.2d 641 (2016). "'In fixing the bounds of duty, not only logic and science, but public policy play an important role.'" *CSX Transp. v. Williams,* 278 Ga. at 890, 608 S.E.2d 208. "To impose a duty that either cannot feasibly be implemented or, even if implemented, would have no practical effect would be poor public policy indeed." *Fletcher*, 794 S.E.2d at 645, *quoting Georgia Pacific, LLC v. Farrar*, 432 Md. 523, 69 A.3d 1028, 1039 (Ct. App. 2013).

"A breach of a duty to warn, however, must also be the cause of the injury about which the plaintiff complains, and the plaintiff must present evidence supporting a reasonable inference that the warning provided by the defendant would prevent the injury." *R&R Insulation Servs., Inc. v. Royal Indem. Co*., 307 Ga. App. 419, 705 S.E.2d 223, 233 (2010). An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or

possibility. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough. *Id.* "Regarding ... proof of causation, in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required." *Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) (*citing Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010)). "Without expert testimony, the plaintiff's claim fails as a matter of law." Id. "[A] mere possibility of causation is not enough." *Pierre v. Intuitive Surgical, Inc.,* 854 F. App'x 316, 317 (11th Cir. 2021) (internal quotation omitted). Accordingly, where the issue of causation is "one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Guinn*, 602 F.3d at 1256.

Georgia does impose a continuing duty to warn. *See Chrysler Corp. v. Batten,* 264 Ga. 723 (1994) quoting O.C.G.A. § 51-1-11 "Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer." The contours of such a claim are not specified. However the Restatement (Third) of Torts: Products Liability § 10, does flesh out the contour of such a claim:

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
>
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
>
> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
>
> (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

In the comment that follows, the concerns of imposing such a duty are expressed, including that it might "impose unacceptable burdens on product sellers, and that if "every post-sale improvement in a product design were to give rise to a duty to warn users of the risks of continuing to use the existing design, the burden on product sellers would be unacceptably great." *Id.* at comment *a, Rationale*. The Court 's role requires making preliminary decisions on whether to recognize a duty under a particular set of facts:

> As with all rules that raise the question whether a duty exists, courts must make the threshold decisions that, in particular cases, triers of fact could reasonably find that product sellers can practically and effectively discharge such an obligation and that the risks of harm are sufficiently great to justify what is typically a substantial post-sale undertaking. In deciding whether a claim based on breach of a post-sale duty to warn should reach the trier of fact, the court must determine whether the requirements in Subsection (b)(1) through (4) are supported by proof. The legal standard is whether a reasonable person would provide a post-sale warning. In light of the serious potential for overburdening sellers in this regard, the court should carefully examine the circumstances for and against imposing a duty to provide a post-sale warning in a particular case.

*Id.*

### B.    *Plaintiffs' Proof Fails*

There is no point-of-sale duty to warn of a defect that is merely an unproven and industry rejected litigation defect theory. The American Jurisprudence treatise explicitly adopts the Restatement's formulation and describes a products liability action as addressing "a defect in a product" that consists of "a mistake in manufacturing, improper design, or the inadequacy or absence of warnings regarding the use of the product." 63 Am. Jur. 2d Products Liability § 10 (2022). *Pacheco v. Johnson & Johnson*, 3:24-cv-00002-TES, 2024 WL 3260883 (M.D. Ga. July 1, 2024). This is not a warnings case.  It is a design defect case and nothing more.

Plaintiffs have the misguided assumption that *every* design defect case is also a case involving an alleged failure to warn of that design defect.  In an alleged failure to warn case, the claimant must prove that an adequate warning would have made the product reasonably safe. The central flaw in Plaintiffs' pled failure to warn theory against Ford is this:  A failure to warn claim presumes that the product can be made reasonably safe with proper instructions or warnings. Plaintiffs do believe and will never argue that the roof design of the 2015 F-250 Super Duty could be made reasonably safe merely by the addition of a "warning." Such an argument would undercut their design defect claims. Hence, the only warning they claim was proper was one that warned, "do not buy this truck, it has an unreasonably dangerous roof that could kill you." That is not a proper failure to warn claim.

The Plaintiffs' pled design and failure to warn claims essentially ask the jury to decide the same factual question twice:  Did the 2015 Ford F-250 have a design defect that rendered it unreasonably dangerous?  That is the "hazard" they say Ford should have warned about.  The pleading and proof are the same.  Functionally, the claims are identical.  An argument that Ford should have warned of the claimed hazard—a design defect—is nothing more than a restatement of the Plaintiffs' design defect claims.  In fact, a finding of no design defect completely disposes of the alleged failure to warn.

Warning claims such as these are disguised design defect claims and are universally rejected. *Barragan v. General Motors LLC.*, No 4:14-CV-93-DAE, 2015 WL 5734842 at * 6 (W.D. Tex. Sept. 30, 2015); *Timoschuk v. Daimler Trucks N. Am., LLC,* No. SA–12–CV–816–XR, 2014 WL 2592254, at *3 (W.D. Tex. June 10, 2014); *Oldham v. Thompson/Ctr. Arms Co., Inc.,* No. H–12–2432, 2013 WL 1576340, at *4 (S.D. Tex. Apr.11, 2013). Any argument that the differences in cases can be explained by differences in Texas and Georgia law is easily rejected by

reference to each state's jury instructions on those claims. *Compare* Georgia Suggested Civil Pattern Jury Instruction 62.680 *with* Texas Pattern Jury Instruction 71.5.

There is no evidence that any warning would have changed the outcome in this accident. The roof strength of similar trucks in this category was similar, indicating that would have performed the same. And that was even true for light duty trucks. In other words, even had the Mills purchased some other car or truck, there is no proof it would have performed differently, under these facts.

With respect to the existence of a continuing duty to warn, Plaintiffs have failed to provide all the information and evidence in (b) (1) thru (4). There is no duty.

### III.    Ford is Entitled to Judgment as a Matter of Law on All Claims for Damages for Mrs. Mill's Alleged Consciously Experienced Pain and Suffering

#### A.    *The Proof Georgia Law Requires*

Georgia's wrongful death statute permits recovery of damages for a decedent's conscious pain and suffering before death. *See* O.C.G.A. § 9-2-41. Georgia law also permits the recovery of damages for pre-impact mental suffering. *Department of Transportation v. DuPree*, 570 S.E.2d 1, 11 (2002); *Monk v. Dial*, 441 S.E.2d 857 (1994). However, there must be evidence that the decedent consciously experienced pain or was conscious of their impending death for recovery to be permitted. *Grant v. Ga. Pac. Corp.*, 521 S.E.2d 868, 870 (1999) (citing *Monk*, 441 S.E.2d 857).[1]

---

[1] The Texas Supreme Court recently examined this exact evidentiary problem explaining why a jury cannot simply accept as evidence that for which equal inferences exist:

> If Davis was immediately rendered unconscious by the impact, then he did not suffer physical or mental pain following the impact. If he retained consciousness, then he likely did suffer such pain. As between these two scenarios, it is the plaintiffs' evidentiary burden to prove by a preponderance of the evidence that Davis actually suffered the claimed injuries—in other words, that he retained consciousness after the impact. Yet the plaintiffs' medical expert, who offered the only testimony on this topic, could not offer an opinion that Davis more likely than not retained consciousness after impact. If there is no evidence one way or another on this question, any damages awarded for conscious pain and suffering could only have been based on speculation, not evidence. Speculation that damages may have been suffered cannot support a judgment.

*United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 643 (Tex. 2023) (emphasis added). "A jury may not infer conscious pain and suffering from circumstantial evidence when the evidence gives rise to any number of inferences, none more probable than another." Id. (internal citations and quotations omitted).

### B.    Plaintiffs Proof Fails

Mrs. Mills was pronounced dead at the scene. No one at the accident scene reported that Mrs. Mills was conscious. The jury heard from Trooper Palmer and Trooper Sanchez, neither identified any conscious activity. Trooper Brian Palmer testified he could not say she was conscious. Trooper David Sanchez testified she was not conscious at any time he was at the scene, and indeed he heard a death rattle or "gurgle." Nurse Anthony Harrison, who was the first on ethe scene testified that he did not see any conscious activity. Dr. Eisenstat, agreed, none of the scene witnesses reported conscious activity. Dr. Eisenstat also testified that he too could not say she was conscious after the crash, based upon his autopsy. He testified instead that assuming she intentionally steered of the road, that would be conscious activity, and he saw nothing in the autopsy that would have rendered her unconscious in the crash. But the evidence that Mrs. Mills intentionally steered off road is speculative. Dr. Eisenstat originally testified that he did not know why she drove off the road and no one could know who was not in the vehicle at the time. The steering inputs could be explained by the terrain, as the tire path shows. As between the two scenarios, one is no more likely than the other. But more importantly, the question is not whether she was conscious when she left the road, but when the roof alleged crushed down. The evidence at that point in time does not rise to the level that a jury could find, more likely than not, that Mrs. Mills was conscious.

## IV.    Ford is Entitled to Judgment as a Matter of Law on All Claims for the Recovery of Punitive Damages

### A.    The Proof Georgia Law Requires

#### 1.    Only the estate can recover punitive damages, and only then if the decedent is entitled to recover for consciously experienced pain and suffering

[P]unitive damages are not available in a wrongful death claim" because "to the extent

the Georgia wrongful death statute permits recovery of more than the actual loss to the survivor, is itself punitive." *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 340, 319 S.E.2d 470, 480 (1984) (citation omitted). The representative of the decedent's estate may however recover punitive damages in connection with a claim for decedent's pre-death pain and suffering. *Donson Nursing Facilities v. Dixon*, 176 Ga. App. 700, 337 S.E.2d 351 (1985). The purpose of O.C.G.A. § 9-2-41, a survival statute, is "to provide for the survival to the administrator of causes of action that existed in the deceased person before his death." *Complete Auto Transit. Inc. v. Floyd*, 214 Ga. 232, 104 S.E.2d 208, 213 (1958).

Because the estate of Mrs. Mills cannot recover damages for consciously experienced pain and suffering, the estate cannot recover punitive damages.

### 2. The burden of proof is higher, and the statutory terms convey a required proof of a high level of mental culpability

A plaintiff bears a high burden to establish punitive liability under Georgia law: "punitive damages may be awarded in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton." *Lewis v. Suttles Truck Leasing, Inc.*, 869 F. Supp. 947, 949 (S.D. Ga. 1994) (*quoting Colonial Pipeline*, 365 S.E.2d at 832).

In *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994), the Court held that to willful conduct demonstrates "an actual intent to do harm or inflict injury" and "wanton conduct" "is so reckless or so charged with indifference to consequences…[as to be the] equivalent in spirit to actual

intent." *Id.* at 212. The phrase "an entire want of care it raises the presumption of conscious indifference to consequences," means an intentional disregard of the rights of another, knowingly or willfully disregarding such rights. *Hutcherson v. Progressive Corp*., 984 F.2d 1152, 1155 (11th Cir. 1993) *(quoting Gilman Paper Co. v. James,* 219 S.E.2d 447, 450 (Ga. 1975).

      ***B.***     *Plaintiffs' Proof Fails*

     In *Ivy v. Ford Motor Co.,* 646 F.3d 769 (11th Cir. 2011), the Eleventh Circuit engaged in an in-depth analysis of what facts will not, as a matter of law, constitute willful and wanton conduct under Georgia law in an automotive product liability case. In finding that the *Ivy* failed to meet Georgia's willful and wanton standard, the Eleventh Circuit held that "where the vehicle at issue satisfied the two tests deemed most appropriate by the relevant federal agency and satisfied the Consumers Union Test as well, the mere fact that some expert might develop an after-the-fact opinion that the vehicle is defective is not sufficient to create a genuine issue of material fact as to whether Ford was willful and wanton with respect to marketing the vehicle." *Id*. at 777 & n.9.[2]

     Under *Ivy's* holdings, when the manufacturer's conduct is not outside the mainstream or involves a bona fide dispute concerning underlying scientific principles, punitive damages are not appropriate. "We do not think that a reasonable trier of fact could find that Ford exhibited willful and wanton conduct when the vehicle in question, a second-generation Ford Explorer, performed safely according to reputable mainstream sources." *Ivy,* 646 F.3d. at 773 (footnote omitted) (emphasis added). The same bona fide dispute, mainstream compliance and genuine dispute within the relevant scientific community factors present in *Ivy* exists in this case.

---

[2] The *Ivy* court's analysis mirrored that of the Fifth Circuit's earlier holdings in *Satcher v. Honda Motor Co*., 52 F.3d 1311 (5th Cir. 1995). Satcher sued Honda, claiming that the absence of leg guards rendered his motorcycle defective and unreasonably dangerous. He obtained both an award of actual and punitive damages under Mississippi law. On appeal, the Fifth Circuit vacated the award of punitive damages, holding that "no reasonable jury could conclude under Mississippi law that this is an 'extreme case' meriting punitive damages . . . ." because "there is a genuine dispute in the scientific community as to whether leg guards do more harm than good," and "no government or agency thereof has ever required them." *Id.* at 1317.

Georgia's "wanton and willful standard is not satisfied where there is a bona fide dispute as to the propriety of the defendant's actions." *Ivy,* 646 F.3d at 777 (citations omitted). The same is true for the roof strength of the 1999-2016 Ford Super Duty trucks. The same would be true of "an entire want of care it raises the presumption of conscious indifference to consequences."

Despite his advocacy, Brian Herbst conceded that there are two sides to the debate over whether roof deformation causes injuries in rollover crashes and whether increasing the roof strength will prevent those injuries. Brian Herbst is an after the fact expert who argues that the correlation found by the IIHS and NHTSA ends the debate, but he then concedes that others have shown that statistically occupants in cars and trucks with stronger roofs do not fare better in rollover crashes. Moreover, crash studies which look at what happens to the occupant document that in a rollover accident, severe occupant injuries occur before significant roof deformation. Hence, the potential role of roof deformation in causing injuries in rollover accidents is a matter upon which reasonable people can and do disagree. DX 173 But that is not all.

The 2009 and 2015 Autoliv testing shown to the jury, multiples times, was developmental sensor testing for deployable side curtain canopies that predictively deploy before a rollover and provide a cushion between the occupant's head and the roof rail and help keep the occupant inside the vehicle. Between those investments and the investments in accident-avoidance technologies, Ford was not unconcerned, it just had a different approach. DX 173.

The fact that Plaintiffs have pursued an argument that NHTSA and the IIHS disagree on whether increasing roof strength does not prevent severe injuries in rollover accidents, posits a debate. Moreover, Brian Herbst conceded the existence of papers by researchers concluding that the field data does not support the argument that a stronger roof reduces injuries in rollover accidents. The fact he criticizes the conclusions of the researchers in the Malibu and CRIS crash

studies who published their peer-reviewed data and conclusions, likewise, proves the existence of a debate. The debate is documented in DX 173.

Plaintiffs argue that design changes to the roof structure of the 1999-2016 Super Duty weakened the roof, but the question is whether Ford knew those changes would cause injury to its customers—the willful and wanton proof that the law requires. That proof was not presented, and its absence cannot be presumed because the burden of proof is clear and convincing. Aside from the bona fide dispute that *Ivy* recognizes negates willful and wanton conduct, the proof to the level the law requires is missing. The fact that Ford could have built a vehicle in 2015 with a stronger roof does not alone subject Ford to punitive damages, when no governmental agency required that stronger roof (Mr. Herbst conceded this point) and there exists a dispute over its benefits to reducing the risk of injury to occupants in a rollover crash. Keeping the cabin upright does not tell anyone about what happens to the occupants, and when it happens in a rollover.

### C.    Both Federal and State Constitutions Forbid Unconstitutionally Vague as Applied Statutes

The United States Supreme Court has consistently held that a law is unconstitutionally vague as applied if it permits punishment for conduct that is objectively reasonable, i.e., conduct that reasonable persons could conclude was lawful. Indeed, "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State will impose." *BMW v. Gore*, 517 U.S. 559, 574 (1996). Georgia law is the same. *See Hall v. State,* 268 Ga. 89, 485 S.E.2d 755 (1997). The vague terms in Georgia's punitive damage statute may not be construed or applied in a manner that fails to provide advanced fair notice that specific conduct under the facts of this case could be and would be punished.

14

**V.    Ford is Entitled to Judgment as a Matter of Law on All Claims for the Recovery of Attorney's Fees**

   *A.    The Proof Georgia Law Requires*

      **1.    O.C.G.A 13-6-11**

Georgia does allow an award of litigation expenses under O.C.G.A 13-6-11, but only when the plaintiff proves that the defendant has acted in bad faith, has been stubbornly litigious, or has caused plaintiff unnecessary trouble and expense. *APAC-Se., Inc. v. Coastal Caisson Corp.*, 514 F. Supp. 2d 1373 (N.D. Ga. 2007). The "bad faith" prong requires bad faith in the transaction from which the lawsuit arises. *Rapid Grp., Inc. v. Yellow Cab of Columbus, Inc.*, 253 Ga. App. 43, 49, 557 S.E.2d 420, 426 (2001). It requires more than bad judgment or negligence. *Id*. Instead, the statute requires a dishonest purpose or some "moral obliquity" and implies "conscious doing of wrong" and a "breach of known duty through some motive of interest of ill will." *Id.; see also Metro. Atlanta Rapid Transit Auth. v. Mitchell*, 289 Ga. App. 1, 659 S.E.2d 605 (2007). The "stubbornly litigious" and "unnecessary trouble and expense" prongs of the statute require more than mere refusal to pay a just debt. *Wheat Enterprises, Inc. v. Redi-Floors, Inc.,* 231 Ga. App. 853, 857, 501 S.E.2d 30, 35 (1998). If there is a bona fide controversy about liability or the amount of damages, fees and expenses cannot be recovered under these prongs. *Id.*

      **2.    O.C.G.A. 9-11-68 (e)**

The terms of O.C.G.A. § 9–11–68(e) refer to a "frivolous defense" as one not made in good faith, made with malice or a wrongful purpose, having a "complete absence of any justiciable issue of law," or made for harassment.  Accusations of bad faith defenses can be overcome by a showing of a bona fide controversy at issue.  *See McNair v. McNair*, 343 Ga. App. 41 (2017) (Where there is a bona fide controversy for the tribunals to settle, and the parties cannot adjust it amicably, there should be no burdening of one with the counsel fees of the other.").  A wrongful purpose has been

described as a purpose other than resolving the subject controversy on the merits. *Golding v. Wal-Mart Stores E., LP*, No. 7:19-CV-67 (WLS), 2021 WL 5814278, at *11 (M.D. Ga. Dec. 7, 2021). Finally, even clear evidence of "lengthy, acrimonious litigation" is not grounds for an award of attorneys' fees. *Stewart v. Tricord, LLC*, 296 Ga. App. 834, 836 (2009).

> **B.**    *Plaintiffs' Proof Fails*

There has been no proof of bad faith during Plaintiffs case. And the fact there is a bona fide controversy regarding both liability, and damages, eliminates O.C.G.A 13-6-11 as a possible avenue of recovery. And, again, a bona fide dispute exists over liability, damages, what caused the deaths of Mr. and Mrs. Mills, and whether a stronger roof of any strength to weight ratio of 4.0 or higher would have prevented the injuries in this accident that were caused during the frontal portion of the crash when the Mills' truck went just under 50 mph nose down and into the dirt, before pitching over onto its roof. That fact alone, negates exposure to attorney's fees under O.C.G.A. § 9–11–68(e). But that is not all.

In *Couch,* the Georgia Supreme Court cited twice to a Tenth Circuit case that explained the meaning of "reasonable attorney's fees," as that term is used in fee-shifting statutes. *See Couch*, 295 Ga. at 484, 486 (*citing Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673 (10th Cir. 2012)). This phrase is a term of art that does not mean the amount that a particular plaintiff actually owes its counsel, but rather is a neutral and objective measure of the value of the services actually rendered: In fee-shifting statutes the term attorney fees (or its equivalent) has become a term of art. In common usage an attorney fee is what one pays to or owes one's attorney. . . . That statutory interpretation, however, would be contrary to Supreme Court precedent. . . . Relying on legislative history, it said that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." . . . [This] is but one of countless examples that the courts construe the term attorney fees to mean,

16

not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party. *Centennial Archaeology,* 688 F.3d at 678–79. Thus, a "reasonable attorney's fee" under a fee-shifting statute cannot depend on whether the claimant is rich or poor, has agreed to pay hourly or contingent fees (or, for a pro bono client, nothing at all), or is a plaintiff or defendant. As Centennial Archaeology further explains: "[A] 'reasonable attorney's fee' [is] reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the [party], no more and no less." In other words, an "attorney fee" arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services. The payment arrangement for an attorney can vary widely—hourly rate, flat rate, salary, contingency fee, pro bono. What the client pays or owes the attorney may not accurately reflect the reasonable value of the services. *Id.* at 679. The Supreme Court in Couch embraced this point of view. *See Couch*, 295 Ga. at 484, 486 (*citing Centennial Archaeology*, 688 F.3d at 678–82). As used in Georgia's offer-of-settlement statute, a "reasonable attorney's fee" is not the sum that the particular party actually owes its counsel. See *Couch,* 295 Ga. at 485 (describing the issue as not what plaintiff owes his attorney under their contract but what the defendant owes under O.C.G.A. § 9-11-68). The statute authorizes nothing more than the reasonable value of the "professional services actually rendered" after the rejection of a qualified offer. *Id.* at 483, 484. And *Couch* explained that a "contingency fee agreement is not conclusive, and it cannot bind the court in determining that reasonable value, nor should it bind the opposing party required to pay the attorney fees, who had no role in negotiating the agreement." *Id*. at 484 (*citing S. Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (1993)).

Echoing the point made in *Centennial Archaeology*, *Couch* explained that a contingency percentage, standing alone, is not the correct measure because "the value of the professional

services actually rendered by the lawyer may be considerably higher or lower than the agreed-upon amount." *Id*. [E]vidence of the existence of a contingent fee contract, without more, is not sufficient to support the award of attorney fees. An attorney cannot recover for professional services without proof of the value of those services. A naked assertion that the fees are "reasonable," without any evidence of hours, rates, or other indication of the value of the professional services actually rendered is inadequate. *Id*. at 483–84; *see also id*. at 484 (holding that, while a contingency percentage may be considered, a fee award under O.C.G.A. § 9-11-68 must also be supported by "evidence of hours, rates, or some other indication of the value of the professional services actually rendered"). Because a contingency percentage is inadequate to establish the value of the professional services "actually rendered"; there must be "some other" proof. *Id*. at 483; *see also Wehner v. Parris*, 258 Ga. App. 772, 773 (2002) (confirming that plaintiffs have the burden of proving the reasonableness of requested fees by specific and objective evidence). In addition, "[a] determination of the amount of an award of attorney fees cannot be based on guesswork." *S. Cellular Telecom*, 209 Ga. App. at 402; *see also Kennison v. Mayfield*, 359 Ga. App. 52, 67 (2021) (en banc) (plurality opinion) (overturning fee award under Section 9-11-68 because, while the contingency fee may be considered, plaintiff's proof "must include an analysis of the value of the actual services rendered . . . according to some other evidence of their value") (emphasis added).

The proof to support recovery under any fee-shifting statute is not present, let alone the grounds to do so.

Respectfully submitted this 7th day of February 2025.

/s/ Michael R. Boorman
Michael R. Boorman
Georgia Bar No.: 067798

Philip A. Henderson
Georgia Bar No.: 604769
WATSON SPENCE LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

Charles E. Peeler
Georgia Bar No.: 570399
Harold D. Melton
Georgia Bar No.: 501570
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216
harold.melton@troutman.com
Charles.peeler@troutman.com

Elizabeth B. Wright
*Admitted Pro Hac Vice*
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Elizabeth.wright@thompsonhine.com

Paul F. Malek
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
3291 US Highway 280, Suite 200
Birmingham, AL 35243
pmalek@huielaw.com

Michael W. Eady
Admitted *Pro Hac Vice*
THOMPSON, COE, COUSINS & IRONS,
LLP
2801 Via Fortuna Drive, Suite 300
Austin, Texas 78746
(512) 708-8200

19

meady@thompsoncoe.com
***Attorneys for Defendant Ford
Motor Company***

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James E. Butler, Jr.
Ramsey B. Prather
Daniel E. Philyaw
Allison Bailey
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
jim@butlerprather.com
ramsey@butlerprather.com
dan@butlerprather.com
allison@butlerprather.com

Larae Dixon Moore
PAGE SCRANTOM SPROUSE TUCKER & FORD
1111 Bay Avenue 3rd Floor
P.O. Box 1199
Columbus, GA 31902
lmoore@pagescrantom.com

Frank M. Lowrey, IV
Michael B. Terry
Bondurant Mixson & Elmore LLP
1201 West Peachtree Street NW, Suite 3900
Atlanta, GA 30309
lowrey@bmelaw.com
terry@bmelaw.com

This 7th day of February, 2025.

*/s/ Michael R. Boorman*
Michael R. Boorman
Georgia Bar No.: 067798