```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF GEORGIA
                             COLUMBUS DIVISION

JAMES EDWARD BROGDON, JR., et   *
al.,
                                *
     Plaintiffs,
                                *
vs.                                        CASE NO. 4:23-CV-88 (CDL)
                                *
FORD MOTOR COMPANY,
                                *
     Defendant.
                                *
```

O R D E R

If the jury finds that punitive damages should be assessed against Ford Motor Company, then Plaintiffs will seek to introduce evidence of Ford's financial condition, including evidence of its net worth and evidence of profits from the sale of Ford F-250 Super Duty trucks with the same allegedly defective roof design as the design of the Millses' truck. Ford asserts that the Court should exclude all evidence of Ford's net worth, as well as most evidence of Ford's profits from F-250 Super Duty trucks. For the reasons set forth below, the Court denies Ford's motion to exclude this evidence (ECF No. 232). This ruling shall apply to evidence Plaintiffs seek to admit through an expert, including Joshua Brooks.

DISCUSSION

When the trier of fact finds that punitive damages shall be awarded, the trier of fact must determine the amount of punitive

damages, receiving "such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case." O.C.G.A. § 51-12-5.1(d)(2);[1] *see Philip Morris USA v. Williams*, 549 U.S. 346, 352 (2007) (noting that punitive damages "may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition") (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996)). The Georgia Supreme Court determined that several factors may be considered in setting the amount of punitive damages, including "the profitability of the defendant's wrongdoing," and that "the financial circumstances of the defendant may be admissible." *Hosp. Auth. of Gwinnett Cnty. v. Jones*, 386 S.E.2d 120, 124-25 n.13 (Ga. 1989), *judgment vacated on other grounds*, 499 U.S. 914 (1991), *and judgment reinstated*, 409 S.E.2d 501 (Ga. 1991).

The first type of evidence Ford seeks to exclude is evidence of its net worth. Net worth is a "measure of one's wealth, usu[ally] calculated as the excess of total assets over total liabilities." WORTH, Black's Law Dictionary (12th ed. 2024). Net worth evidence goes to the amount of punitive damages that would be sufficient to deter, penalize, or punish the defendant given

---

[1] This is a diversity action, so Georgia substantive law applies "unless federal constitutional or statutory law is contrary." *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991).

2

the circumstances of the case. Georgia courts have determined that net worth evidence is admissible on the amount of punitive damages. *J.B. Hunt Transp., Inc. v. Bentley*, 427 S.E.2d 499, 505 (Ga. Ct. App. 1992); *accord Wilson v. McLendon*, 166 S.E.2d 345, 346 (Ga. 1969) (finding no constitutional infirmity in former Georgia punitive damages statute, which allowed evidence of the parties' "worldly circumstances" as a factor to be considered in determining the amount necessary to deter conduct and noting that although "the assessment of even a small amount of damages would be adequate punishment for a very poor man, . . . it would require the assessment of a much larger sum to be any punishment for a very wealthy man").

The Court understands that the Supreme Court has expressed concern that allowing "evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). But the Supreme Court also noted that it is well settled that a defendant's net worth is a factor typically considered in assessing punitive damages, and the Supreme Court has not held that it is error to admit such evidence or to instruct the jury that it may consider such evidence. *See id.* at 427-28 (noting that a defendant's wealth, while a factor that may be considered in determining the amount of punitive damages, cannot be used to make up for the failure of other factors

3

and save "an otherwise unconstitutional punitive damages award"); *id.* at 417 n.2 ("It remains to be seen whether, or the extent to which, [the *Campbell*] decision [reversing a punitive damages award and remanding for recalculation where the jury improperly considered lawful out-of-state conduct and there was "scant" evidence that the defendant engaged in "repeated misconduct"] will unsettle that law.").

Ford did not present any binding authority establishing that it would be error to admit evidence of a defendant's net worth on a claim for punitive damages under Georgia law. As the Court has previously observed, "It is common sense that the amount of a civil penalty may impact a wrongdoer (and thus his conduct) differently depending upon the wealth of that wrongdoer." *Christian v. Ford Motor Co.*, No. 4:22-CV-62 (CDL), 2024 WL 1496236, at *2 (M.D. Ga. Mar. 4, 2024). "The Court cannot find that our Constitution prohibits state legislatures from adopting statutes with this underlying purpose which take into consideration notions of basic human behavior." *Id.* So, to the extent that Ford seeks to exclude evidence of its financial condition/net worth for the purpose of allowing the jury to determine what amount of punitive damages is necessary and appropriate to punish and deter Ford, the Court declines to exclude such evidence.

The second type of evidence Ford seeks to exclude is evidence of Ford's profits from the sale of the allegedly defective Ford F-

250 Super Duty trucks. Plaintiffs argue that Ford's total profits from the sale of F-250 Super Duty trucks may be admitted as evidence of the amount necessary to deter Ford and to show the degree of Ford's reprehensibility. Ford, on the other hand, contends that the only admissible profitability evidence is evidence of the profits from the sale of the Millses' F-250 Super Duty truck. With all due respect to Ford's experienced legal team, that argument is absurd. Likely expecting the Court's cool reception to such an argument, Ford argues in the alternative that any such profitability evidence should be limited to Georgia profits. That argument is not frivolous, but it is not persuasive.

Under Georgia law, one factor to consider in setting the amount of punitive damages is "the profitability of the defendant's wrongdoing." *Jones*, 386 S.E.2d at 125 n.13. So, Georgia recognizes that a jury can consider evidence of the profits a defendant earned from selling an allegedly defective product instead of using a safer alternative design. Such evidence is relevant on the issue of reprehensibility, which the Supreme Court observed is the "most important indicium of the reasonableness of a punitive damages award." *Campbell*, 538 U.S. at 419 (quoting *Gore*, 517 U.S. at 575). In determining reprehensibility, a jury may consider whether the defendant's conduct "risks harm to many," which "is likely more reprehensible than conduct that risks harm to only a few." *Williams*, 549 U.S. at 357. A jury may also

5

consider whether the defendant engaged in "repeated misconduct" because "repeated misconduct is more reprehensible than an individual instance of malfeasance." *Campbell*, 539 U.S. at 423 (quoting *Gore*, 517 U.S. at 577). Moreover, out-of-state conduct—including lawful conduct—"may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff." *Campbell*, 538 U.S. at 422. Based on the foregoing, it is clear that evidence of out-of-state profits from the sale of an allegedly defective product *may* be admissible on the issue of reprehensibility. The critical issue is *how* shall it be admitted.

Punitive damages *cannot* be used to punish a defendant for harming nonparties. Therefore, the jury must understand this limitation on their consideration of such evidence. *Williams*, 549 U.S. at 353. The Supreme Court recognized the "practical problem" of how to ensure that the jury only uses evidence "of harm caused others under the rubric of reprehensibility" while not punishing the defendant for harm to others. *Id.* at 357. As is often the case with appeals courts, the Supreme Court did not provide specific guidance to lower courts as to how to explain this important distinction to a jury. *Id.* It is clear, however, that the Supreme Court did not hold that the trial courts must exclude evidence of harm to others caused by a defective product.

6

The Court finds that evidence of Ford's total profits from the sale F-250 Super Duty trucks may be admitted because such evidence is relevant on the reprehensibility of Ford's conduct. The Court intends to provide a limiting instruction to the jury on this evidence so that the jury understands the purposes for which it may consider the profits evidence and comprehends that it may not punish Ford in this action for harm to anyone but Plaintiffs' decedents. **Counsel shall provide a proposed limiting instruction to the Court by 5:00 P.M. on February 10, 2025.**

CONCLUSION

As discussed above, the Court denies Ford's motion to exclude evidence of Ford's net worth and profits from the sale of Ford F-250 Super Duty trucks with the same allegedly defective roof design as the design of the Millses' truck (ECF No. 232). This ruling shall apply to any evidence Plaintiffs seek to admit through an expert, including Joshua Brooks.

IT IS SO ORDERED, this 8th day of February, 2025.

                                        s/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA