IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JAMES EDWARD BROGDON, JR., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No. 4:23-cv-00088-CDL |

**DEFENDANT FORD MOTOR COMPANY'S
RESPONSE TO QUESTIONS RAISED AT STATUS CONFERENCE**

COMES NOW, Defendant Ford Motor Company ("Ford"), and files this response to questions raised by the Court at the July 24, 2025 status conference related to whether the juror interviews complied with Local Rule 48.3 and related questions regarding the scope of admissible evidence under the exception set forth in Federal Rule of Evidence 606(b)(2). This response is filed contemporaneously with a notice of filing interview transcripts under seal pursuant to the Court's order at docket entry 407.

The five transcripts are filed separately in their entirety pursuant to this Court's Order. However, by submitting the transcripts in full, Ford does not suggest that everything contained in the transcripts is admissible evidence. To the contrary, only certain portions of the transcripts relate to the introduction and prejudicial impact of improper extraneous information, within the exceptions of Federal Rule of Evidence 606(b)(2), and are therefore admissible evidence for this

Court's consideration.[1]

At the status conference on Thursday, July 24, 2025 ("the Status Conference"), the Court inquired whether the juror interviews violated Local Rule 48.3. Specifically, the Court raised questions regarding the extent to which it could question jurors relating to the introduction of extraneous prejudicial information, and whether it was prohibited from inquiring into the jury deliberation process. In other words, is the jury deliberation process so sacrosanct that courts must objectively determine whether prejudicial information impacted jury deliberations (in which case, questions by the court to jurors regarding actual impact are strictly prohibited)? Or alternatively, are courts allowed to question and consider whether extraneous prejudicial information was considered, and the subjective impact of such extraneous information on jurors? The Court expressed its understanding that the former was the firmly established rule, and that if courts are prohibited from venturing into this space, counsel are likewise strictly prohibited. As discussed below, the interviews themselves were proper, and, while not dispositive, the Court may properly consider evidence regarding the impact of extraneous information on the jurors' decisions in this case.

A.      **The juror interviews filed herewith comply with Local Rule 48.3.**

The juror interviews filed herewith comply with Local Rule 48.3 and other applicable law. Local Rule 48.3 provides, "Attorneys, parties or anyone acting on their behalf shall not contact any juror without express permission of the Court and under such conditions the Court may prescribe." Here, *at the request of Plaintiffs' counsel*, the Court provided express permission to

---

[1] Relevant discussion of whether extraneous prejudicial information was before the jury is found in the February 16, 2025 interview of Juror 36 on pages 18, 21-22; the February 18, 2025 interview of Juror 36 on pages 4-7, 9-13, 23; the interview of Juror 6 on pages 12-16, 28; the interview of Juror 35 at 24-25, 31-32, 35-36, 45; the interview of Juror 49 on pages 16-17, 23-24, 33. Ford notes that there is some inconsistency in information provided by jurors, which further supports Ford's request that the Court conduct an investigation.

2

contact jurors and did not impose any conditions on that contact. [Doc. 374 (Vol. 10 Tr.), at 116:24-117:2]. Consequently, the juror interviews filed herewith are compliant with the plain terms of Local Rule 48.3 and were conducted in reliance on the Court's express permission.

B.    **The scope of the juror interviews was proper.**

At the Status Conference on July 24, 2025, this Court intimated it would be surprised that a reasonable attorney could read L.R. 48.3 and other applicable law and believe that the permission granted by the Court would authorize counsel to ask certain questions, especially those touching on the impact of extraneous prejudicial information on the verdict. Local Rule 48.3 governs whether jurors may be contacted and under what conditions, if any. As set forth above, because the Court authorized juror contact *without* conditions, the juror interviews did not violate the Local Rule.

Further, Federal Rule of Evidence 606 does not define the boundaries for what counsel may ask for investigative purposes. However, it does restrict what may be admitted and considered by the Court as evidence upon which it can base its decision. But even 11th Circuit case law applying Rule 606 suggests that questions touching upon deliberations are, indeed, admissible, although not dispositive of whether extraneous information was brought before the jury and whether it was prejudicial.

"When an allegation of juror misconduct arises, the court must determine whether the misconduct occurred and whether it was prejudicial." *United States v. Ifediba*, 46 F.4th 1225, 1238 (11th Cir. 2022); *see also United States v. Brantley*, 733 F.2d 1429 (11th Cir. 1984) ("'A party claiming an improperly influenced jury returned a verdict against him must be given an opportunity to prove that claim. In response to such an allegation, the trial judge 'must conduct a *full investigation* to ascertain whether the alleged jury misconduct occurred; if it occurred, he must determine whether or not it was prejudicial.'" (emphasis in original)).

3

In granting a new trial, a court need not find that extraneous information actually influenced a jury's verdict. *See, U.S. v. Williams*, 568 F.2d 464 (5th Cir. 1978) (finding that jurors' exposure to a news story required reversing a conviction despite jurors' denial that the news story influenced their decision in the case). However, courts *may* properly consider whether improper outside information impacted juror's decisions, thereby prejudicing the party against whom a verdict was returned. For example, the Eleventh Circuit relied on juror testimony obtained by the Southern District of Georgia that an alleged bribe "**had no effect on** [two members of the jury's] ***decision as jurors*** in the case" and "[b]oth testified they had not mentioned the matter to any other member of the jury." *Port Terminal & Warehousing Co. v. John S. James Co.*, 695 F.2d 1328, 1340 (11th Cir. 1983) (emphases added). Similarly, in *United States v. Robbins*, 500 F.2d 650 (5th Cir. 1974), in a trial for illegally dispensing pharmaceuticals, a juror did not disclose in *voir dire* that her daughter had been hospitalized as a result of using prescription diet pills. *Id*. at 651. After trial, the trial court conducted a hearing and questioned the juror whose daughter had been hospitalized and two other jurors. *Id*. The court's investigation determined that it was "not disputed that during the jury deliberations Juror Landesman revealed that she had a daughter who had infectious hepatitis apparently because of prescription diet pills and a severe diet." *Id*. at 652; *see also United States v. Winkle*, 587 F.2d 705, 714–15 (5th Cir. 1979) ("The jury foreman testified that the fact of Colmar's plea was discussed in relation to the jury's deliberations on that count.").

In short, there is a general bar (Fed. R. Ev. 606) prohibiting the admissibility of evidence related to the jury deliberation process, but that general rule is subject to an exception (Fed. R. Ev. 606(b)(2)) - where there is evidence of extraneous prejudicial information improperly brought to the jury's attention. In that case, courts have investigated the existence of extraneous information and the impact of extraneous information on jurors' decisions. For these reasons, Ford's

interviewing of jurors did not violate either the letter or the spirit of the Local Rule, and the Court should conduct an investigation into whether extraneous prejudicial information was improperly considered by the jury.

The juror interviews filed herewith are sufficient to require the Court to conduct an investigation into whether extraneous prejudicial information was improperly brought to the jury's attention. FRE 606(b)(2). Indeed, the interviews and text message of Juror 36 (the juror who contacted counsel for Ford immediately following the verdict) and the interview of Juror 6 (the juror who only participated in phase I deliberations) alone are sufficient to require a full investigation into the fact of improper extraneous information and its prejudicial impact.

The *Hill* verdict invaded the *Brogdon* trial and the *Brogdon* jury deliberations. Plaintiffs introduced evidence of or mentioned the *Hill* case countless times during the *Brogdon* trial, despite Ford's objections. In this modern era of easy access to information, Plaintiffs all but invited the jurors to do their own research into the *Hill* case, providing the jury with the case name, location, and date of the trial.

Certain jurors stated that the amount of the *Hill* verdict was stated during deliberations in both phase I and phase II deliberations. Ford was denied a fair trial as a result. It is a manifest injustice for Ford to be denied a trial free of the *Hill* verdict, then be contacted by Juror 36 to be informed that the jury deliberations were tainted by the *Hill* verdict, and then have the improper introduction of extraneous prejudicial information evade scrutiny of the Court, when the Court specifically allowed juror contact without imposing any conditions. The injustice is not the interviews (which were permitted), it is the denial of a fair trial to a litigant.

5

Respectfully submitted,

This 31st day of July, 2025.

/s/ Harold D. Melton
Charles E. Peeler
Georgia Bar No.: 570399
Harold D. Melton
Georgia Bar No.: 501570
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216
harold.melton@troutman.com
Charles.peeler@troutman.com

Michael R. Boorman
Georgia Bar No.: 067798
Philip A. Henderson
Georgia Bar No.: 604769
WATSON SPENCE LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

Elizabeth B. Wright
*Admitted Pro Hac Vice*
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Elizabeth.wright@thompsonhine.com

Paul F. Malek
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
3291 US Highway 280, Suite 200
Birmingham, AL 35243
pmalek@huielaw.com

Michael W. Eady
Admitted *Pro Hac Vice*

THOMPSON, COE, COUSINS & IRONS, LLP
2801 Via Fortuna Drive, Suite 300
Austin, Texas 78746
(512) 708-8200
meady@thompsoncoe.com

*Attorneys for Defendant Ford Motor Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James E. Butler, Jr.
Ramsey B. Prather
Daniel E. Philyaw
Allison Bailey
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
jim@butlerprather.com
ramsey@butlerprather.com
dan@butlerprather.com
allison@butlerprather.com

Larae Dixon Moore
PAGE SCRANTOM SPROUSE TUCKER & FORD
1111 Bay Avenue 3rd Floor
P.O. Box 1199
Columbus, GA 31902
lmoore@pagescrantom.com

Frank M. Lowrey, IV
Michael B. Terry
Bondurant Mixson & Elmore LLP
1201 West Peachtree Street NW, Suite 3900
Atlanta, GA 30309
lowrey@bmelaw.com
terry@bmelaw.com

This 31st day of July, 2025.

>                                /s/ Harold D. Melton
>                                Harold D. Melton
>                                Georgia Bar No.: 501570